# EXHIBIT A

## (Pitt County 23-CVS-3283)

**STATE OF NORTH CAROLINA**

_Pitt_ County

File No. 23 CVS 32 83

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
_Larry F. Murphy_

Address
_PO Box 801_

City, State, Zip
_Hyden, NC 28513_

**VERSUS**

Name Of Defendant(s)
_Hramark Food Service & Facilities Management, East Carolina University et al._

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
_Hillany Gallagher_
_28884 College Hill Drive_
_Greenville, NC 27858_

Name And Address Of Defendant 2
_Shenitha Duplee_
_28884 College Hill Drive_
_Greenville, NC 27858_

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!** You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!** Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 10/31/2023 | Time 3:23 ☐ AM ☒ PM |
|---|---|---|
| | Signature _Patricia N-fut_ | |
| | ☐ Deputy CSC ☒ Assistant CSC | ☐ Clerk Of Superior Court |

| ☐ **ENDORSEMENT (ASSESS FEE)** This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC | ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_PITT_ _____ County

File No. 23 CVS 3283

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
_LARRY F. Murphy_

Address
_PO Box 801_

City, State, Zip
_Hyden, NC 28513_

**VERSUS**

Name Of Defendant(s)
_Atlantic Food Service & Facilities Management, East Carolina University et al._

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

Name And Address Of Defendant 1
_Kelvin Tyruk washa_
_28884 College Hill Drive_
_Greenville, NC 27858_

Name And Address Of Defendant 2
_Thomas Bodward Drive_
_28884 College Hill Drive_
_Greenville, NC 27858_

⚠️ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)

Date Issued
_10/31/2023_

Time
_3:23_ ☐ AM ☒ PM

Signature
_Patricia W-Cut_

☐ Deputy CSC ☒ Assistant CSC ☐ Clerk Of Superior Court

☐ ENDORSEMENT (ASSESS FEE)
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

Date Of Endorsement

Time
☐ AM ☐ PM

Signature

☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts



23 CVS 3283

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Raleigh Area Office**
434 Fayetteville Street, Suite 700
Raleigh, NC 27601
(984) 275-4800
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

**To:** Mr. Larry F. Murphy
PO Box 8901
Ayden, NC 28513
Charge No: 433-2023-02757

EEOC Representative and email:     MARIE MYATT
Investigator
marie.myatt@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 433-2023-02757.

On behalf of the Commission,

Johnnie M.
Barrett. Area
Director

Digitally signed by Johnnie
M. Barrett. Area Director
Date: 2023.08.01 15:34:02
-04'00'

Johnnie Barrett
Area Director

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
PITT COUNTY                      SUPERIOR COURT DIVISION

|  | ) |
|---|---|
|  | ) |
|  | ) 23 CVS 3283 |
|  | ) |
| LARRY F MURPHY | ) |
| Plaintiff, | ) |
|  | ) |
| Vs | ) |
|  | ) |
| ARAMARK | ) **COMPLAINT** |
| FOOD SERVICE AND FACILITIES | ) [Jury Trial Demanded] |
| MANAGEMENT, EAST CAROLINA | ) |
| UNIVERSITY | ) |
| Defendant | ) |
|  | ) |
| AND | ) |
|  | ) |
| KELVIN TARUKWASHA, in his | ) |
| Official capacity, | ) |
| Co-Defendant | ) |
|  | ) |
| THOMAS BEDWARDII, in his official | ) |
| capacity, Co-Defendant | ) |
|  | ) |
| TARA PEREZ, in her official capacity, | ) |
| Co-Defendant | ) |
|  | ) |
| HILLARY GALLAGHER, in her | ) |
| Official capacity, | ) |
| Co-Defendant | ) |
|  | ) |
| SHENITHA DUPREE, in official her | ) |
| capacity, Co-Defendant | ) |
|  | ) |
| DARYLL HINES, in his official capacity, | ) |
| Co-Defendant | ) |
|  | ) |

1

ASHLEY HALL, in official her           )
capacity,                              )
                    Co-Defendant       )
                                       )
DUSTIN MARTY, in his official          )
capacity,           Co-Defendant       )
                                       )
CODY SHORT, in his official            )
capacity,                              )
                    Co-Defendant       )
                                       )
LAUREN ARNOLD, in her official         )
her capacity,                          )
                    Co-Defendant       )
                                       )
KRISTEN ANDERSON, in her               )
Official capacity,                     )
                    Co-Defendant       )
                                       )
BRITTNEY SCURRY, in her official       )
capacity,                              )
                    Co-Defendant       )
_____  )

Plaintiff Larry F. Murphy commences this action against Defendant
Aramark Food Service and Facilities Management, and Co-Defendants Kelvin
Tarukwasha, Thomas Bedwardii, Tara Perez, Hillary Gallagher, Shenitha Dupree,
Darryl Hines, Dusty Marty, Cody Short, Lauren Arnold, Kristen Anderson, and
Brittney Scurry in their official capacities individually and collectively.

## PARTIES

1. Plaintiff Larry F. Murphy is natural persons domiciled within the State of
North Carolina residing in Pitt County at 4342 A Magellan Court, Ayden, N.C.

2. Defendant Aramark is an American food service, facilities, and uniform
services provider to clients in areas including education, prisons, healthcare,
business, and leisure. It operates in North America (United States and Canada) and

an additional twenty (20) countries, including the United Kingdom, Germany, Philippines, South Korea, Chile, the Republic of Ireland and Spain.

3.  Defendant Aramark Headquarters is located at the Aramark Tower in Center City, Philadelphia, Pennsylvania at Aramark Tower, 1101 Market Street, Center City, Philadelphia, PA 19107, and has sixty-seven (67) office and retail locations throughout the United States.

4.  Defendant Aramark Headquarters Human Resources leads human resources functions across Aramark's global operations, and is responsible for talent acquisition, employee relations, compensation, benefits, labor relations, Board matters, and other issues that affect the company's 270,000 employees.

5.  Defendant Aramark Headquarters Human Resources manages MYHR Employee Hot Line which provides Defendant employees access for reporting any possible violation of the Aramark Business Conduct Policy, or any law that an employee becomes aware either by submitting a report on the Aramark Hot Line website or calling the Aramark Hotline at 1(877-224-0411.

6.  Defendant Aramark Headquarters Human Resources MYHR Employee Hot Line provides for an employee when making an Employee Report to provide as much information as possible so that Aramark can do a thorough investigation. The MYHR Employee Hot is managed by an independent service company, allowing employees to make a report anonymously if preferred.

7.  Defendant Aramark Headquarters Human Resources is responsible for ensuring that investigations at the Headquarters level and their sixty-seven (67) office and retail locations throughout the United States are investigated in a timely, proper, and adequate manner, and without partiality.

8.  Defendant Aramark Food Service and Facilities Management has several facilities management locations aboard East Carolina University in Pitt County in Greenville, North Carilina, including at Todd Dining Hall, 28884 College Hill Drive, and at Main Campus Student Center (MCSC), 501 East Tenth (10th) Street were Plaintiff worked and commences this action.

9.  Defendant Kelvin Tarukwasha, District Director, and Defendant Thomas Bedwardii, Director of Operations are the upper management of the Defendant Aramark Food Service and Facilities Management at East Carolina University in Pitt County in Greenville, North Carolina.

3

10.  Defendant former Food Services Director Tara Perez, and Defendant Food Services Director Hillary Gallager are the second (2nd) level management of the Defendant Aramark Food Service and Facilities Management at East Carolina University in Pitt County in Greenville, North Carolina.

11.  Defendant Location Manager Shenitha Dupree is the third (3rd) level management at the Todd Dining Hall, 28884 College Hill Drive, of the Defendant Aramark Food service and Facilities Management at East Carolina University in Pitt County in Greenville, North Carolina.

12.  Defendant Location Manager Brittney Scurry is the third (3rd) level management at the Defendant Main Campus Student Center (MCSC), 501 East Tenth (10th) Street Aramark Food service and Facilities Management at East Carolina University in Pitt County in Greenville, North Carolina.

13.  Defendant Supervisor Darryl Hines, is a fourth level management at the Todd Dining Hall, 28884 College Hill Drive, of the Defendant Aramark Food Service and Facilities Management at East Carolina University in Pitt County in Greenville, North Carolina.

14.  Defendant Ashley Hall is the Human Resources Manager at the Defendant Aramark Food Service and Facilities Management at East Carolina University in Pitt County in Greenville, North Carolina.

15.  Defendant Dusty Marty is a Human Resources Manager at the Defendant Aramark Food Service and Facilities Management Headquarters at 2400 Market Street, in Philadelphia County, in Philadelphia, Pennsylvania.

16.  Defendant Cody Short is a Human Resources Manager at the Defendant Aramark Food Service and Facilities Management Headquarters at 2400 Market Street, in Philadelphia County, in Philadelphia, Pennsylvania.

17.  Defendants Larren Arnold and Christen Anderson are also of the HR Team at the Defendant Aramark Food Service and Facilities Management Headquarters at 2400 Market Street, in Philadelphia County, in Philadelphia, Pennsylvania.

## JURISDICTION

18.  This action is a civil action. Defendants are the real party in interest in this

4

action. This action is commenced within all applicable statues of repose. Jurisdiction over this action is vested in this court under N.C.G.S. Chapter 95.

19. This court is the proper division for the trial of this action under N.C.G.S. Chapter 95, Department of Labor and Labor Regulations § 95-98. The amount in controversy exceeds twenty-five thousand dollars ($25,000).

20. The North Carolina Equal Employment Opportunity Commission (EEOC), Raleigh Area Office, 434 Fayetteville Street, Raleigh, North Carolina issued Plaintiff a **Right-To-Sue Letter on September 1, 2023,** to be filed within 90 days days of receipt of notice, which would be on or before November 1, 2023.

21. The North Carolina Equal Employment Practices Act (NCEEPA) prohibits employment discrimination based on race, color, national origin, religion, age, sex, or handicap. The law applies to employers who regularly employ 15 or more employees.

22. The claims hereinafter stated arose in whole or in part in Pitt County, North Carolina.

23. The Defendants are employees of Todd Dining Hall, 28884 College Hill Drive in Pitt County in Greenville, North Carilina and at Main Campus Student Center (MCSC), 501 East Tenth (10th) Street in Pitt County in Greenville, North Carolina, and of 2400 Market Street, in Philadelphia County, in Philadelphia, Pennsylvania.

## VENUE

24. Pitt County is the proper county for action (N.C.G.S. Chapter 95, Department of Labor and Labor Regulations § 95-98).

## FACTS

25. The Plaintiff Larry F. Murphy became an employee at Defendant Aramark Food Service on September 13, 2013, as an Office Assistant and was moved voluntarily to the 360 Food Service Location XXXXXXXXXXX, and then to the Main Campus Student Center (MCSC) as an Office Assistant under the preview of Location Manager Mike Morgan.

26. During Plaintiff's ten (10) year tenure as the Defendant's employee,

5

Plaintiff has always worked a sitting position with opportunities to go to the bathroom as needed and take his lunch breaks whenever he desired.

27. Plaintiff never experienced having problems from management about taking lunch breaks and bathroom breaks until Plaintiff was involuntarily moved from his Office Worker's position on August 19, 2022, to the Todd Dining Hall as a Cashier under the preview of Co-Defendant former Food Service Director Tara Peren and Co-Defendant Location Manager Shenitha Dupree.

28. Plaintiff involuntary move from his Office Worker's position on August 19, 2022, to the Todd Dining Hall as a Cashier did not required Plaintiff to apply for accommodations, as Plaintiff's sitting was verbally agreed upon and Plaintiff was allowed to sit as he has always been seated to perform his Cashier duties.

29. Only on Plaintiff's final day of work on May 10, 2023, was sitting raised being a problem by Co-Defendant Human Resource Manager Ashley Hall in a meeting with Co-Defendant Director of Operations Thomas Bedwardii, during a conference call with MYHR Manager Dustin Marty.

30. In the May 10, 2023, meeting with conference call with Co-Defendant MYHR Manager Dustin Marty, he informed Plaintiff that Plaintiff's 101-page Discrimination Complaint and other issues submitted by Plaintiff to him via email and subsequent email had all been investigate and that there were no findings of anything that has been done wrong that Plaintiff had alleged.

31. In the May 10, 2023, meeting with conference call with MYHR Manager Dustin Marty, Co-Defendant HR Manager Ashley Hall informed Plaintiff that Plaintiff would not be need at the Todd Dining Hall for the coming Fall 2023 Semester because things had changed and that only one (1) Cashier would be needed.

32. In the May 10, 2023, meeting with conference call with MYHR Manager Dustin Marty, Co-Defendant HR Manager Ashley Hall, then asked Plaintiff what other jo Plaintiff could do, and Plaintiff replied: "Office Worker," and Co-Defendant HR Manager Ashley Hall immediately replied: "oh no, you cannot do that one." Plaintiff replied: why not, I've worked it before, and she said nothing.

33. In the May 10, 2023, meeting with conference call with MYHR Manager Dustin Marty, Co-Defendant HR Manager Ashley Hall then told Plaintiff to apply for accommodations and that we would go from there, and Plaintiff did just that on June 12, 2023.

34. On May 10, 2023, Plaintiff was not provided a lay-off letter and Plaintiff never requested and completed a Leave of Absence (LOA) application, because Plaintiff never had the need nor ever considered himself a candidate for LOA.

35. As such, at no time has Plaintiff ever requested, signed, and submitted a LOA application to Co-Defendant HR Manager Ashley Hall authorizing Defendant Aramark to place him on an official LOA.

36. Plaintiff had no adverse actions against him until May 2022, under the previews of Co-Defendant former Food Service Manager Tara Perez and Co-Defendant Main Campus Student Center (MCSC) Location Manager Brittney Scurry, and up until then, Plaintiff's employment record was impeccable, and he was highly recognized as one (1) if not the most capable and effective Office Worker on the ECU Campus.

37. Plaintiff's Front Line Employees Assessments have always been majority "Far Exceeds Expectations."

38. Plaintiff Front Line Employees Assessments were very rarely Achieved Expectations.

39. Plaintiff Front Line Employees Assessments have never been Approached Expectations nor Far Below Expectations.

40. Plaintiff's last Front Line Employees Assessment was performed December 10, 2019, by Defendant's Main Campus Student Center (MCSC) Location Manager Brittney Scurry.

41. Plaintiff's Overall Front Line Employees Assessment of December 10, 2019 by Defendant's Main Campus Student Center (MCSC) Location Manager Brittney Scurry was a Score of 27, which was a rating of Far Exceeds Expectations.

42. Plaintiff has not received a Front-Line Employees Assessment since December 10, 2019.

43. Plaintiff's Front-Line Employees Assessments clearly showed Plaintiff as not only qualified, but highly qualified for the Office Worker's position.

44. Plaintiff's credentials, work experience, and skill set shows Plaintiff more

7

highly qualified than most managers and/or supervisors for whom Plaintiff worked.

45. Plaintiff continued receiving monetary raises after December 10, 2019, for his performance without receiving a Front-Line Employees Assessment to substantiate or justify reasons for the raises.

46. Plaintiff was involuntarily removed from his Office Worker's position in May 2022, to the less desirable position of Cashier at the Todd Dining Hall.

47. Plaintiff was called via telephone by Defendant's Location Manager Shenitha Dupree on August 17, 2022, to report to work on August 19, 2022, at the Todd Dining Hall as a Cashier.

48. Plaintiff reported to work in the Cashier's position at the Todd Dining Hall on August 19, 2022, as instructed by Defendant's Location Manager Shenitha Dupree.

49. Plaintiff could have never imagined the blatant defiance of policies and procedures and toxicity of a terrible work environment that Plaintiff was about to be subjected.

50. Defendant Aramark should pay special attention to Plaintiff's complaint, because Defendant Aramark's Welcome to Aramark means absolutely nothing to these deplorables seeking during things their own ways and making the work environment as unwelcomingly and stressful as possible.

51. These Aramark Co-Defendants were not happy that Plaintiff was with them and do not welcome Plaintiff to the team. These deplorables were not ensuring that Defendant Aramark was one of the best places to work, but rather one of the worst places to work.

52. These Aramark Co-Defendants ensured that Plaintiff did not find this opportunity for himself to grow professionally and personally with these deplorables and ensured that Plaintiff interactions were curtailed from making a lasting impact that signatured Plaintiff's mark of success.

53. These Aramark Co-Defendants proved that Plaintiff wasn't important to them, and placed prohibitions whenever possible for Plaintiff to create Defendant Aramark's unforgettable experience and providing service to Defendant's students, faculty, clients, and customers, because these deplorable did not appreciate

Plaintiff's work efforts and made Plaintiff feel excluded, unsupported, and very discouraged.

54. These Aramark Co-Defendants did not strive to achieve a safe, diverse, and inclusive workforce for Defendant Aramark to be proud of, but rather a profoundly frustrated, tensed, and confused work environment of intimidation absent of any training and development of its employees.

55. These Aramark Co-defendants failed miserably in recognizing and rewarding Plaintiff for his contributions, but rather sought desperately to demise and destroy plaintiff at every opportunity.

56. As Plaintiff previously stated, these deplorables have no concerns about Diversity, Equity, and Inclusion, because they're self-centered narcissists who care only about themselves and all other people mean nothing to them, as Plaintiff's case will overwhelmingly prove concerning himself.

57. Plaintiff taught himself the Micro Oracle Register training with the help of ECU Business Coordinator Mary Rhodes.

58. Todd Dinning Hall's recklessness, carelessness, and failure to follow existing policy, law and procedures became profoundly clearer as Plaintiff's learning of the Micro Oracle Register system grew and Plaintiff's application of that knowledge was implemented accordingly, and the revelation was shameful.

59. Plaintiff did not receive a Front-Line Employees Assessment in 2022 from Co-Defendant Todd Dining Hall Location Manager Shenitha Dupree.

60. Plaintiff did not receive a wage increase in 2022 from Co-Defendant Todd Dining Hall Location Manager Shenitha Dupree.

61. On August 19, 2022, Plaintiff's start date at Todd Dining Hall, the Ozzi-To-Go-Box Machine was only disbursing Ozzi Coins, which Plaintiff believed being the Ozzi-To-Go-Box Machine's function when a dirty green-To-Go-Box was returned to it.

62. Co-Defendant Location Manager Shenitha Dupree's instructions to was to receive the Ozzi Coin, put it in the register, choose the appropriate To-Go-Meal, and swipe the One Card, which was the same as Defendant Senior Cashier Debbie

9

Daniels was doing, and appeared being the accurate way of processing To-Go-Box meals.

63. Sometime around mid-September 2022, the Ozzi-To-Go-Box Machine was repaired and started disbursing Ozzi Digital Token Credits to the One Card after a dirty green-To-Go-Box was returned to it, and Co-Defendant Location Manager Shenitha Dupree instructed Plaintiff receive to use the Ozzi Digital Token button on his register to process the appropriate To-Go-Box meal.

64. Sometime around mid-September 2022, Plaintiff also learned that Co-Defendant Senior Cashier Debbi Daniels's Ozzi Digital Token button was broken and that she was processing To-Go-Box-Meals as Co-Defendant Location Manager Shenitha Dupree instructed Plaintiff from the beginning as if she wasn't required to use the Ozzi Digital Token button on her register.

65. From time to time the Ozzi-To-Go-Box Machine would stop disbursing Ozzi Digital Token credits to One Cards and disbursed only Ozzi Coins, and Plaintiff always informed Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, and Director of Operations Thomas Bedwardii of the problem and it was fixed at some point.

66. However, what remained unfixed and appeared not being a problem to anyone was Defendant Senior Cashier Debbie Daniels's broken Ozzi Digital Token button on her register which was worked from by Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, Co-Defendant Director of Operations Thomas Bedwardii, Co-Defendant Location Manager Shenitha Dupree, Co-Defendant Supervisor Darryl Hines, other Defendant supervisors, and Defendant employees knowing nothing about the Micro Oracle Register system and processing as a daily Standard of Operations (SOP), as if nothing was wrong with what they were doing.

67. Co-Defendant Location Manager Shenitha Dupree never provided any training nor written instructions for register processing at Plaintiff's start date of August 19, 2022, and Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, Co-Defendant Director of Operations Thomas Bedwardii, former Co-Defendant Food Service Director Tara Perez and Co-Defendant Hillary Gallagher never saw it necessary that Defendant employees they placed at the registers were trained and qualified to do the job.

68. Plaintiff became frustrated and discouraged at the poor attitudes by

10

managerial personnel and Defendant Senior Cashier Debbie Daniels's reluctant attitude to ensure that she was doing her job in a proper and adequate manner. However, Plaintiff came to realized that management didn't care and neither did she.

69.  Plaintiff never stopped asking questions about the To-Go-Box processing and raising his questions and complaints to Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, Co-Defendant Director of Operations Thomas Bedwardii, however nothing changed.

70.  On Wednesday December 7, 2022, Co-Defendant Location Manager Shenitha Dupree called a meeting in her office with Plaintiff and Defendant Senior Cashier Debbie Daniels to discuss issues existing between Plaintiff and Defendant Senior Cashier Debbie Daniels.

71.  On Friday December 9, 2022, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez called a meeting in Co-Defendant Location Manager Shenitha Dupree's office with Plaintiff and had Plaintiff wait alone for a little over an hour before coming in and convening the meeting.

72.  After convening the Friday December 9, 2022, meeting, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez verbally reprimanded Plaintiff about going outside of Co-Defendant Location Manager Shenitha Dupree's leadership to inform Co-Defendant District Residential Director Kelvin Tarukwasha, and Co-Defendant Director of Operations Thomas Bedwardii of existing problems.

73.  Additionally, at the Friday December 9, 2022, meeting, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez verbally reprimanded Plaintiff about Plaintiff's alleged inability to cooperate properly with Defendant Senior Cashier Debbie Daniels and not respecting her seniority as the senior cashier.

74.  After which, at the Friday December 9, 2022, meeting, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez informed Plaintiff that all the existing problems that Plaintiff was experiencing had already been reported and in the process of being fixed, buit would take some time, which required being patient.

75.  Co-Defendant Food Service Director Tara Perez on Friday December 9,

2022, at the meeting that East Carilina University was a "test site" for the "To-Go-Box" processing and many things are still being worked out.

76. On Friday December 9, 2022, Co-Defendant Food Service Director Tara Perez informed Plaintiff that she would do something administratively to track what was happening with the To-Go-Box processing, and she never did.

77. On Friday December 9, 2022, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez informed Plaintiff that as a direct result of accusing Defendant Senior Cashier Debbie Daniels of not doing her job and Plaintiff's inability of not getting along with Defendant Senior Cashier Debbie Daniels that Plaintiff needed to be separated from Defendant Senior Cashier Debbie Daniels.

78. On Friday December 9, 2022, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez involuntarily removed Plaintiff from his morning cashier shift from 9:00 AM to 1:00 PM to the lesser desirable position of Sanitation Worker of wiping tables and cleaning floors.

79. On Friday December 9, 2022, Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez informed Plaintiff that this adverse action was taken for Plaintiff to learn to get along with Defendant Senior Cashier Debbie Daniels.

80. On Friday December 9, 2022, Plaintiff informed Co-Defendant Location Manager Shenitha and Co-Defendant Food Service Director Tara Perez that the adverse actions of wiping tables and cleaning floors were humiliating and embarrassing and provided Defendant Senior Cashier Debbie Daniels opportunity to exalt herself and celebrate Plaintiff's demise of wiping tables and cleaning floors.

81. Neither Co-Defendant Residential District Director Kelvin Tarukwasha, nor Co-Defendant Director of Operations Thomas Bedwardii saw fit to intervene and stop the unnecessary harassment and retaliation actions implemented against Plaintiff by Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez.

82. Unknowing to Plaintiff Co-Defendant Residential District Director Kelvin Tarukwasha and Co-Defendant Director of Operations Thomas Bedwardii were just as frustrated and irritated of Plaintiff's questioning of To-Go-Box Instructions

12

as Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Tara Perez, and later Co-Defendant Food Service Director Hillary Gallagher.

83. Unknowing to Plaintiff, he had made himself an unwelcoming archenemy that management needed to rid themselves of, and for Defendant Senior Cashier Debbie Daniels, Plaintiff's very presence at work was a tormenting factor, because she despised Plaintiff with a profound passion.

84. Defendant Senior Cashier Debbie Daniels knew that Plaintiff's skill set, including his education and communicative skills were highly qualified above hers and she possessed bitter envy and self-seeking to make herself above Plaintiff, but did so to no avail; and therefore, passionately wanted Plaintiff gone from Todd Dining.

85. On December 15, 2022, Co-Defendant Location Manager Shenitha Dupree announced at a called employees' group meeting that Food Service Director Tara Perez would no longer be with the Todd Dining Hall's management staff.

86. After the Fall Semester break from December 16, 2022, to January 4, 2023, Plaintiff returned to work on January 5, 2023.

87. Defendant Senior Cashier Debbie Daniels did not return back to work on January 5, 2023, because she had caught the COVID-19 disease and had to wait until January 9, 2023, before returning.

88. As a direct result of Defendant Senior Cashier Debbie Daniels not returning to work on January 5, 2023, Plaintiff was placed back at his register to perform Cashier duties at his normal scheduled time from 9:00 AM to 5:00 PM by Co-Defendant Location Manager Shenitha Dupree.

89. Mary Rhodes rhodesm@ecu.edu, phone: (252)-328-3663 is the Business Services Coordinator for ECU Dining Services managing the meal plan office and the point-of-sale system.

90. Celia Daniels danielsce21@ecu.edu, phone: (252) (252)-328-3663 is the Director of Dining Services for ECU Dining Services providing ECU's food service program innovative (look for the robots) and offering the ECU campus a wider variety of options and services than ever before including, but not limited to, the Ozzi-To-Go-Program.

13

91. Mary Rhodes provided Co-Defendant former Food Service Director Tara Perez, Todd Dining Hall, former Defendant Location Manager Brian Hayworth, West End Dining Hall, Co-Defendant Shenitha Dupree, Todd Dining Hall, and Co-Defendant Thomas Bedwardii, Director of Operations the 4-Pages of Ozzi-To-Go-Program instructions on or about August 2021.

92. Plaintiff was not provided any written register instructions, including, but not limited to, the Ozzi-To-Go-Program when he began his employment at the Todd Dining Hall on August 19, 2022.

93. Co-Defendant Location Manager Shenita Dupree provided Plaintiff the Ozzi-T-Go-Program instructions on February 13, 2023, exactly 5 months and 24 days after Plaintiff began his employment on August 19, 2022, at the Todd Dining Hall.

94. The Ozzi-To-Go-Program provided by Business Services Coordinator Mary Rhodes on or about August 2021, was provide to Plaintiff by Co-Defendant Location Manager Shenitha Dupree at least 1 ½ years later to Plaintiff.

95. The "First Two Weeks of Operations" provide by Business Services Coordinator Mary Rhodes to Todd Dining Hall and West End Dining Hall was provided to Plaintiff by Co-Defendant Shenitha Dupree on January 5, 2023, at the beginning of the semester.

96. The "First Two Weeks of Operations" provide by Business Services Coordinator Mary Rhodes to Todd Dining Hall and West End Dining Hall was provided to Defendant Senior Cashier Debbie Daniels after she returned to work on January 9, 2023, from her COVID-19 absence.

97. The "First Two Weeks of Operations" provide by Business Services Coordinator Mary Rhodes to Todd Dining Hall and West End Dining Hall was for implementation from January 5, 2023, to January 18, 2023; however, the "Note to Celia" provided a service beyond January 18, 2023.

98. The Note to Celia" at the end of the "First Two Weeks of Operations" stated: "A student can provide their Banner ID at any time throughout the semester and be fed! The Cashier at Todd/West End need to know that they have to provide the Banner ID, first and last names to Mary all the time, with any occurrence."

99. Defendant Employee Handbook: Date Published July 2022, page 19, Leave

14

of Absence LOA) states: "Aramark recognizes that certain circumstances may require absence from work for medical, family, or civil reasons. The two (2) primary categories of leave are: statutory leave (e.g., leave covered under the Family and Medical Leave Act, the Americans with Disabilities Act, The Pregnancy Discrimination Act, or other applicable law). Examples of unprotected leave include leave for educational pursuits or personal travel."

100.    Defendant Employee Handbook: Date Published July 2022, page 22, **Leave of Absence LOA**) states: "A **"personal Leave of Absence (LOA)"** may be available to an employee under certain circumstances. An **"employee's job is not protected"** while on a **"personal leave of absence (LOA)"**—which means that **"Aramark cannot guarantee"** —that the **"employee will be reinstated"** — following the **"leave (LOA)."**

101.    Defendant Employee Handbook: Date Published July 2022, page 22, **Leave of Absence LOA**) states: **"Personal leaves (LOAs)"** —are **normally limited** —to a period —of <u>30 days, upon written application from</u> —the <u>employee</u>—and <u>with prior management approval.</u> —Such **leaves (LOAs)** may be **extended** —for **additional 30-day periods, upon management approval, up**—to a <u>maximum</u> —of <u>60 days."</u>

102.    Defendant Employee Handbook: Date Published July 2022, page 22, **Leave of Absence LOA**) states: "The **leave of absence (LOA) may be taken without pay**—or an Employee may use any accrued Vacation and/or PTO during the **leave (LOA).** However, neither **Vacation nor PTO** may be used to **extend** — that **leave (LOA) beyond** —the **30-day period. —Neither Vacation nor PTO accrues during** —a **personal leave of absence (LOA) if**—the **leave (LOA)** —is **unpaid."**

103.    Defendant Employee Handbook: Date Published July 2022, page 5, **Code of Conduct** states: "Aramark is committed to maintaining high standards in all locations in which we operate. This **code of conduct** is based on a set of fundamental core principles that serve as the foundation of how we interact with co-workers, with our client partners, and with the customers that we serve."

104.    Defendant Employee Handbook: Date Published July 2022, page 5, **Code of Conduct** states: "We a share passion for hospitality, it's at the foundation of everything we do. Employees are expected to work together with a cooperative spirit by supporting an inclusive workplace that respects the diverse background of your co-workers. Employees are expected to be courteous and respectful to co-

workers, customers, and business partners while in the course of company business.

105.     Defendant Employee Handbook: Date Published July 2022, page 5, **Code of Conduct** states: "Because **we do everything with integrity,** —deliver our commitments, respect diversity and appreciate differences, —and are **passionate about everything we do—employees will observe** —the following **"standards of conduct"** in addition —to **those detailed** in —the **Aramark Employee Handbook** and **Location Guide:**

- Recognize and respect the rights of co-workers, customers, clients, client partners, the community we serve.

- Work in a cooperative manner, foster teamwork and employee participation, and encourage the representation of different employee perspectives.

- Report to work according to the assigned schedule and fulfill job responsibilities as directed by management.

- Refrain from threatening, intimidating, or coercing, co-workers, customers, or business partners.

- Know and comply with all relevant department and client policies and procedures.

106.     Defendant Employee Handbook: Date Published July 2022, page 6, **Who We Are** states: "Aramark is a dynamic organization of over 248,000 employees operating in 19 countries worldwide. Aramark is proud to create a high performing culture and a welcoming workplace that values our differences and drives motivation through inclusion.

107.     Defendant Employee Handbook: Date Published July 2022, page 6, **Who We Are** states: "We are consistently recognized as an employer of choice by FORTUNE'S Most Admired Companies; a Top 50 Company for Diversity-by-Diversity Inc. Magazine, and a Best Place to Work for LGBTQ Equality by the Human Rights Campaign.

108.     Defendant Employee Handbook: Date Published July 2022, page 6,

**Who We Are** states: **"Our Mission:"** Because we're rooted in service, we do great things for our people, our partners, our communities, and our planet."

109.     Defendant Employee Handbook: Date Published July 2022, page 6, **Who We Are** states: **"Our Mission:"** Because we're rooted in service, we do great things for our people, our partners, our communities, and our planet."

110.     Defendant Employee Handbook: Date Published July 2022, page 6, **Who We Are** states: **"Our Vision:"** is to be the most admired employer and trusted hospitality partner.

111.     Defendant Employee Handbook: Date Published July 2022, page 6, **Who We Are** states: **"Our Values:"** —We **do everything with integrity.** —We **deliver our commitments.** —We **respect diversity** and **appreciate differences.** —We're **passionate about everything we do.**

## ALLEGATIONS

112.     Co-Defendant former Food Service Director Tara Perez and Co-Defendant Location Manager Shenitha Dupree **failed providing as required** Micro Oracle Register system training to employees hired as Cashiers, including Plaintiff, Defendant Cashier Amber Morse, and Defendant Senior Cashier Debbie Daniels.

113.     Co-Defendant Food Service Director Hillary Gallagher and Co-Defendant Location Manager Shenitha Dupree **failed providing as required— Micro Oracle Register system training** —to employees hired as Cashiers, including Plaintiff, Defendant Cashier Amber Morse, and Defendant Senior Cashier Debbie Daniels.

114.     Co-Defendant former Food Service Director Tara Perez and Co-Defendant Location Manager Shenitha Dupree **failed providing as required— Ozzi -To-Go-Box Program Register system training** —to employees hired as Cashiers, including Plaintiff, Defendant Cashier Amber Morse, and Defendant Senior Cashier Debbie Daniels.

115.     Co-Defendant Food Service Director Hillary Gallagher and Co-Defendant Location Manager Shenitha Dupree **failed providing as required— Ozzi -To-Go-Box Program Register system training** —to employees hired as

17

Cashiers, including Plaintiff, Defendant Cashier Amber Morse, and Defendant Senior Cashier Debbie Daniels.

116.     Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, and Co-Defendant Director of Operations Thomas Bedwardii, **failed ensuring as required—**that **Micro Oracle Register system training—**and **Ozzi - To-Go-Box Program Register system training—**were **provided —** to employees hired as Cashiers, including Plaintiff, Defendant Cashier Amber Morse, and Defendant Senior Cashier Debbie Daniels.

117.     Co-Defendant former Food Service Director Tara Perez —and Co-Defendant Location Manager Shenitha Dupree, —and Food Service Director Hillary Gallagher, —and Co-Defendant Location Manager Shenitha, — Co-Defendant Director of Operations Thomas Bedwardii, —and Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, **all under prioritized —** the **essentiality —**of the **Micro Oracle Register system training—** and of the **Ozzi -To-Go-Box Program Register system training.**

118.     As the **direct result —**of the **under prioritization —**of the **essentiality —**of the **Micro Oracle Register system training—** and of the **Ozzi - To-Go-Box Program Register system training—**the **Ozzi -To-Go-Box Program failed miserably** into the abyss.

119.     Co-Defendant former Food Service Director Tara Perez —and Co-Defendant Location Manager Shenitha Dupree, —and Food Service Director Hillary Gallagher, —and Co-Defendant Location Manager Shenitha, — Co-Defendant Director of Operations Thomas Bedwardii, —and Co-Defendant District Residential Director Kelvin Tarukwasha, —**all tried desperately keeping** — the **Ozzi -To-Go-Box Program miserable failure hidden.**

120.     The **overwhelming evidence —**of the **conspiracy—** to **keeping —** the **Ozzi -To-Go-Box Program miserable failure hidden—**was the **blatant miserable failures —** of Co-Defendant former Food Service Director Tara Perez — Co-Defendant Location Manager Shenitha Dupree— Co-Defendant Food Service Director Hillary Gallagher, — Co-Defendant Director of Operations Thomas Bedwardii, —and Co-Defendant District Residential Director Kelvin Kelvin Tarukwasha, —to <u>**allow Defendant Senior Cashier Debbie Daniels's** —</u> <u>**"broken Ozzi Digital Token register button"** —</u>to <u>**remain unrepaired** —</u>for <u>**"9 months."**</u>

121.     Co-Defendant former Food Service Director Tara Perez —and Co-Defendant Location Manager Shenitha Dupree, —and Food Service Director Hillary Gallagher, —and Co-Defendant Location Manager Shenitha, — Co-Defendant Director of Operations Thomas Bedwardii, —and Co-Defendant District Residential Director Kelvin Tarukwasha, —by **keeping** —the **Ozzi -To-Go-Box Program miserable failure hidden**— the **standard operations procedure** (SOP) —for **Cashiers was placing any employee —verbally taught** the **One Card swiping process** — at **their will** —at the **registers.**

122.     Co-Defendant former Food Service Director Tara Perez —and Co-Defendant Location Manager Shenitha Dupree, —and Food Service Director Hillary Gallagher, —and Co-Defendant Location Manager Shenitha, — Co-Defendant Director of Operations Thomas Bedwardii, —and Co-Defendant District Residential Director Kelvin Tarukwasha **conducts constituted** —a **blatant non-compliance** —with **relevant department** —and **client policies** — and **procedures.**

123.     Co-Defendant Location Manager Shenitha Dupree's training consisted Only of a few verbal instructions of: (1) choosing the appropriate meal, whether Breakfast, Lunch, Afternoon (NP), or Dinner; (2) tabbing the Yellow Meal tab, and (3) swapping the student's or faculty member's One Card.

124.     Co-Defendant Location Manager Shenitha Dupree's verbal training instructions likewise for To-Go-Box Meals of: (1) choosing the appropriate To-Go-Meal, whether Breakfast, Lunch, Afternoon (NP), or Dinner; (2) tabbing the Yellow Meal tab, and (3) swapping the student's or faculty member's One Card.

125.     Co-Defendant Location Manager Shenitha Dupree's verbal training instructions for cash or credit Card payments for Meals or To-Go-Meals was: (1) choosing the appropriate Meal or To-Go-Meal, whether Breakfast, Lunch, Afternoon (NP), or Dinner; and (2) tabbing the cash or credit Card button as appropriate to process payment.

126.     Defendant Senior Cashier Debbie Daniels **was not a model Cashier** because she was untrained and unknowledgeable of the Micro Oracle Register processing and the Ozzi-To-Go Program processing.

127.     Defendant's Senior Cashier Debbie Daniels after being provided the

proper To-Go-Box Program instructions on February 13, 2023, could not implement appropriate and accurate processing because of the broken Ozzi Digital Token button on her register.

128.    Defendant's Senior Cashier Debbie Daniels even after the after broken Ozzi Digital Token button on her register was repaired by ECU Business Coordinator Mary Rhodes on April 9, 2023, continued operating as she had always operated with the broken Ozzi Digital Token button on her register.

129.    Plaintiff informed Co-Defendant Location Manager Shenitha Dupree of Defendant Senior Cashier Debbie Daniels's failure to process To-Go-Box-Meals as required and Co-Defendant Location Manager Shenitha Dupree **told Plaintiff** not to worry about what Senior Cashier Debbie Daniels and others assigned to her register are doing, and to just do his job.

130.    As a direct result of Plaintiff raising questions and resurrecting life to the To-Go-Box processing, **Plaintiff became an archenemy** of Defendant Senior Cashier Debbie Daniels and all other managerial personnel involved in **keeping —** the **Ozzi -To-Go-Box Program miserable failure hidden.**

131.    Co-Defendant Location Manager Shenitha Dupree's and Co-Defendant former Food Service Director Tara Perez's **December 9, 2022, verbal reprimand** of Plaintiff for **allegedly not getting along** with Defendant Senior Cashier Debbie Daniels —and **removing** Plaintiff of **his 9:00AM -1:00 PM register duties** —to **wiping tables** —and **cleaning floors**— for Plaintiff's **behavior toward** Defendant Senior Cashier Debbie Daniels was **totally unjust —** and **constituted harassment** —and **retaliation.**

132.    Defendant Senior Cashier Debbie Daniels **did not recognize** Plaintiff's rights and **failed to work** in a cooperative manner with Plaintiff and **failed to foster** teamwork and employee participation with Plaintiff because —**she did not seek** —to **fulfill her Cashier responsibilities** —as **required** —by **relevant department** —and **client policies** —and **procedures.**

133.    Defendant Senior Cashier Debbie Daniels **failed complying** with the FIRST TWO (2) WEEKS OF OPERATION" instructions, which covered the period of January 5, 2023, to January 18, 2023.

134.    Defendant Senior Cashier Debbie Daniels **failed** to appropriately serve students with **no One Card,** —by asking for State issued ID cards and requesting Banner ID from customers, and attempt inputting Banner ID in the

register, and if the Banner ID doesn't work, **she failed** —to **write down** —the **student's first** —and **last names** —on **log sheets provided** by ECU Business Coordinator Mary Rhodes.

135.    Defendant Senior Cashier Debbie Daniels **failed** to appropriately serve students with **no One Card,** —and that **did not know their Banner ID** —to **record** the —**student's first** and **last names** —and **note: — "did not know Banner ID"** —and **send this list to Mary Rhodes** following each meal period. This can be scanned, hand-delivered, or photo texted.

136.    Plaintiff informed Co-Defendant Location Manager Shenitha Dupree of Defendant Senior Cashier Debbie Daniels's **failure** —to follow the FIRST TWO (2) WEEKS OF OPERATION" instructions, which covered the period of January 5, 2023, to January 18, 2023, —and **again** Co-Defendant Location Manager Shenitha Dupree —**told Plaintiff** not to worry about what Senior Cashier Debbie Daniels and others assigned to her register are doing, and to just do his job.

137.    Co-Defendant Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher were **adamantly against students' usage** —of **Banner IDs in lieu** —of **One Cards to eat** —as the FIRST TWO (2) WEEKS OF OPERATION" instructions **provided,** —and **created their own personal verbal prohibition** —of **"no Banner ID usage.**

138.    On Wednesday, January 18, 2023, Plaintiff after returning from lunch at approximately 1:15 PM, a student, Trinity Wooden, whose One Card had been inoperative when Plaintiff previously processed it and had written Trinity Woods's Banner ID, first and last names on provided Recording Sheets and allowed her entrance to Todd Dining Hall to eat had gone pass Defendant Senior Cashier Debbie Daniels.

139.    On Wednesday, January 18, 2023, Plaintiff spoke with the student, Trinity Wooden and asked if she had she gotten her One Card fixed, and she stated that she had not; and Defendant Senior Cashier Debbie Daniels immediately asked Trinity for her One Card and Trinity gave it to her.

140.    Defendant Senior Cashier Debbie Daniels tried processing Trinity's One Card several times and Plaintiff informed Defendant Senior Cashier Debbie Daniels that Trinity's One Card was inoperative, and that Trinity's Banner ID, first and last names needed to be recorded on the provided Recording Sheets as required.

141.     Defendant's Senior Cashier Debbie Daniels didn't have any required Recording Sheets at her register and Plaintiff asked the student Trinity to come to Plaintiff's register and Plaintiff processed the student Trinity as required.


142.     Plaintiff informed Co-Defendant Location Manager Shenitha Dupree of Defendant Senior Cashier Debbie Daniel's **failure** —to process students appropriately according to instructions, and that Defendant Senior Cashier Debbie Daniels— **had worked for many days without** required Recording Sheets, and Co-Defendant Location Manager Shenitha Dupree **just walked away frustrated** and **disregarding** Plaintiff's complaint.

143.     On Thursday January 19, 2023, after clocking in and going to Plaintiff, register, Plaintiff **found** —that **required Recording Sheets had been removed** from Plaintiff's register, and Plaintiff **immediately complained** to —Co-Defendant Director of Operations Thomas Bedwardii for the **return** —of **his required Recordation Sheets**—that were **taken** from Plaintiff's register —by Co-Defendant Location Manager Shenitha Dupree.

144.     Co-Defendant Location Manager Shenitha Dupree's **removal** —of Plaintiff's **required Recordation Sheets constituted** —a premeditated, intentional, willful, purposeful, and deliberate **inference** —of Plaintiff's **compliance** —with **relevant department** —and **client policies** —and **procedures;** —and Plaintiff **requested** —of Defendant Director of Operations Thomas Bedwardii—to **have his required Recordation Sheets returned immediately.**

145.     Co-Defendant Location Manager Shenitha Dupree and Defendant Cashier Senior Cashier Debbie Daniels **always created friction** with Plaintiff over instructions that they both **have failed** —to **properly interpret** —and implement **accordingly.**

146.     Co-Defendant Location Manager Shenitha Dupree **again verbally reprimanded** Plaintiff —for **always finding something wrong** —with Defendant Senior Cashier Debbie Daniels' **work** —and **told** Plaintiff —that he **needed** —to **just do his job**—and **not worry about** —what Defendant Senior Cashier Debbie Daniels and other Cashiers are doing.

147. On Friday January 20, 2023, after Plaintiff returned from lunch at 1:17 PM —the **required Recordation Sheets had been returned** —to Plaintiff's **register,** —and Plaintiff **transferred students' Banner IDs, first** —and **last names**— that Plaintiff had recorded on another piece of paper —to the **required Recording Sheets.**

148. On Thursday January 26, 2023, just before clocking out and going home, Defendant Location Manager Shenitha Dupree informed Plaintiff that the **"Note to Celia"** on the "FIRST TWO (2) WEEKS OF OPERATION" instructions **had been revoked** —and **Cashiers were no longer**— to **permit students** — as previously via **Banner ID, first** —and **last names throughout** —the **semester** — to **eat** —or **be fed**—which was **terrible** for the students; and **nothing in writing** —was **provided** supporting the change.

149. Co-Defendant Supervisor Darryl Hines— who is Plaintiff's and Defendant Senior Cashier Debbie Daniels's **immediate supervisor** —is completely and thoroughly **ignorant** —of **Micro Oracle Register processing,** in particular the **To-Go-Box Program processing** —and **Group processing** —and therefore cannot be trusted nor relied upon —to **train nor advise** anyone about— **proper** and **appropriate register processing.**

150. As a **direct result** — of **just pure ignorance,** —both Co-Defendant Supervisor Darryl Hines, and Co-Defendant Location Manager Shenitha Dupree **often provided misinterpretations** —of the Aramark Lunch policy, —To-Go-Box Program processing instructions, — the "FIRST TWO (2) WEEKS OF OPERATION" instructions, including the "Note to Celia," —and questions in general; —**totally untrustworthy** —and **unreliable managerial personnel.**

151. Co-Defendant Food Service Director Hillary Gallagher's **addition** — to the Todd Dining management staff **intoxicated** —the **work environment even worser** —with **her racist white behavior practices.**

152. On Friday January 27, 2023, Plaintiff was taking off at 2:00 PM after being asked by Co-Defendant Darryl Hines to come to work at 8:00 am in lieu of 9:00 AM— because Plaintiff had informed Co-Defendant Darryl Hines on Thursday January 26, 2023, he had a doctor's appointment at 2:45 PM, and would be working only 6 hours.

153. On Friday January 27, 2023, Co-Defendant Supervisor Darryl Hines

sent Defendant Supervisor Terrell Johnson to **relieve** Plaintiff —for **his lunch break**— and Defendant Supervisor Terrell Johnson **informed** Plaintiff —that Co-Defendant Supervisor Darryl Hines **told** her —to tell Plaintiff —**he was only entitled**—a **15-minute break;** and Plaintiff stated: "that's a **violation** of labor law."

154. Co-Defendant Food Service Director, being on the job for about a week and one day **overheard Plaintiff's response,** —and **arrogantly** and **loudly** stated: "what a **violation** of labor law? Plaintiff responded: **"not allowing me** —to **have my required 30-minute lunch break"** —and **"attempting"** —to **force me** —to take a **"15-minute break instead."**

155. Co-Defendant Food Service Director Hillary Gallagher **aggressively, arrogantly,** and **loudly** responded: **"what time did you come to work?"** — Plaintiff responded: **"8:00 am,."** and Co-Defendant Food Service Director Hillary Gallaugher **begin counting on her fingers** —and **aggressively, arrogantly,** and **loudly** responded: **"it was a mistake"** —and **"what are you so angry about?** — Plaintiff responded: "because Defendant Supervisor Darryl Hines **knew exactly**— what he was **attempting** —to do because **he has successfully done it to others.**

156. Co-Defendant Supervisor Darryl Hines **will perform anything crooked or corrupt** —to please or satisfy this corrupt and deplorable management —that had made **this work environment** —an **unwelcomingly** and **unfavorable terrible workplace,** —that **cannot retain employees,** which is a **proven fact** — that's **verified** —the **employees' turnover rate.**

157. On January 30, 2023, Defendant Supervisor Terrell Johnson **informed** Plaintiff —that she asked Co-Defendant Supervisor Darryl Hines **why he lied** —to Co-Defendant Food Service Director Hillary Gallagher **about telling her** —to tell **Plaintiff** —that **Plaintiff only being entitled** —to a **15-minute break,** —and **not his required 30-minute lunch break?** — Co-Defendant Supervisor Darryl Hines **just manifested** a smirky smile and walked away.

158. On January 30, 2023, Defendant Supervisor Terrell Johnson **informed** Plaintiff —to **not trust** Co-Defendant Supervisor Darryl Hines—because **he's a Judas** —and **will tell everything you tell him** —and **more** —because **he's a liar** —while **deceiving you** to make you believe that he's with you.

159. Co-Defendant Supervisor Darryl Hines **forced** Defendant's Sanitation

24

Worker Kalevieon Edwards —to **work his entire 6-hour work shift** —and had him **clock out** —and **take his 30-minute lunch break after clocking out.**

160.     It's also **believed** that Defendant's Supervisor Darryl Hines has **worked ECVC participant Dejara Williams** —to **work 6-hours shifts without taking her required 30-minute lunch breaks** —because of **shortages** of employees —and **having no one** —to relieve her, —and as well as other employees.

161.     On January 30, 2023, Co-Defendant Location Manager Shenitha Dupree **failed** —to **provide** Plaintiff **advance notice** —of the **arrivals** of two (2) groups —and to **provide** Plaintiff the **HR Group's** —and the **Music Group's One Cards** —for **processing them** into Todd Dining —to **eat.**

162.     On Monday January 30, 2023, at **approximately 11:30 am,** —the two (2) Groups **arrived unexpectedly,** —firstly the **HR Group**—and secondly the **Music Group** within **5 minutes** of each other —placing Plaintiff in a **desperate need** —of **help** from management, which was **nowhere** to be found.

163.     On Monday January 30, 2023, at **approximately 11:30 am,** — Plaintiff **sent** the HR Group Leader to Co-Defendant Food Service Director Hillary Gallagher —and she came and asked Plaintiff **what's the problem?** Plaintiff responded the Co-Defendant Location Manager Shenitha Dupree **failed** —to **provide** Plaintiff **advance notice** —of the **arrivals** of two (2) groups —also **failed** —to **provide their One Cards** —for **processing them** —into Todd Dining Hall to **eat.**

164.     On Monday January 30, 2023, at **approximately 11:35 am,** —Co-Defendant Food Service Director Hillary Gallagher left Plaintiff's register and Plaintiff **assumed** she was going to get the **One Cards** for the two (2) Groups. However, she came back and **stated** to Plaintiff—that Co-Defendant Location Manager **wasn't in the building** —and that **she didn't know where** —the **One Cards were.**

165.     On Monday January 30, 2023, having **familiarity** with the two (2) Groups processing **allowed** —the **Music Group** —after **counting** —and **recording** —the **total count** —to **enter** —the Todd Dining Hall —to **eat** —and to **process** —the **Group total after receipt** —of the **Music Group One Card.**

166.     On Monday January 30, 2023, —**while all this** discombobulation,

confusion, or unease **was occurring,** —and as Plaintiff **worked desperately** —to **resolve** —the **issues,** —Defendant Senior Cashier Debbie Daniels was **watching on** —and **unknowingly** —to Plaintiff **holding** —the **Music Group's One Card.**

167.     On Monday January 30, 2023, —while **holding onto** — the **Music Group's One Card**—when the **HR Group arrived**— Defendant Senior Cashier Debbie Daniels **immediately approached** —the **HR Group** —after being **told** — by Plaintiff —that **this** is —the **HR Group** —and asked: **"are you'll the Music Group?"** —The Music Group replied: **"no, we're not!"**

168.     On Monday January 30, 2023, —Co-Defendant Senior Cashier Debbie Daniels **replied** —to the **HR Group stating:** — **"oh, I'm sorry, so many things are going on around here."**

169.     On Monday January 30, 2023, —while Plaintiff was **processing** —the **HR Group's accompanying parents credit cards** —from **three (3)** HR Group's parents **totaling $32.10,** —and while **processing** —the **third (3rd) credit transaction,** —the Plaintiff's **register drawer stuck,** —and Plaintiff was **unable** —to **continue his register functions.**

170.     On Monday January 30, 2023, —in the **meantime,** —Co- Defendant Food Service Director Hillary Gallagher **after watching Plaintiff struggle** —to **open his stuck cash register drawer finally went** —and **got** Defendant Senior Cashier Debbie Daniels —to **assist** in —the **processing** —of the **HR Group's meals.**

171.     On Monday January 30, 2023, —in the **meantime,** Defendant Senior Cashier Debbie Daniels is **still holding onto unknowingly** —to **Plaintiff** —the **Music Group's One Card**—for **no other purpose** —but **malicious intent** —of **doing harm against** Plaintiff —by **whatever means possible.** —All Defendant Senior Cashier Debbie Daniels had to do was to **let it be known** —that she had **possession** —of a **Group's One Card**—that **she had gotten from** Co- Defendant Location Manager Shenita Dupree.

172.     Co-Defendant Supervisor Darryl Hines nor Co-Defendant Food Service Director **knew what to do** —to **assist** Plaintiff —to **open his struck cash register drawer.** —They **both just watched on** —as Plaintiff **entered several bogus cash transactions** —in **attempts** —to **open his struck cash register drawer**—which Co-Defendant Location Manager Shenitha Dupree **was made aware.**

173.     Co-Defendant Location Manager Shenitha Dupree **finally came** — and **opened** —the Plaintiff's **struck cash register drawer**—and **being totally aware** —of the **bogus cash transaction attempts** —that plaintiff **implemented** — to **open his struck cash register drawer**—while **knowing** —that **she had given** Defendant Senior Cashier Debbie Daniels—the **Music Group's One Card.**

174.     Defendant Senior Cashier Debbie Daniels after **helping** Plaintiff **process** —the HR Group's **meals finally revealed** —to Plaintiff that **she had possession** —of the **Music Group's One Card,** —but **didn't realize it** — because she **thought** —that she **had** —the **HR Group's One Card.** —How asinine or extremely foolish!

115.     Plaintiff **immediately informed** Defendant Food Service Director Hillary Gallagher that Defendant's Senior Cashier Debbie Daniels **had** —the **Music Group's One Card** —and has **had it all along during this confusion**—and has **watched everything unfolding** — and **chosen** —to **remain silent.** —Defendant Food Service Director Hillary Gallagher **responded** to Plaintiff: **"so we'll get**— the **One Card from Debbie** —and **process them;** —so **what are you so upset about?"**

116.   Defendant Food Service Director Hillary Gallagher's **response**—to Plaintiff was arrogantly disrespectful and insensitive and was a **continuation** of the onslaught of **harassment** and **retaliation** of the day—by **not working** in a cooperative manner and **failing** fostering teamwork and participation with Plaintiff —that **complies with** —**all relevant department** —and **client policies** —and **procedures.**

117.   Defendant Food Service Director Hillary Gallagher **represented** Defendant Aramark's diversity, equity, and inclusion in the **worst** —of **manners** —and demonstrates her **inability** —to **accomplish** Defendant Aramark's **mission, vision, and values** —because **she lacks integrity,** commitment, respect for diversity — and appreciation for difference—and is **impassionate** as a manager; and therefore, **highly disqualified** —to **hold** —the **position.**

118.   Co-Defendant Food Service Director Hillary Gallagher shortly after her start at Todd Dining Hall on or about January 19, 2023, —has **made disparaging** —or **derogatory remarks** to —and **about blacks** —and **other people** —of **color** —and has **ultimately greater furthered** —the **terrible condition** —of an **already detrimental** —and **unhealthy work environment.**

27

119. On Monday January 30, 2023, Defendant Assistant Location Manager Tykisha Hilton came to Plaintiff's register and **closed Plaintiff's register out** at 4:00 PM, after Plaintiff's **scheduled work shift closing at 3:30 PM.**

120. Monday January 30, 2023, Defendant Assistant Location Manager Tykisha Hilton, and Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant Food Service Director Hillary Gallaugher, and Co-Defendant Supervisor Darryl Hines **all knew** —or **should have been made aware** —and **known** —that Plaintiff **had entered several invalid cash transactions** —of **unsuccessful attempts** — **open** Plaintiff's **unexpected stuck register drawer.**

121. Nevertheless, the **known attempted invalid cash transaction** —by Plaintiff **did not deter** Co-Defendant Location Manager Shenitha Dupree —from **seizing** —the **opportunity** —to **further harass** and **retaliate against** Plaintiff —as **she pulled** Plaintiff's **cash register drawer** —for Plaintiff to **perform his Cash Verification Deposit Ship count.**

122. On January 30, 2023, Co-Defendant Location Manager Shenitha Dupree **counted** Plaintiff's **cash register drawer** — and immediately and aggressively **verbally attacked** Plaintiff —**about a cash shortage** —stating and asking Plaintiff: **"you're $82.00 or so short; —so where's the money?"** Plaintiff found her statement and question to be extremely and pathetically stupid.

123. On January 30, 2023, Co-Defendant Location Manager Shenitha Dupree **again counted** Plaintiff's **cash register drawer**—and she informed Plaintiff — that **his Cash drawer count was "$91.40 or so"** —and that was an **estimate.** Plaintiff replied: **"we do not use estimates"** —and the **"amount you counted should be recorded"** on —the Plaintiff's **"Cash Verification Deposit Slip."**

124. On January 30, 2023, Plaintiff **asked** Co-Defendant Location Manager Shenitha Dupree for **his cash register drawer** —so that **he could count it** —with **she** and Defendant Chef Deva Pickens **witnessing his cash count**—and Co-Defendant Location Manager Shenitha Dupree **handed** Plaintiff **his cash register drawer.**

125. On January 30, 2023, Plaintiff **completed his cash register drawer count** —and informed Co-Defendant Location Manager Shenitha Dupree and Defendant Chef Deva Pickens that Plaintiff's **cash register drawer count equated to $91.73,** —and **asked** Co-Defendant Location Manager Shenitha Dupree— to **count his cash register drawer in his presence** —and she replied: **"I'm not required to**

28

count your cash register drawer in your presence;" —and Plaintiff responded: **"oh, yes you are"** — because **that's the right thing to do."** —However, she **vehemently refused** —and **did not count** Plaintiff's **cash register drawer in his presence.**

126. On January 30, 2023, Co-Defendant Location Manager Shenitha Dupree **accompanied** by Defendant Assistant Location Manager Tykisha Hilton **instead took** —Plaintiff's **cash register drawer outside** —of Plaintiff's **presence** —and **counted** Plaintiff's **cash register drawer**—and **concluded** that Plaintiff's **cash register drawer count** —of **$91.73** was in **fact accurate.**

127. On January 30, 2023, Plaintiff **strongly believes** —that Defendant Assistant Location Manager Tykisha Hilton's presence made Defendant Assistant Location Manager Tykisha Hilton's **presence made** —the **difference between**— an **honest cash count** —and a **dishonest cash count.**

128. On Monday January 30, 2023, Co-Defendant Location Manager Shenitha Dupree after **confirming** —that Plaintiff's **cash register drawer count** —of **$91.73** was in **fact accurate,** Co-Defendant Location Manager Shenitha Dupree **continued** unnecessary annoying, persecuting, and harassing —of Plaintiff by asking and stating: **"where is the money,"** —because **"you're still $42.80 short?"**

129. On Monday January 30, 2023, Plaintiff **informed** Co-Defendant Location Manager Shenitha Dupree that Plaintiff **had taken pictures** —of **invalid cash transactions** —that Plaintiff **had implemented in attempts** —to **open** Plaintiff **stuck cash register drawer** —as **evidence,** —of the **"invalid $42,80 cash shortage"** —and Co- Defendant Location Manager Shenitha Dupree **vehemently refused accepting** Plaintiff's **pictures as evidence.**

130. On Monday January 30, 2023, Plaintiff **recalled making**— a **$9.63 cash breakfast transaction,** —which **reduced** —the **cash register tape shortage to $32.10,** —which **equated to three (3) invalid $10.70 cash register transactions** —and another **$10.70 invalid cash register transaction,** —that **totaled exactly $42.80,** —the **exact amount** Co-Defendant Location Manager Shenitha Dupree **insisted upon maliciously hounding** —and **persecuting** Plaintiff **about**—and **vehemently refused accepting** Plaintiff's **pictures as evidence.**

131. On Monday January 30, 2023, Co-Defendant Location Manager Shenitha Dupree's **deplorable conduct** —was **arrogantly disrespectful** —and **insensitive** and was a **continuation** of the onslaught of **harassment** and **retaliation** of the

day—by **not working** in a cooperative manner and **failing** fostering teamwork and participation with Plaintiff —that **complies** with —**all relevant department** —and **client policies** —and **procedures.**

132.   Co- Defendant Location Manager Shenitha Dupree —as Food Service Director Hillary Gallagher **represented** Defendant Aramark's diversity, equity, and inclusion in the **worst** —of **manners** —and demonstrates her **inability** —to **accomplish** Defendant Aramark's **mission, vision,** and **values** —because **she lacks integrity,** commitment, respect for diversity —and appreciation for difference—and is **impassionate** as a manager; and therefore, **highly disqualified** —to **hold** —the **position.**

133.   On Monday January 30, 2023, Co-Defendant Location Manager Shenitha Dupree **forcefully** —and **passionately refused considering any explanation** —and/or **evidence from** Plaintiff did—premeditatively, willfully, intentionally, purposefully, and deliberately **proceeded** —to **write Plaintiff up** —for a **cash register shortage** —of **$42.80 knowingly was invalid** —but **did it anyway!**

134.   On Monday January 30, 2023, Plaintiff's **cash register drawer count** —for Plaintiff's **Cashier Verification Deposit Slip resulted** as following:

- Twenties ($20):        1 @ $20.00
- Tens ($10)              2 @ $20.00
- Fives ($5)              4 @ $20.00
- Ones ($1)              16 @ $16.00
- Quarters ($.25)       40 @ $10.00
- Dimes ($.10)          36 @ $ 3.60
- Nickles ($.05)         36 @ $ 1.80
- Pennies ($.01)         33 @ $  .33
- **Total Cash Count**        **$91.73**
- Cash Advance:          ($50.00)
- **Total Cash Accounted**    **$41.73**
- 3 Lunch Meals @ $10.70   ($32.10)
- 1 Breakfast Meal @ $9.63  ($ 9.63)
- **Unreconciled Difference   ($  0.00)**

135.   On Monday January 30, 2023, the **above** cash register drawer's cash count —**analysis shows clearly** —and **unquestionably** —that Co-Defendant Location Manager Shenitha Dupree **had no justified reason** —for **writing Plaintiff up** —

but **implemented her write-up maliciously** —to **harass, retaliate against** —and to **made Plaintiff's work environment** —as **unwelcomingly** —and as **miserably as possible.**

136.   What **kind** of **managers do deplorable things** as Co-Defendant Location Manager Shenitha Dupree —and Co-Defendant Food Service Director Hillary Gallagher? And there are **others** of the **same deplorability.**

137.   On Tuesday January 31, 2023, Defendant Assistant Location Manager Tykisha Hilton **asked** Plaintiff: **"have you processed the HR Group?"** — Plaintiff replied: **"Yes."** —Then she asked: **"how did you do it?"** Plaintiff replied: **"by Group"** —as **"Mary Rhodes had informed me."** — Defendant Assistant Location Manager Tykisha Hilton **abruptly** and **sharply** replied: **"you did it wrong."**

138.   On Tuesday January 31, 2023, Defendant Assistant Location Manager Tykisha Hilton **said** —to **input** —the **"HR Group individually"** — and **"not by Group.** —They've **changed it again!** — Then Co-Defendant Location Manager Shenitha Dupree **came** —to Plaintiff's **register** and Plaintiff **informed** Co-Defendant Location Manager Shenitha Dupree—of what Defendant Assistant Location Manager Tykisha Hilton **had informed him about** —the **HR Group processing.**

139.   On Tuesday January 31, 2023, Co-Defendant Location Manager Shenitha Dupree **adamantly, firmly,** or **resolutely** stated: **"no, you are to process"** —the **"HR Group individually"** —and **"not as a Group."** —Then she stated: **"let me go"** and **"get Ty"** — and **"bring her out here"** —and **"explain it"** —to **"you in her presence."** 1

140.   On Tuesday January 31, 2023, Co-Defendant Location Manager Shenitha Dupree **brought** Defendant Assistant Location Manager Tykisha Hilton to Plaintiff's **register** —and **confidentially** stated: **"Mary Rhodes said** —to **process** —the **"HR Group individually"** —and **"not by Group,"** —and **"I will bring up Mary Rhodes's email"** — and **"show it to you."**

141.   On Tuesday January 31, 2023, Co-Defendant Location Manager Shenitha Dupree—**brought up Mary Rhodes's email on her cell phone** —and **began reading it loudly** —to Plaintiff —and Defendant Assistant Location Manager Tykisha Hilton— **until she reached** —the **point where Plaintiff's name**— was mentioned, —and **she paused frowning before continue reading.**

31

142. On Tuesday January 31, 2023, Co-Defendant Location Manager Shenitha Dupree — after **pausing** —and **frowning** —at the **point where** Plaintiff's **name** — was **mentioned continued reading** —and **Mary Rhodes's email read** —that **she had informed** Plaintiff—to **process** —the **"HR Group by Group"** —and **"not individually."**

143. Co-Defendant Location Manager Shenitha Dupree **left** —Plaintiff's **register profoundly disappointed** —and **embarrassed** — because **this misinterpreted instruction** is —the **misinterpreted instruction** —that **Defendant Senior Cashier has always implemented** —and the **misinterpreted instruction**—that **she instructed** Plaintiff **over** —the **instructions Mary Rhodes had previously provided Plaintiff**—and which Plaintiff **had previously informed** Co-Defendant Location Manager Shenitha Dupree.

144. On Tuesday January 31, 2023, Co-Defendant Location Manager **sought desperately** —to **subject** Plaintiff —to the **same wishy-washy defective guidance** —that **she had subjected** Defendant Senior Cashier Debbie Daniels —and Plaintiff **avoided** —that **misguidance** —by **following** ECU Business Coordinator Mary Rhodes's **personal guidance.**

145. On Thursday, February 2, 2023, Plaintiff's **immediate supervisor,** Co-Defendant Supervisor Darryl Hines **came** —to Plaintiff's **register** —and informed Plaintiff —that Co-Defendant Location Manager Shenitha Dupree **wanted** —to **see** Plaintiff **in her office.** —Co-Defendant Location Manager Shenitha Dupree **had** Defendant Chef Eric Robinson **waiting with her** —for Plaintiff's **arrival.**

146. On Thursday February 2, 2023, **upon Plaintiff's arrival** —to Co-Defendant's Location Manager Shenitha Dupree's **office, she informed** Plaintiff that **she had called** Plaintiff **here about what happened** —on **January 30, 2023,** with Plaintiff's **cash drawer shortage.** —Plaintiff **immediately** replied: **"we all already know what happened"** —and that the **"cash shortage"** —is obviously an **"unrealistic shortage."**

147. On Thursday February 2, 2023, Co-Defendant Location Manager Shenitha Dupree **issued** Plaintiff— an **Employment Action Disciplinary Form** —for the **January 30, 2023, cash count event** with— a **Category of Notice:** Verbal Warning with a Yes: —Was the associate previously counseled on this topic? **Date of prior counseling:** 1/24/2023.

148.   On Thursday February 2, 2023, Co-Defendant Location Manager Shenitha Dupree **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** for the January 30, 2023, **cash count event,** —Brief Summary: On 1/30/2023, you were responsible for cash handling at Todd. **Shift 1172 came up SHORT $43.08**. The Aramark Register and Cash Handler's Agreement for over/shortage variances state, "Any single day over/shortage variance totaling $5 or more will automatically result in disciplinary action."

149.   On Thursday February 2, 2023, Co-Defendant Location Manager Shenitha Dupree **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** for the January 30, 2023, **cash count event,** —**Action to be Taken:** "It is expected that you will follow — "The Aramark Register and Cash Handler's Agreement" at all times. When handling cash drawers, it is expected that you will count and verify the opening bank prior to ringing up any sales and again at the close of your shift. Also, if you must leave the register during a shift, you must log out of the register."

150.   On Thursday February 2, 2023, Plaintiff **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —**Associate Remarks:** "See page with witness Eric Robinson's signature, which reads as follows: "On the day of the shortage my register got stuck and would not and was incapable of opening when I attempted to process the third (3rd) cash transaction."

151.   On Thursday February 2, 2023, Plaintiff **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —**Associate Remarks:** "See page with witness Eric Robinson's signature, which reads as follows: "In my attempt to open my drawer after informing the new Food Service Director Hillary Gallaugher of the problem, she took the third (3rd) $10.70 in her hands and had Debbie to proceed processing student and faculty meal cards."

152.   On Thursday February 2, 2023, Plaintiff **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —**Associate Remarks:** "See page with witness Eric Robinson's signature, which reads as follows: "In the meantime I proceeded entering various transactions, including the $10.70 unprocessed cash transaction to complete total transactions to be accomplish and other invalid small transactions to open my register to no avail; and no one came to my register to offer assistance; so I just left it along and processed other coming in transactions as usual.

153. On Thursday February 2, 2023, Plaintiff wrote in the wrote in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —Associate Remarks: "I took a picture, which I have on my camera of the invalid transactions and offered to Dupree, and she refused to accept that as valid evidence of the cash shortage, but rather continued to question me about where the money was.

154. On Thursday February 2, 2023, Plaintiff **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —Associate Remarks: "I took her rejection of the pictured evidence as inappropriate and an effort of failure to help an employee of honesty and integrity to provide valid proof of what caused the overage. In fact, Dupree informed me that was not her job."

155. On Thursday February 2, 2023, Plaintiff **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —Associate Remarks: "I expected the write-up after this unnecessary chaos that could have been totally avoided if management had performed the work required in determining the shortage, whether than continuously asking questions about where's the money."

156. On Thursday February 2, 2023, Plaintiff **wrote** in the February 2, 2023, **Employment Action Disciplinary Form** —for the January 30, 2023, **cash count event,** —Associate Remarks: "I have performed a register tape analysis that clearly explains how the shortage occurred, which management could have performed to determine the shortage and prevent this unnecessary write-up. I am requesting Dupree and Robinson witness my comments and sign accordingly as my response."

157. Co-Defendant Location Manager Shenitha Dupree's **February 2, 2023, Employment Action Disciplinary Form** —for the **January 30, 2023, cash count event issuance** —was **unquestionably** —and **inequivalently** —a premeditative, intentional, willful, purposeful, and deliberate **malicious attack** on —**Plaintiff's character** —and **reputation** —to **help create** —a **series** —of **false adverse actions**— to **ultimate officially fire Plaintiff** from —the **Todd Dining Hall.**

158. On Friday February 3, 2023, Co-Defendant Supervisor Darryl Hines **brought** Plaintiff —**an email from** Cynthia L. Wagoner, Associate Professor, Department Chairman, **School of Music Therapy, addressed** —to Shenitha Dupree, Quiesha Miller, Hillary Gallaugher, and Thomas Bedwardii, **stating** the

following: — "These are the **groups** —that are on the **calendar** —for **this Friday** —for **both Todd** and **West End.** —Approximately **112 guests in each group.** — They **will be paying by checks**. — **Todd Dining, Friday, 12:10 Group 1** —and **Friday, 12:45 Group 2.**"

159.   On Friday February 3, 2023, the **estimated arrivals** —of **Group 1 at 12:10 PM** —and **Group 2  at 2:45 PM provided** —an **approximately 35-minute time span between** —the **Groups' arrival times,** —and **even if** —the **Groups had come together,** —the **processing** —of the **Groups was not a difficult process,** — but **rather a simple process** —that only required **counting each Group's total** — and **entering each Group's total count into** —the **register** —and **then tabbing** —the **cash/check button** —and **opening** —the **cash register drawer,** —and **depositing** —the **check,** —a **very easy register task** —for a **cashier knowing** — and **understanding what she** —or he is doing.

160.   On Friday February 3, 2023, Co-Defendant Supervisor Darryl Hines **came** —to Plaintiff's **register at approximately 11:05 am** —and **informed** Plaintiff — that Co-Defendant Location Manager Shenitha Dupree **told him** —to **tell** — Plaintiff— to **give** —the February 3, 2023, **email from** Cynthia L. Wagoner, Associate Professor, Department Chairman, **School of Music Therapy** —to Defendant Senior Cashier Debbie Daniels —to **handle** —the **Music Groups' processing.**

161.   On Friday February 3, 2023, when Defendant Senior Cashier Debbie Daniels **returned—** to **her register about 2 minutes later,** —Plaintiff **gave her** —the **email** —as **directed,** —and **informed** Co-Defendant's Supervisor Darryl Hines —that Defendant's Senior Cashier Debbie Daniels **didn't know how** —to **perform Group Rate processing** —because s**he had not been properly—** and **accurately taught** —by Co-Defendant Location Manger Shenitha Dupree **how to do it,** —because Co-Defendant Location Manger Shenitha Dupree **had provide her misguidance.**

162.   On Friday February 3, 2023, **neither** Defendant's Senior Cashier Debbie Daniels—**nor** Co-Defendant Supervisor Darryl Hines—nor Co-Defendant Food Service Supervisor Hillary Gallaugher, **had been properly taught** —and **knew how** —to **perform Group processing** —for the **School of Music Therapy Group.**

163.   On Friday February 3, 2023, **only** Co-Defendant Location Manager Shenitha Dupree —who **had been corrected** on Tuesday January 31, 2023, —from **her**

**own misinterpretation** —and **false provision** —of **Group processing guidance**—to Defendant Senior Cashier Debbie Daniels **knew**—and **possibly understood how**—to **perform Group processing** —for the **School of Music Therapy Group.**

164.   On Friday February 3, 2023, **although** Co-Defendant Location Manager Shenitha Dupree **had corrected knowledge** —to **perform Group processing** — **she lacked application experience** —and **challenged herself** —and **provided assistance** —to Defendant's Senior Cashier Debbie Daniels—who **did not know how to do it.**

165.   On Friday February 3, 2023, Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant's Food Service Director Hillary Gallagher, and Co-Defendant Supervisor Darryl Hines, and Defendant's Senior Cashier Debbie Daniels **all treated** —the **2 Music Groups' processing** —as **some special event** —that **required special attention** —of the **entire managerial staff,** —which **constituted clearly** —an **extreme exaggeration**—because **none** —of **them knew** —what **they were doing except possibly** —Co-Defendant Location Manager Shenitha Dupree.

166.   On Friday February 3, 2023, **while** Co-Defendant Location Manager Shenitha Dupree— **assisted** Defendant Senior Cashier Debbie Daniels **processing Group 1,** —Plaintiff **heard Group 1's total group count was 104,** —and that **accompanying family members** were —with **Group 1 paying** —by **credit card.**

167.   On Friday February 3, 2023, —the **processing** —*of* any **credit card amount required clearing out** —the **104 Group members total dollar ($) amount** before —the **processing** —of any **credit card amount**—to **prevent** — the **Group members total dollar ($) amount**—from **being added** —to the **credit card amount** —and **causing an over-the-limit credit card message** —and **credit card declined message.**

167.   Co-Defendant Location Manager Shenitha Dupree **asked Plaintiff** —to **process** —the **credit card transactions** —while Co-Defendant Location Manager Shenitha Dupree and Defendant Senior Cashier Debbie Daniels **worked together** —at **processing Music Group 1's total count** —of **104,** —which **should have taken only** —a **few seconds,** —(1) **entering** the 104 total Group count into the register, (2) **tabbing** the Group Rate tab, and (3) **receiving** the Music Group's check, and (4) **tabbing** the Cash/Check tab —to **complete** —the **payment,** — which **opens** —the **cash register drawer** —for **depositing cash/check.** —Nothing

**complicated,** —but a **very simple task** —for **Cashiers knowing** —and **understanding what they're doing.**

168.    On Friday February 3, 2023, Defendant Senior Cashier Debbie Daniels — while **attempting** —to **prove a point attempted processing** —an **accompanying adult lady** —and **her daughter** —with **Music Group 2**—who **provide a credit card** —for **payment** —without **first clearing out Group 2's total dollar ($) amount** —and the **attempted Credit Card total**— of **$21.40** —was **declined** with— a **credit card message**— of **"Over the Limit,"** —because **Group 2's total count's dollar ($) amount** —was **added**— to the **credit card amount.**

169.    On Friday February 3, 2023, Defendant Senior Cashier Debbie Daniels **relayed** —the **"Over the Limit message"** — to the **Credit Card holder,** — who was **in shocking disbelief** — and **asked** Defendant Senior Cashier Debbie Daniels —and Co-Defendant Location Manager Shenitha Dupree **"how could this have happened?"** — Defendant Senior Cashier Debbie Daniels —and Co-Defendant Location Manager Shenitha Dupree **informed** — the **Credit Card holder**—that **it** —was a **credit card** —or **credit card machine problem.**

170.    On Friday February 3, 2023, the **Music Group's leader listening** —to the **confusion** —and **possibly realizing** —that Defendant Senior Cashier Debbie Daniels —and Co-Defendant Location Manager Shenitha Dupree **didn't know what they were doing** —then **offered**— a **solution** —to **resolve** —the **confusing issue,** —and **told** Defendant Senior Cashier Debbie Daniels —and Co-Defendant Location Manager Shenitha Dupree—to **charge everything together** —which **included** —the **attempted $21.40 credit card charge** —and **he would write**— a **check for everything,** — and they **did,** —and **he wrote** —the **check.**

171.    On Friday February 3, 2023, however, Defendant Senior Cashier Debbie Daniels's —and Co-Defendant Location Manager Shenitha Dupree's **register transactions problems weren't over.** —After Defendant Assistant Location Manager Tykisha Hilton **ran** —the **register tape** —and **closed out** Defendant Senior Cashier Debbie Daniels's **register way prior** —to Defendant Senior Cashier Debbie Daniels's **2:00 PM shift end** —to **perform her Cashier's Verification Deposit Slip,** — Defendant Senior Cashier Debbie Daniels **returned** —to **her register twice**—and **each time inputting Music Group totals** —and **each time running register tapes,** — **each time closing out her own register,** — which **constituted** —a **conflict of interest** —and **violate Aramark policy** and **procedures.**

37

172.   On Friday February 3, 2023, however, Co-Defendant Location Manager Shenitha Dupree **allowed** Defendant Senior Cashier Debbie Daniels to **return**—to **her register twice**—and **each time inputting Music Group totals** —and **each time running register tapes, — each time closing out her own register,** — which **constituted** —a **conflict of interest** —and **violate Aramark policy** and **procedures.**


173.   On Friday February 3, 2023, then Defendant Assistant Location Manager Tykisha Hilton and Defendant Senior Cashier Debbie Daniels **returned together—** to Defendant Senior Cashier Debbie Daniels's **register** —and Defendant Assistant Location Manager Tykisha Hilton **entered some more Music Group total count number into** —Defendant Senior Cashier Debbie Daniels's **register** —and **ran another register tape** —and **closed-out** Senior Cashier Debbie Daniels's **register** —and **returned—** to the **Safe's office** —for Defendant Senior Cashier Debbie Daniels —to **complete her Cashier's Verification Deposit Slip.**

175.      On Friday February 3, 2023, Co-Defendant Location Manager Shenitha Dupree—**allowed** Defendant Senior Cashier Debbie Daniels—to **willfully** —and **deliberately violated Aramark policy** —and **procedures in attempts** —to **correct her error processing** —of the **Music Group's total meals count.**

176.      On Monday February 6, 2023, Co-Defendant Location Manager Shenitha Dupree —Co-Defendant Food Service Director Hillary Gallagher **change** —Plaintiff's **work schedule with malicious intent** —from a **9:00 am** —to **5:00 PM work shift** —to a **9:00 am** —to **3:30 PM work shift**. — Plaintiff's **changed work shift cut** —Plaintiff's **work schedule** —by **"1 ½ hours per day,"** —and by **"7 ½ hours per week,"** —and by **"15 hours biweekly"** —or **"per pay period,"** —and by **"30 hours per month."**

177.      Before Monday February 6, 2023, Co-Defendant Location Manager Shenitha Dupree —Co-Defendant Food Service Director Hillary Gallagher **knew** —and/or **should have perceived** —the **financial hardship**—Plaintiff's **work shift change/cuts would cause** —and premeditatively, intentionally, willfully, purposefully, and deliberately **imposed** —the **work shift change/cuts** —to **cause** Plaintiff **financial harm.**

178.      On Tuesday February 7, 2023, Co-Defendant Location Manager

Shenitha Dupree —Co-Defendant Food Service Director Hillary Gallagher **furthered their disrespect** —and **their indignity toward** Plaintiff —by **intentionally** —and **deliberately not scheduling** —a Defendant **supervisor** — to **close out** Plaintiff's **register** —in a **timely** —and **proper manner**—for Plaintiff— to **perform his Cash Verification Deposit Slip** —and to **clock-out at 3:30 PM** —as **scheduled.**

179.  On Tuesday February 7, 2023, **shortly after** Plaintiff's **3:30 PM work shift end,** —Defendant Supervisor Nykia Short **came** —to Plaintiff's **register** —and **sat down on** Plaintiff's **register stool** —as **if she had prepared herself**— to **work from** Plaintiff's **register** —without **officially** —and **properly closing out** —Plaintiff's **cash register drawer so** —that Plaintiff **could perform his required Cashier's Verification Deposit Slip.**

180.  On Tuesday February 7, 2023, **shortly after** Plaintiff's **3:30 PM work shift end,** —Defendant Supervisor Nykia Short, **looking** —at Plaintiff rather **confused** —or **bewildered** stating: **"Mr. Larry, I don't have anyone** —to **take your place,** —they haven't scheduled anyone —to **come in."**

181.  On Tuesday February 7, 2023, Plaintiff to Defendant Supervisor Nykia Short responded: **"You're not going** —to **work from my register under my name** —and **employee ID number.** —**You know** —the **rules** —and **I'm not going** —to **allow you** —to **violate** —the **rules** —because **management has not properly scheduled** —a **cashier** —to **take my place** at— the **proper time.** — That's **not my problem!"**

182.  On Tuesday February 7, 2023, then Defendant Supervisor Nykia Short **responded:** — **"Mr. Larry, I know,** —but **I have no control over that."** Defendant Supervisor Nykia Short **then left** —Plaintiff's **register** —and **shortly returned with** —a **new hire employee** —who **knew absolutely nothing about register processing.** Defendant Supervisor Nykia Short **provided** —the **new hire employee with verbal instructions** to: (1) choose the Dinner meal, (2) tab the yellow Meal button, and (3) swipe the One Card. —Defendant Supervisor Nykia Short **provided no instructions on** —the **To-Go-Box Meal processing.**

183.  Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher **knowingly** —and **willingly have unqualified employees placed** —as **Cashiers** at —the **register** —because **neither** Co-Defendant Location Manager Shenitha Dupree —**nor** Co-Defendant Food

Service Director Hillary Gallagher **have moral compasses functioning** —as a guide —for **morally appropriate behavior practices.**

184.     Co-Defendant Location Manager Shenitha Dupree's and Co-Defendant Food Service Director Hillary Gallagher's **internal set** —of **values governing their ethical behavior** —and **decision-making** —**have proven totally unfit** —and **totally unqualified** —for the **management** —of **people** —at **any business,** —and **especially** at **Aramark** —to **accomplish Aramark's mission, vision** —and **values.**

185.     On Wednesday February 8, 2023, **Todd Dining Hall's Fried Chicken Day** —was **one (1), if not** —the **slowest day** —of **student/faculty participation** —in **Todd Dining Hall's history.** —Co-Defendant Supervisor Darryl Hines **told** Plaintiff: — **"I've never seen it this bad before."** — unquestionably, Todd Dining Hall's decline —of **student/faculty participation** — is the **direct result** —of **profoundly poor management** —by Co-Defendant Location Manager Shenitha Dupree —and Co-Defendant Food Service Director Hillary Gallagher.

186.     On Wednesday February 8, 2023, **Todd Dining Hall's employees' shortages** —were **terrible,** —as **Todd Dining Hall did not have enough employees** —to **provide timely, proper,** —and **quality customer service,** — which has **become** —an **ongoing extreme problem since** —the **arrival** —of Co-Defendant Food Service Director Hillary Gallagher **on** —or **about Thursday, January 19, 2023,** —as she implemented massive cuts in employees' hours— and **displayed** —a **blatant racist white attitude.**

187.     Co-Defendant Food Service Director Hillary Gallagher **intimidated, threatened, coerced,**—and **induced fear in many employees,** —in especially and particularly **blacks** and **other people** —of **color** —which are **unacceptable behavior practices prohibited** —by **Aramark Code of Conduct policy** —and the **law.**

188.   On Friday February 10, 2023, Plaintiff **clocked-in** —to **work at 8:57 am,** —Co-Defendant Supervisor Darryl Hines **pulled** —Plaintiff's **cash drawer from** —the **Office Safe** —for Plaintiff to **perform Plaintiff's Cash Verification Deposit Slip** —and then **left** —the **Office.**

188.     On Friday February 10, 2023, Plaintiff **waited** —for Co-Defendant Supervisor Darryl Hines's **return** —to **finish his job with** Plaintiff, — so that Plaintiff **could go** —to **his register** and **begin** —Plaintiff's **Cashier' register**

**duties.** —Co-Defendant's Supervisor Darryl Hines **returned** —at **approximately 9:18 am,** —or **some 21 minutes later**—because of **employees' shortage** with —a **smirky smile on his face** —and stated: "**Mr. Larry I forgot you!**"

189.     On Friday February 10, 2023, Plaintiff **responded** —to Co-Defendant Supervisor Darryl Hines stating: "**it's not good for you to forget me.**" —Co-Defendant Supervisor Darryl Hines **asked:** — "**why not?**" —Plaintiff **responded:** — "because **I'm your employee waiting for you,** —so that **I can begin my register duties.**" —Co-Defendant Supervisor Darryl Hines with —a **smirky smile on his face** responded: — "**everyone forgets,**" —and Plaintiff and Defendant Supervisor Darryl Hines **left** —the **Safe's Office** —and **began walking** —to **Plaintiff's register** —for Co-Defendant Supervisor Darryl Hines —to **log in** Plaintiff's **register** —to **insert Plaintiff's cash register drawer**— for Plaintiff — to **begin his register duties.**

190.     On Friday February 10, 2023, Plaintiff —**asked** Defendant Sanitation Worker Kalvieon Edwards —to **go get** Co-Defendant Supervisor Darryl Hines, — because Plaintiff **had a register question.** —Defendant Sanitation Worker Kalvieon Edwards **returned** —and **stated** to Plaintiff **he said** —that "**he was serving food**" — and "**could not come.**" —Plaintiff **then asked** Defendant Sanitation Worker Kalvieon Edwards —to **go get** Defendant Senior Cashier Debbie Daniel —and Defendant Sanitation Worker Kalvieon Edwards **returned** —and **stated**— to Plaintiff **she said** —that "**she could not come**" — because "**she's on her lunch break.**"

191.     Plaintiff's **Cashier position requires** Plaintiff —to **remain at his register at all times** —to **provide** timely, proper, and adequate **customer service** —to **all students, faculty member, clients, clients' partners,** —and **customers from his register**— EXCEPT when Plaintiff— is **properly relieved** —by **another qualified Casher** —to **provide** —the **same required** timely, proper, and adequate **customer service** —to **all students, faculty member, clients, clients' partners,** —and **customer from another register.** —A **qualified cashier** —is **always required** at —a **register**.

192.     Plaintiff **does not have** —the **liberty** —to **just walk away from his register** —at **any time** —and **leave his register unattended** —for **bathroom breaks** —and/or **his lunch break without being properly relieved** —by **another qualified Cashier,** which **would constitute** —an **unofficial early departure**— or **job abandonment,** —which **constitutes a violation** —of **Aramark's employee conduct policy.**

193.     On Friday February 10, 2023, **then** Defendant Sanitation Worker Kalvieon Edwards— **asked** Plaintiff— **"do you want me to knock on** —the **door where Director Gallagher is at?** — Plaintiff **responded, "Yes."** —Defendant Sanitation Worker Kalvieon Edwards **knocked** on— the **door** —and Co-Defendant Food Service Director Hillary Gallagher **came out aggressively** —and **arrogantly** with —a **frown on her face** —and asked Plaintiff— **"what?"**

194.     On Friday February 10, 2023, Plaintiff **then stated** —to Co-Defendant Food Service Director Hillary Gallagher, **"I have a register —question."** —Co-Defendant Food Service Director Hillary Gallagher **angerly, aggressively, arrogantly,** —and **immediately replied:** — <u>**"I don't know anything about**</u>— the <u>**register, get up**</u> —and <u>**go find you somebody."**</u>

195.     On Friday February 10, 2023, Plaintiff **responded** —to the **disrespectful, inconsiderate, racist white**—Co-Defendant Food Service Director Hillary Gallager: — **"I cannot get up"** —and **"just leave my register unattended."** —Co-Defendant Food Service Director Hillary Gallager **then stated:** — **"well get Klevion"** —or **"someone else"** —to **"get you help;"** — <u>**"I'm not your secretary."**</u> —Plaintiff to—Co-Defendant Food Service Director Hillary Gallager's **asinine statement replied:** — **"I never implied** —that **you were my secretary."**

196.     On Friday February 10, 2023, Plaintiff **considered** —Co-Defendant Food Service Director Hillary Gallagher's **words** —and **actions were racially motivated** —and **unacceptable in any employment environment.** —Co-Defendant Food Service Director Hillary Gallagher's **racist white conduct** —was **passionately** —and **deliberately manifested both verbally** —and **physically through her condescending manifestations** —of **white superiority behavior**— which **will certainly manifest itself again** —and **again.**

197.     Plaintiff **believes** —that Co-Defendant Food Service Director Hillary Gallagher's **racism** —and **hatred** are **uncontrollable attributes** —of **her white racist nature** —and that Co-Defendant Food Service Director Hillary Gallagher—

42

is **prone** —to **doing it again** —and **again unwarily** —because **that's** Co-Defendant Food Service Director Hillary Gallagher's **natural racist white nature.**

198.    Co-Defendant Director Hillary Gallagher's **condescending**— and **derogatory comments toward** Plaintiff —were **hurtful** —and **painful** —to Defendant Sanitation Worker Klevion Edwards —as he **tearfully stated** to Plaintiff: — **"she didn't have to do all of that"** —and **wrote** the following: **"That had me mad how she did Mr. Larry. —She didn't even have —to say all of that. —Why would you say that**— because **he needed help. —Made me mad** — because **you come out** —of **character** —to **disrespect an older person.** —The **words** —that **came out** —of **your mouth,** — **"you said"** —to **"get up"** —and **"get them yourself."**

199.    On Friday February 10, 2023, later that day, Plaintiff **saw** —Co-Defendant Location Manager Shenitha Dupree —and **asked her** —to **come** —to Plaintiff's **register;** —and Plaintiff **asked** —Co-Defendant Location Manager Shenitha Dupree **how** —to **process an Ozzi Token Coin** that —Plaintiff **had just received from**— a **student** —who **had returned** —a **green dirty-To-Go-Box** — to the **To-Go-Box Machine** —at **West End Dining Hall.**

200.    Prior to Friday February 10, 2023, Plaintiff **had been instructed** —by Co-Defendant Location Manager Shenitha Dupree —and **her supervisors** —to **just physically receive** —the **Ozzi Token Coin** —and **put it in** —the **register** — and **process** —the **appropriate To-Go-Meal** —and **give a clean green To-Go-Box** —to the **student, faculty member,** or **customer.** —Unknowingly —to Plaintiff **these were** —the **wrong instructions.**

201.    On Friday February 10, 2023, Plaintiff **continuous** —and **relentless asking** of —**To-Go-Box processing questions** —to Co-Defendant Location Manager Shenitha Dupree **kept revealing new information.** —Co-Defendant Location Manager Shenitha Dupree **informed** Plaintiff **concerning Ozzi Token Coin processing** —to **receive** —the **Ozzi Token Coin,** — then **tab**—the **Accept Token button,** —then **enter $1.00**—and **tab**—the **Cash/Credit button** —and the **Ozzi Token Coin** —is **processed** —and the **register opens** —to **deposit** —the **Ozzi Token Coin.**

43

202.     On Friday February 10, 2023, Plaintiff, however, **asked another question**—to Co-Defendant Location Manager Shenitha Dupree **about processing** —the **To-Go-Box Meal** —because the **Ozzi Token Coin processing alone did not include**—the **processing** —of the **To-Go-Box Meal.** — Defendant Location Manager Shenitha Dupree—to Plaintiff **stated: — "I need to go to the office**— and **retrieve Mary Rhodes's email** —and **read it."**

203.     On Friday February 10, 2023, Plaintiff **began his wait** —for Co-Defendant Location Manager Shenitha Dupree's **return** —for the **answer** —to his question —at **1:14 PM, —** and at **approximately 1:45 PM** —or **about 30 minutes later, —** Plaintiff **called** —and **sent** Defendant Supervisor Terrell Johnson —to Co-Defendant Location Manager Shenitha Dupree's **office**—to **ask if she would come back**—to Plaintiff's **register** —and **provide** Plaintiff —the **instructions per Mary Rhodes' email** —that **she had retrieved.**

204.     On Friday February 10, 2023, Defendant Supervisor Terrell Johnson **returned** —to Plaintiff's **register** — at **approximately 1:50 PM** —and **informed** Plaintiff— that Co-Defendant Location Manager Shenitha Dupree **stated** —that **she could not retrieve it** —and **would need** —to **request another copy** —of **Mary Rhodes's email** —and **would return** —and **provided** Plaintiff— **requested information.** —Plaintiff **clocked out at 3:30 PM shift end,** —and Co-Defendant Location Manager Shenitha Dupree **had not returned.**

205.     On Friday February 10, 2023, Co-Defendant Location Manager Shenitha Dupree's **actions clearly demonstrated** — the **misguidance** —and/or **failed guidance** —Plaintiff has **been daily subjected** —to **make** Plaintiff **job more difficult** —to **accomplish** in —a **proper** and **accurate manner,** —and to **make** Plaintiff's **workdays more** —and **more toxic,** —and **unwelcomingly**—as **possible** —which **clearly appears being** —the **primary objective** —for Co-Defendant Location Manager Shenitha Dupree —and Co-Defendant Food Service Director Hillary Gallagher.

206.     On Friday February 10, 2023, Co-Defendant Food Service Director Hillary Gallagher —in **her uncontrollable racist white nature**— at **2:37 PM came directly** —to Plaintiff's **register aggressive, arrogant,** —and **loudly stated:**

— **"Larry if you have any questions** —for a **manager, —please don't have anyone knock on my door," —**and **walked away just as arrogantly** —as **she walked in.**

207.     On Friday February 10, 2023, Co-Defendant Food Service Director Hillary Gallagher—at **approximately two (2) minutes later at 2:39 PM —** Co-Defendant Food Service Director Hillary Gallagher **came back**—to Plaintiff's **register** and **stated: — "Do you have any questions about what I said?" —**As **she** —was **walking away** Plaintiff **stated: — "I don't have any questions"** — to **"ask you at all."**

208.   On Friday February 10, 2023, Plaintiff **considered** — Co-Defendant Food Service Director Hillary Gallagher's **actions** —as **attempted intimidating, cohering racist white actions** —to **induce fear** —into Plaintiff's **consciousness** —as she —has **accomplished with many others**—to **exalt her self-perceived racist white superiority**—which **she miserably failed doing with** Plaintiff, —and which **made** Co-Defendant Food Service Director Hillary Gallagher— **profoundly hate** Plaintiff **even more.**

208.     On Monday February 13, 2023, after **Plaintiff's return** —to **work from over**— the **weekend**—the **day** —of **revelation** —of the **hidden. —**To Plaintiff's **surprise this day would become** —the **day** —that **revealed** —a **well-hidden secret** —that **Todd Dining Hall management thought** —was **securely hidden** —and to **never surface again, —**but **it did!**

209.     On Monday February 13, 2023, Plaintiff **after clocking in** —and **going**—to **his register** —at **approximately 9:10 am immediately noticed** —a **copy** —of the **"Ozzi-To-Go-Program" instructions** Co-Defendant Location Manager Shenitha **had placed** at Plaintiff's —and Defendant Senior Cashier Debbie Daniels's **registers. —**These **"Ozzi-To-Go-Program" instructions would reveal** —the **resurrection** —of **instructions purposefully hidden** —and **buried alive.**

210.     On Monday February 13, 2023, the **recipients** —of the **Ozzi-To-Go-Program instructions** — (1) **Tara Perez,** (2) **Brian Hayworth,** (3) **Shenitha Dupree,** and (4) **Thomas Bedwardii, —would come** —to **reveal** —the **age** —of the **Ozzi-To-Go-Program instructions** —and **how long Todd Dining Hall management**— **had taken these instructions out**—of its **Standard Operating Procedures** (SOP), —which was **found being some 1 ½ years or so, —**which Plaintiff **covered earlier.**

211.     On Monday February 13, 2023, at **approximately 11:15 am,** —a **black female student** —with **her husband** and **her children came** —to **Plaintiff's register** —and **gave** Plaintiff **her One Card** —and Plaintiff **processed her in** —to **eat.** Then the **black female student** stated: — **"my children eat free,"** —and **"I want a swipe** —for my **husband."** —As usually, **no one from Todd Dining Hall management** —was **available** —for **providing assistance.**

212.     On Monday February 13, 2023, Plaintiff **attempted** —a **guest meal swipe** —for **her husband** —and the **guest meal swipe failed** —because **she didn't have any available.** —The **Black female student One Card holder** —to **Plaintiff** then **stated:** — **"just swipe it again."** —Plaintiff **responded:** — **"extra swipes on an unlimited meals One Card** — aren't **permissible."** —Then **her husband stated:** — **"why not,** —because **we've been allowed to it before."**

213.     On Monday February 13, 2023, Plaintiff **asked** — the **Black female student One Card holder would she** —and **her husband** like —to **speak with someone** in **management**—and they **both replied yes.** —Plaintiff then **asked** Co-Defendant Klevion Edwards— to **go get** Co-Defendant Supervisor Darryl Hines — to **address** —the **black family's lunch issue.**

214.     On Monday February 13, 2023, at approximately 11:33 am or some 15 minutes later, Co-Defendant Supervisor Darryl Hines **came** to Plaintiff's **register** with a **belligerent** or **hostile attitude complaining** about being the **only person doing something** because of **employees' shortages** —and that **he didn't have time** to **provide any customer services** —to **anyone** and **left** with the **same belligerence he had brought. 1**

215.     On Monday February 13, 2023, at approximately 11:38 am or some 20 minutes later, the **black family awaiting** to speak with **manage finally got discourage** and **just angrily left.** Shortly afterwards, Co-Defendant Food Service Director Hillary Gallaugher **finally came** —with **her uncontrollable racist white nature** —and Plaintiff **stated** to her: **"I had a customer problem**— and **needed management. Darryl came** —and **didn't have time** —to **provide customer service.** Co-Defendant Food Service Director Hillary Gallaugher then replied arrogantly: **"well, I'm here now, what's the problem?"**

216.     On Monday February 13, 2023, Plaintiff **responded** —to Co-Defendant Food Service Director Hillary Gallagher **stating:** — **"I had a female black student with her husband** —and **children** —that **obviously**

misunderstood her meal plan, —and **I needed management** —to **confirm** —to **them what I had stated**— to **them.**" Co-Defendant Food Service Director Hillary Gallagher **asked** Plaintiff: **"did you know them?"** Plaintiff **replied:** — **"no, I didn't know them."** Co-Defendant Food Service Director Hillary Gallagher **replied:** — **"how is that possible, —you're here all the time,"** —and **arrogantly walked away.**

217.    On Wednesday February 15, 2023, **Plaintiff's register kept going offline** —while Plaintiff was the **only cashier** on a **register,** —and **no one could be processed** in Todd Dining Hall to **eat** —as **long** as Plaintiff's **register was offline.** —Plaintiff **reported it** —and Co-Defendant Supervisor Darryl Hines and Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant Food Service Director Hillary Gallagher **acted as if was no big deal,** —and **just allowed** Plaintiff —to **struggle** with the **offline problem** —and **offered no advice** —nor **advising** Plaintiff —of **any possible causes.**

218.    On Wednesday February 15, 2023, **concerning** Plaintiff's **ongoing unexpected offline problems,** Co-Defendant Supervisor Darryl Hines's and Co-Defendant Location Manager Shenitha Dupree's, and Co-Defendant Food Service Director Hillary Gallagher's **managerial actions** —were **not only disrespectful,** —but also **actions** —of **blatant non-concerns about** Plaintiff's **offline problems** —that **created**— **long lines**— of **waiting students, faculty members** —and **other customers** —that **would not otherwise have had** —to **wait if management had not acted** —with **malicious intent against** Plaintiff.

219.    On Wednesday February 15, 2023, was Todd Dining Hall's Fried Chicken, and the **busiest day** of the week, —and Co-Defendant Location Manager Shenitha Dupree **finally came** —at **approximately 11:34 AM,** —which was **about 34 minutes after** —the **11:00 AM lunch period had begun** —and **informed** Plaintiff —that **she didn't know what** —was **causing** —the **reoccurring offline problem,** — to Plaintiff's **register** —and **finally sent** Defendant Senior Cashier Debbie Daniels **out** —to **her register** —to **assist** Plaintiff—because Defendant Senior Cashier Debbie Daniels' **register wasn't experiencing off-line problems.**

220.    On Wednesday February 15, 2023, **several students, faculty members,** —and **customers** —were **complaining about management's failure** —to **provide** Plaintiff **assistance** —to **help resolve**—Plaintiff's **reoccurring offline register issue,** —that **became profoundly frustrating** —and **angered** —

Plaintiff, **students, faculty members,** and **customers,** —as Co-Defendant Supervisor Darryl Hines and Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant Food Service Director Hillary Gallagher **blatantly displayed** — a **profoundly terrible noticeable level** —of concern.

221.     On Thursday February 16, 2023, and Friday February 17,2023, — Plaintiff **had previously informed management** —that **death had occurred in** —Plaintiff's **family** —and Plaintiff **took bereavement leave.** Unsurprisingly to Plaintiff, **no one from management showed** —Plaintiff **compassion verbally**— nor **with a sympathy card,** —and Plaintiff **didn't disappoint himself** —by **expecting any compassion** —of **any form,** —because **sympathy** —and **empathy were not internal attribute** —of **their natures.**

222,   On Monday February 20, 2023, when Plaintiff **returned** —from **bereavement leave,** — Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant Food Service Director Hillary Gallagher **presented** Plaintiff—with **another frustrating** —and **depressing work shift schedule cut** —without **any remorsefulness** — to **their personal gratifications** —and **satisfactions** —to **make** Plaintiff's **workplace** —as **unwelcomingly** —and **miserable as possible.**

222.     On Monday February 20, 2023, — Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant Food Service Director Hillary Gallagher **cut** —Plaintiff's **work schedule** —by **another ½ hour** —or **2 ½ hours a week, —or 5 hours per biweekly pay period** —or **10 hours monthly,** — and **ultimately decreasing** Plaintiff's **monthly hours cut** —to **40 hours monthly.**

223.     What **type of human beings have** —the **audacity** —to **do such** blatant financial harm —to **other human beings having** —the **same financial needs** —of **providing food, clothing,** — and **shelter** —for **their families?** —This is **highly immoral** —and **unacceptable** —by **any company** —of **moral integrity.**

224.     On Monday February 20, 2023, Co-Defendant Location Manager Shenitha Dupree, and Co-Defendant Food Service Director Hillary Gallagher **showed** —Plaintiff **their condolences** —by **maliciously ensuring** Plaintiff was **continuously subjected** —to **financial hardship** —by **decreasing** Plaintiff's **monthly pay cut from** ($17.35 x 30= **$520.50 monthly**) —to ($17.35 x 40= **$694 monthly**) —which they **maliciously implemented pleasurably** —and **showing themselves being two (2)** —of the **most indignant people/managers** —Plaintiff **has ever worked.**

48

225.     On Monday February 20, 2023, at **9:05 am after clocking** in —and **performing** —Plaintiff's **Cash Verification Deposit Slip,** —and **coming** to the **register**, —Plaintiff **asked** Co-Defendant Supervisor Darrly Hines **was** —the **To-Go-Box Machine working** —and he **replied:** — **"I don't know."** —Plaintiff then **asked** Co-Defendant Supervisor Darrly Hines **if he would ask** Defendant Senior Cashier Debbie Daniels **if** —the **To-Go-Box Machine was working** —and Co-Defendant Supervisor Darrly Hines **asked** —and Defendant Senior Cashier Debbie Daniels **blatantly refused—** to **answer** Defendant Supervisor Darrly Hines —and **just arrogantly walked away.**

226.     On Monday February 20, 2023, Co-Defendant Supervisor Darrly Hines **again asked—** Defendant Senior Cashier Debbie Daniels **was—** the **To-Go-Machine working** —and Defendant's Senior Cashier Debbie Daniels **still refused answering** —to the **question,** —but **instead stated:** — **"I'm going to get the key."** —Co-Defendant Supervisor Darrly Hines **threw his hands up** in —the **air** —and **stated** to Plaintiff: — **"that's just** —the **way she is,** —and **management lets her get away** —with **anything she wants to do,** —and **there isn't anything I can do about it;"** —the **shameful comments** —of Defendant Senior Cashier Debbie Daniels's **immediate supervisor.**

227.     On Monday, February 20, 2023, Defendant's Senior Cashier Debbie Daniels **manifested** — The **disrespectfulness, arrogance,** —and **foolishness** Plaintiff —is **subjected daily** —that are **frustrating, irritating things** —that **perpetually create** —an **unwelcomingly** —and **unfavorable work environment** —for Plaintiff —that Co-Defendant Supervisor Darrly Hines, and Co-Defendant Location Manager Shenitha Dupree, and Co-Defendants Food Service Director Hillary Gallagher **allows** —because **her bad behavior towards** Plaintiff **gratifies** —and **satisfies their primary objective** —of **making** Plaintiff's **daily work environment** —as **unwelcoming, unfavorable,** —and as **miserable as possible.**

228.     On Monday February 20, 2023, there were —**five (5) green dirty To-Go-Boxes on top** —of the **To-Go-Box-Machine** —that **had not been properly returned** to— the **To-Go-Box Machine,** —which was the **primary reason** —for Plaintiff **asking if** —the **To-Go-Box Machine was working.** —Plaintiff **took a picture** —of the **five (5) green dirty To-Go-Boxes on top** —of the **To-Go-Box Machine** —and **showed pictures** —to Co-Defendant Location Manager Shenitha Dupree— to **no avail;** —which was a **confirmation** —that Defendant Senior Cashier Debbie Daniels **does whatever she pleases** —**without any fear** —of **consequences** or **repercussions** —by **management.**

229.     On Monday February 20, 2023, Defendant Senior Cashier Debbie Daniels— at approximately 11:05 AM **informed** Plaintiff that —**she had** —to **relieve a cook** —of **her duties** —and that **she wouldn't be back** —to **relieve Plaintiff until 12:00 PM,** —because the **work shift was very short** —of **employees;** —but **she never came back, instead** —Co-Defendant Location Manager Shenitha Dupree **sent** —Defendant Chef Deva Pickens —to **relieve** Plaintiff —for Plaintiff's **lunch break.** 1

230.     On Monday February 20, 2023, **about 12:10 PM,** Defendant Chef Deva Pickens **came** —to Plaintiff's **register** —and stated: — **"I've come to relieve you for your lunch break,"** and Plaintiff **replied:** — **"you're not planning** —to **work under my name** —and **employee ID, are you?** —Co-Defendant Location Manager Shenitha **almost immediately showed up** and stated: — **"she has her own card** —and **she's going to use her own card** —to **sign into the register."**

231.     On Monday February 20, 2023, **about 12:10 PM, things didn't happen**—as Co-Defendant Location Manager Shenitha Dupree **had stated** to Plaintiff. —**Instead,** Co-Defendant Location Manager Shenitha Dupree **took** —Defendant Chef Deva Pickens—to Defendant Debbie Daniels' **register** —and **logged herself into** Defendant Debbie Daniels' **register without closing it out** —and **allowed** Defendant Chef Deva Pickens—to **work from** Defendant Debbie Daniels' **unclosed out register drawer.**

232.     On Monday February 20, 2023, to Plaintiff's **knowledge,** Defendant Chef Deva Pickens **had never worked** —the **register.** Co-Defendant Location Manager Shenitha Dupree **gave** Defendant Chef Deva Pickens —the **same verbal instructions provided**— to **every new** —and/or **inexperienced employee placed** —at Defendant Senior Cashier Debbie Daniels's **register,** —including, the **improper short cut** —for **processing To-Go-Box-Meals.**

233.     On Monday February 20, 2023, Plaintiff **informed** Defendant Chef Deva Pickens —that **To-Go-Box Meals could not be processed properly** —from Defendant Senior Cashier Debbie Daniels' **register** —because the **Ozzi Digital Token button is broken;** —and Plaintiff **stated this in** Co-Defendant Location Manager Shenitha Dupree's **presence,** —which **was not appreciated.**

234.     On Monday February 20, 2023, Plaintiff **while** —at **his lunch**

observed several students —with **green To-Go-Boxes,** —which **meant** —that **Defendant Chef Deva Pickens had processed Go-To-Box meals**. —Plaintiff **after returning** —from **lunch asked** Defendant Chef Deva Pickens— **had she processed Go-To-Box meals** —and **she replied: "yes."** —Plaintiff **replied:** — **"you know** —that **you processed them wrong, don't you?"** Defendant Chef Deva Pickens **replied: <u>"I did what Dupree told me to do</u>** —and **<u>that's fine."</u>**

235.    On Friday February 24, 2023, Plaintiff **had a called meeting** —with Co-Defendant Residential District Manager Kelvin Tarukwasha **about**— Plaintiff **speaking** —with **EUC client Celia Daniels about** —the **Todd Dining Hall's employees' shortages.** —After **speaking about** —that **issue,** —Plaintiff **took** — the **opportunity** —to **express** —to Co-Defendant Residential District Manager Kelvin Tarukwasha **his immediate concerns** and **reminded** Co-Defendant Residential District Manager Kelvin Tarukwasha —that Plaintiff **had previously spoken** —both **him** and Co-Defenfdant Director of Operations Thomas Bedwardii **about** —the <u>ongoing To-Go-Box processing problems</u> —and **other issues.**

236.    On Friday February 24, 2023, Plaintiff **believed** —that **he had established**— an **atmosphere** —of **respect** —and **effective communication** — with Co-Defendant Residential District Manager Kelvin Tarukwasha— that **would possibly get some long-awaited corrective action implemented** —to **resolve several unresolved existing issues,** —**including,** but **not limited** —to the <u>ongoing To-Go-Box processing problems.</u>

237.    On Friday February 24, 2023, Plaintiff **poured out his concerns** —to Co-Defendant Residential District Manager Kelvin Tarukwasha, which were: —(1) Plaintiff **had no prior training** —for **Cashier duties prior** —to **reporting** —to **work on August 19, 20922;** — (2) Plaintiff **has had no training** —for **Cashier duties after reporting** —to **work on August 19, 2022;** —(3) Plaintiff **has continuously been provided** —with **misguidance**— from Co-Defendant Location Manager Shenitha Dupree; — (4) Plaintiff **has not been provided timely, proper,** —and **adequate managerial assistance as needed;** — (5) **management has create** —an **unhealthy, unwelcoming, unfavorable,** —and **unproductive work environment;** —and (6) the **daily struggle** —with  Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher—to **<u>do what's right!</u>**

238.    On Friday February 24, 2023, Plaintiff **informed** Co-Defendant Residential District Manager Kelvin Tarukwasha—that the **"To-Go-Box-Program instructions" provided** — by Co-Defendant Location Manager **answered many**

questions —that Plaintiff **would not have been required** —to **have asked** —of Co-Defendant Director of Operations Thomas Bedwardioi —and **himself had** Plaintiff been provided those **"To-Go-Box-Program instructions"** in—the **beginning** — of Plaintiff's **employment on August 19, 2022.**

239. On Friday February 24, 2023, Co-Defendant Residential District Manager Kelvin Tarukwasha **responded:** — **"so, now that you have them, let's go forward."** — Plaintiff **replied:** — **"it's not just that simple,** —because **there's still within those instructions' questions,** —that **"I've asked Dupree**— that **I've not yet received answers,** —and **I want to do what's right** —and **proper."**

240. On Friday February 24, 2023, Co-Defendant Residential District Manager Kelvin Tarukwasha **responded:** — **what time does your shift end?** Plaintiff replied: —**3:00 PM.** Co-Defendant Residential District Manager Kelvin Tarukwasha **responded:** — **"I'm going to have Mary Rhodes come over** —and **talk with you**—and to **fix anything needing**—to **be repaired on**— the **broken register** —and then **instructed** Plaintiff if Plaintiff **had questions** —to **call** —the **Aramark Hot Line**— or **contact MYHR,** —which Plaintiff **considered good advice** —if he does everything he has said.

241. Plaintiff **got** —to **talk with Mary Rhodes in early April 2023,** — which was **just before she came over** —and **repaired** Defendant Senior Cashier Debbie Daniels' **broken Ozzi Digital Token button on April 9, 2023;** — which was **44 days after** Co-Defendant Residential District Manager Kelvin Tarukwasha **stated:** — **"I'm going to have Mary Rhodes come over** —and **talk with you**— and to **fix anything needing**—to **be repaired on**— the **broken register."** — Obviously, the **broken Ozzi Digital Token button on** —Defendant Cashier Debbie Daniels' **register was not** —a **top priority fix**—which **clearly explains why management left it idly broken** —for **at least 9 months or more.**

242. Co-Defendant Residential District Manager Kelvin Tarukwasha **deceived** Plaintiff —to **believe** —that **he had** Plaintiff's **concerns at heart;** — however, Plaintiff **discovered** —that **his concerns poured out fell upon deaf ears;** —because Co-Defendant Residential District Manager Kelvin Tarukwasha was **part**—of the **problem,** —and **not** —the **solution,** —as the **findings** —of **fact have overwhelmingly proven.** —The **truth concerning all things** at —the **Todd Dining Hall** —is **revealing all falsehoods.**

243. On Wednesday March 15, 2023, Plaintiff was **subjected** —to an

unnecessary outrage —of anger —by a **student's profound frustration** — because of Co-Defendant Location Manager Shenitha Dupree's —and Co-Defendant Food Service Manager Hillary Gallagher's **verbal revocation** of —the **FIRST TWO (2) WEEKS OF INSTRUCTIONS's — "Note to Celia"** —that provided students access —to **eat throughout** —the **semester** —by **providing their Banner IDs,** —**first** —and **last names.**

244.    Plaintiff **ever since** Monday January 16, 2023, **had requested written instructions** from Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher —to **support** —and **present** —to **students** —the **official change verbally revoking** —the **January 5, 2023, instructions** in —the **"Note to Celia"** —and **both** Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher **have vehemently refused providing** —a **written instruction supporting their verbal change** —to **help cease** —the **Cashier/student conflicts over this issue**— as of **March 16, 2023, some two (2) months** —or **60 days ago.**

245.    On Wednesday March 15, 2023, Plaintiff **recalled**— a **similar situation happening** on February 15, 2023, —when a **student proceeded** —to **give** Plaintiff **his Banner ID,** —and Plaintiff **informed** —the **student** —that **Banner IDs are no longer permitted** —for **processing.** —The **student replied:** — **"other cashiers have allowed me** —to **use it"** —and **why aren't you allowing me** —to **use my Banner ID** —and **eat?** —Plaintiff **replied:** — **"other cashiers allowing you** —to **use your Banner ID**—are **violating** —a **verbal policy change,** —and **I'm not going** —to **do** —the **same."**

246.    On Wednesday March 15, 2023, the **student became very frustrated** —and **angry** —and in **what appeared being a threatening voice** stated: — **"so you'll are not going** —to **allow a student** —to **eat?"** —Plaintiff **replied:** — **"that's the new verbal policy."** —Then Co-Defendant Food Service Director Hillary Gallaugher **appeared,** —and Plaintiff **stated**— to the **student:** — **"she's the Director, speak** —to **her about it."**

247.    On Wednesday March 15, 2023, as Co-Defendant Food Service Director Hillary Gallagher **sought** —to **speak with him,** —the **profoundly frustrated student** — in a **burst** —of **outrage stated:** — **"so you'll are not going** —to **let a student eat,"** —and **angerly exited** —the **Todd Dining Hall's lobby.** —This **event should have motivated** Co-Defendant Food Service Director

Hillary Gallagher—to **immediate provide written instructions** —to **prevent outrages /conflicts** —of **this nature from happening again.**

248.     On Friday March 17, 2023, Plaintiff **asked** Co-Defendant's Director of Operations Thomas Bedwardii **had** —Co-Defendant Food Service Manager Hillary Gallagher **informed him about what had happened**— on Wednesday March 15, 2023, **about** —the **student/Plaintiff conflict over** —the **usage** —of **Banner IDs,** —and he **responded:** — **"no."** —Plaintiff **commenced** —to **telling him what had happened** —and **how it could possibly could have been prevent from happening** —or **reoccurring again.** Then Co-Defendant's Director of Operations Thomas Bedwardii **looked on** —the **register desk wall, grabbed available instructions,** —and **read something,** —and **left without saying anything else**—and <u>**"nothing was never done!"**</u>

249.     Plaintiff **being inquisitive about what** —Co-Defendant Director of Operations Thomas Bedwardii **could have possibly taken off**— the **register wall hook** —and **read,** —because **there was nothing there helpful** —for **helping** —to **accomplishing cashier responsibilities prior**— to the **East Carolina University Spring Break** (March 5, -March 12, 2023). —Plaintiff, however **found** —that Co-Defendant Location Manager Shenitha Dupree —and Co-Defendant Food Service Manager Hillary Gallagher **had secretly placed new instructions on** —the **register wall hook without informing** Plaintiff —of the **new instructions.**

250.     During the **East Carolina University Spring Break** (March 5, 2023-March 12, 2023), —Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher **had replaced prior instructions** with: (1) a **new Employee Meal policy without any created** or **revised date;** —and (2) a **new Ozzi-To-Go Program instruction with** —a **revised date of 8/31/2022,** —which **raised** —a **triple red flag!** — **"Why?"**

251.     On **Friday August 19, 2022,** Plaintiff's **start date** —at the **Todd Dining Hall,** —there were **no "To-Go-Program instructions** —at the **registers.** —Co-Defendant Location Manager Shenitha Dupree's and Defendant Food Service Director Hillary Gallagher's **secret placement** —of an **Ozzi-To-Go-Program instruction** at —the **registers** with— a **revised date August 31, 2022,** —was an **attempted managerial deception plan** —to **make it appear** —that Plaintiff was **provided Ozzi-To-Go-Program instruction twelve (12) days** —**after** Plaintiff **started his employment** at —the **Todd Dining Hall on August 19, 2022,** —which **raised** —**triple red flag!** — **"Why?"**

54

252. Co-Defendant Location Manager Shenitha Dupree's —and Co-Defendant Food Service Director Hillary Gallagher's **secret placement** —of an **Ozzi-To-Go-Program instruction** at —the **registers with** —a **revised date August 31, 2022,** —was **not done without** —the **knowledge** —of Co-Defendant Residential District Manager Kelvin Tarukwasha —and Co-Defendant Director of Operations Thomas Bedwardii, —which is **exactly** —the **reason** Co-Defendant Director of Operations Thomas Bedwardii **looked on** —the **register desk wall, grabbed available instructions,** —**read something,** —and left without saying anything else.

253. On Friday March 17, 2023, Co-Defendant Location Manager Shenitha Dupree **called** Plaintiff —to **her office** —for a **meeting** —that **included** Co-Defendant's Supervisor Darrly Hines, whom Plaintiff **had expressed** —that **what happened** —with Plaintiff **on** March 15, 2023, **had** —also **happened previously on** February 15, 2023, —and that Plaintiff **felt somewhat threatened,** —and that **management needed** —to **do a better job ensuring** Plaintiff's— and **other cashiers' security.**

254. On Friday March 17, 2023, at Co-Defendant Location Manager Shenitha Dupree's called **meeting she asked** Plaintiff: — **"what's wrong?** — Plaintiff **replied:** "as **I conveyed**— to **Darryl, I didn't feel** —that **management had done all** —that **it could do** —to **create a more peaceful** —and **safer work environment** —for **cashiers,** —and that **written instructions should be provided** —to **provide** —to **students** —who **question Cashiers' denials** —of **accepting their Banner IDs** —to **eat."**

255. On Friday March 17, 2023, Co-Defendant Location Manager Shenitha Dupree **responded:** — **"Darryl said that you said** —you **felt threatened** —by **some students."** —Plaintiff **replied:** — **"yes, I have them standing close** —to **me while I convey management's verbal**— **"No Banner ID Usage Policy,** — which they **vehemently disapprove.** —Co-Defendant Location Manager Shenitha Dupree **replied:** — **"if feel threatened you don't need** —to **be at** —the **register,"** —and **HR Manager Ashley Hall needs** —to **get involved."**

256. On Friday March 17, 2023, Plaintiff **replied:** —**There's nothing wrong with me,** —and **if I felt threatened, it's management's responsibility** — to **ensure** —that **no threats** —or **seemly threat**— are **encountered** —by Plaintiff **nor any other Cashiers**—because of **this verbal "No Banner ID Usage Policy,** —that **management will not provide written policy. —There's nothing wrong**

with me —and **I haven't done anything wrong** —nor **manifested unacceptable behavior practices.**"

257.     On Friday March 17, 2023, Co-Defendant Location Manager Shenitha Dupree **responded:** — **"I feel you need to home** —and **cool off."** —Plaintiff **responded:** — **"my hours have already been cut** —and **I don't need to go home."** —She **responded:** — **"I need you to go home** —and **come back Monday** (March 20, 2023). —Plaintiff **replied:** — **"yes, I'll go home as you have requested,** —and **I need to take PTO** —for the **rest** —of the **work shift."** —She **responded:** — **"yes, you can do that."** — Then, Co-Defendant Supervisor Darryl Hines **asked** Plaintiff, — **"are you alright?"**

258.     On Friday March 17, 2023, Plaintiff **responded:** — **"what do you mean?"** —Co-Defendant Location Manager Shenitha Dupree **replied:** — **"he just wants** —to **know if you are ok."** Plaintiff **responded:** — **"yes, I'm ok,** —because **there's nothing wrong with me in** —the **first place."** —Then Plaintiff and Co-Defendant Supervisor Darryl Hines **got up** —and **exited** Defendant Location Manager Shenitha Dupree's **office** —to **return** —to the **Safe's office.**

259.     On Friday March 17, 2023, Plaintiff —and Co-Defendant Supervisor Darryl Hines **entered** —the **Safe's Office** — for Plaintiff — to **verify** Plaintiff's **cash register drawer** — and **perform** Plaintiff's **Cash Verification Deposit Slip,** —and **while** Plaintiff was **performing his cash drawer verification,** —Co-Defendant Supervisor Darryl Hines **attempted consoling** Plaintiff —and **stated:** to Plaintiff: **"I've experienced those same things you were speaking** —to **Dupree about,** — but **that changed nothing!"**

260.     On Friday March 17, 2023, Plaintiff **then brought up** Defendant Production Manager Earl **Kornegay's alcoholic breath,** —and Co-Defendant Supervisor Darryl Hines **immediately stated:** — **"that's an everyday thing** —and **"all"** — of **management knows it** —and **has allowed it.** —**I just look** —the **other way."** —Co-Defendant Supervisor Darryl Hines attempted —to continuous provide— sense— of condolence— to Plaintiff **stating:** — **"Larry, I'll see you Monday; —take care of yourself** —and **don't worry about these things,** — because **"nothing is going to change."** — **"I've never seen it like this before!"**

261.     On Monday, March 20, 2023, **upon** Plaintiff's **return to work,** — Plaintiff while **considering** —a **vitally important portion** —of Co-Defendant Supervisor's Darryl Hines's **statement:** — **"nothing is going to change, —I've never seen it like this before;"** —recalled very clearly —a vitally important

question —and **answer** —that Co-Defendant Location Manager Shenitha Dupree **asked** Plaintiff —and **then stated** —to Plaintiff **in** —the Friday, March 17, 2023, **meeting** —which **was**: **"Have you not gone over my head**— to **Thomas** —and **Kelvin** —and **reported** —the same things to them —that **you've reported to me; —and <u>nothing has happened has it,</u> —then <u>what does that tell you?"</u>**

262.    On Monday, March 20, 2023, Plaintiff also **learned** from Defendant Marketing Coordinator DeNesha Deans —that Defendant Chef Deva Pickens **had been selected** —by Defendant to **do** —a **presentation honoring Women History Month** —and was **scheduled**— to **make** —a **film presentation** on Tuesday March 21, 2023, —to be **presented ECU campus-wide** —on **Instagram.**

263.    However, Defendant Chef Deva Pickens **never got** —the **opportunity** —to **make** —the **scheduled film presentation** on Tuesday March 21, 2023, —because of the **bitter envy** —and **self-seeking racist white desire** — of Co-Defendant Food Service Director Hillary Gallagher —who **abused her position** —of **authority** —to **terminated** —or **fire** Defendant Chef Deva Pickens **beforehand** —to create that **scheduled film presentation honoring —Women History Month** —for **herself.**

264.    On Monday, March 20, 2023, Plaintiff also **learned** —that Defendant Chef Deva Pickens **had given** Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher —a **two (2) weeks' notice** —of **resignation before being terminated.** —Co-Defendant Food Service Director Hillary Gallagher's **hurried termination** —of Defendant Chef Deva Pickens was **premeditated, intentional, willful, purposeful,** —and **deliberately implemented** —with **malice** —to **create** —a **rare promotional opportunity**— to **exalt** —and **promote herself** at —the **unremorseful expense** —of Defendant Chef Deva Pickens' **underserved termination.**

265.    Co-Defendant Food Service Director Hillary Gallagher's **racism** —is **directed specifically** —at **blacks,** —and **other people** —of **color based upon** — the **systems** —of **power** —and **oppression** —wherein **perceiving herself superior over blacks** —and **other people** —because of the **color** —of **her white skin**—that **affords her special white privileges** —and the **right** —to **mistreat**

blacks —and **other people** —of **color** —according to **her individual racialized views** —and **embedded racist white cultural behavior practices.**

266.     Co-Defendant Food Service Director Hillary Gallagher **immediately after terminating** —Defendant Chef Deva Pickens **began arrogantly flaunting around daily** —in **her own distinguished chef's uniform** —to **exalt herself** — and to **provoke** —the **envy** —of **employees working under her preview**, which **she did with arrogant pride.**

267.     Defendant Marketing Coordinator DeNesha Deans **strongly believes**— that Defendant Food Service Director Hillary Gallaugher's **termination** —of Defendant Chef Diva Pickens was **racially motivated** —and **implemented with malicious intent** —because of Defendant Marketing Coordinator DeNesha Deans' **her own personal experience** —of Co-Defendant Food Service Director Hillary Gallaugher's **verbal outbursts**— and **personal acts** —of **racism.**

268.     Defendant Marketing Coordinator DeNesha Deans (a **black woman**) —**begin her position** —as a **Marketing Coordinator** on October 24, 2022, **under** Defendant Marketing Director Sarah Barkley (a **white woman**). —Co- Defendant Residential District Director Kelvin Tarukwasha (a **black man**) —was **subjected immediately** —to an **extremely hostile work environment** —because of Defendant Marketing Director Sarah Barkley's **racist white actions**—and **became** —the **victimized** Co-Defendant Residential District Manager Kelvin Tarukwasha—who **failed**—to **address** —and to **handle**— the **racist white racism issue appropriately.**

269.     Co-Defendant Residential District Director Kelvin Tarukwasha **despite** —Defendant Marketing Director Sarah Barkley's **racist actions allowed** —Defendant Marketing Director Sarah Barkley —to **remain in her position** —to the **detriment** —of Defendant Marketing Coordinator DeNesha Deans —and others —because of **his personal fear** —to **act upon** Defendant Marketing Director Sarah Barkley's **racist white racism** —and **alcoholism.**

270.     Co-Defendant Residential District Director Kelvin Tarukwasha — because of **his own personal fear** —of **losing his job**—so **became**— a **"yes black man"** —of the **Antebellum South** — that **allowed white people under his preview** —to **do whatsoever** —they **desired doing without any fear** —of **consequences** —or **repercussions**—to the **detriment** — Defendant Marketing Coordinator DeNesha Deans—and others —and therefore **unfit**— for **his position.**

271.     Defendant Marketing Director Sarah Barkley was **promoted** —to a **higher position**— at the **next level** —and **officially left**— the Marketing Office — as its Marketing Director on January 13, 2023, — and Defendant Marketing Coordinator DeNesha Deans **became** —the **Interim Marketing Director.**

272.     Co-Defendant Residential District Director Kelvin Tarukwasha —the **official top managerial executive** —of **record**—was **not** —the **official top managerial executive**—of **recognition,** —but Co-Defendant Director of Operations Thomas Bedwardii, — was the **official top managerial executive**—of **recognition**—and Co-Defendant Residential District Director Kelvin Tarukwasha **allowed it**—to **happen**—because of **his own personal fear**—of **white people.**

273.     Co-Defendant Residential District Director Kelvin Tarukwasha **lacks integrity** —and is **not committed** —to the **mission, vision,** —and **values** —of Aramark—which **makes him** —a **coward**—who's **afraid** —of **implementing his responsibilities.** Co-Defendant Director of Operations Thomas Bedwardii, —and Defendant Marketing Director Sarah Barkley, —and Co-Defendant Food Service Director Hillary Gallagher **all came** —to **know** —and to **realize this** —and **took full advantage** —of Co-Defendant Residential District Director Kelvin Tarukwasha's **cowardness.**

274.     Defendant Marketing Coordinator DeNesha Deans **never received any training** —to **perform** —the **Marketing Director's job** —and as **Interim Marketing Director went** —from **working 40 hours per week** —to **almost 80 hours per week.** —Co-Defendant Residential District Director Kelvin Tarukwasha **promised** —Defendant Interim Marketing Director DeNesha Deans —a **pay raise** —and to **be paid**— the **same salary** —as a **Marketing Director,** —but <u>**never came through with his promises.**</u>

275.     Defendant Marketing Coordinator DeNesha Deans —as the **Interim Marketing Director felt misled**— by Co-Defendant's Residential District Director Kelvin Tarukwasha —because **his promises were only words**—that **were never official documented.** —Co-Defendant's Residential District Director Kelvin Tarukwasha—is a **proven coward, deceiver,** —and **liar,** —who's **unfit** — for **his position.**

276.     Defendant Marketing Coordinator DeNesha Deans **while serving** — as the **Interim Marketing Director,** —Co-Defendant's Director of Operations Thomas Bedwardii (a **white man**) **decided** —to **have** Defendant Interim Marketing Director DeNesha Deans **share an office** with— the **recently hired** Co-

Defendant Food Service Director Hillary Gallagher, —who **immediately created** —a **toxic** —and **racist work environment** —for Defendant Interim Marketing Director **DeNesha Deans,** —and **her interns** —and **staff.** 1

277.     Defendant Interim Marketing Director DeNesha Deans **witnessed** — Co-Defendant Food Service Director Hillary Gallagher **repeatedly make derogatory comments** —**about one (1)** —of the **intern student's sexual orientation** —and **even use racial slurs** —when **referring** —to **another student intern's name.**

278.     Defendant's Interim Marketing Director DeNesha Deans **witnessed one (1) occasion** —when **she** —and **her interns were working** in —the **Marketing Office** and a **student** —was **brought up** —who **previously worked a shift,** —so **his name** —was **mentioned about**— the **topic** —of **discussion.** —Co-Defendant Food Service Director Hillary Gallagher **abruptly,** —**without invitation,** —**aggressively** —and **disrespectfully inserts herself into** —the **conservation, stating** —to the **whole room** —that the **"student is gay."** —The **students didn't know how** —to **respond** —but were **profoundly outraged** —by Co-Defendant Food Service Director Hillary Gallagher's **offensive comment**.

279.     Defendant's Interim Marketing Director DeNesha Deans **witnessed**— Co- Defendant Food Service Director Hillary Gallagher **on several occasions mentioned** —to the **student's face in different ways** —that **his masculine traits didn't make sense, hinting** —at **her thinking he** —was **gay.**

280.     Defendant's Interim Marketing Director DeNesha Deans **witnessed** —**on another separate occasion,** —Co-Defendant Food Service Director Hillary Gallagher —while **another student** —was **helping** Defendant Interim Marketing Director DeNesha Deans **set up** —a **table** —for an **event they were having,** — the **student** —was **having a hard time** —and **asked** Defendant's Interim Marketing Director DeNesha Deans —for **help in front** —of Co-Defendant Food Service Director Hillary Gallagher, —and **she replied** —to **him saying:** — **"Duh you're not gay."**

281.     Co-Defendant Director of Operations Thomas Bewwardii (a white man) is the **real secret deceptive culprit behind** —the **racist white behavior practices implemented** —and **tolerated** at the East Carolina Aramark location. — Co-Defendant Director of Operations Thomas Bedwardii **gave** Co-Defendant Food Service Director —a **free passage** —to implement **racist white behavior**

**practices** from —**her very beginning** — because **such racist white behavior practices** were —of **his own personal gratification** —and **satisfaction.**

282.     Co-Defendant Director of Operations Thomas Bewwardii's **bigotry, narcissistic, xenophobia personality traits** —**have always manifested themselves** —in **certain situations,** —but he **has always found ways** —to **strategically prevent** —the **overt disclose** —of **his detrimental** —or **environmentally unfriendly cause** —to the **promotion** —of **equality** —and **justice** —for **blacks** —and **other people** —of **color.** —But **"now he's clearly exposed!"**

283.     Co-Defendant Director of Operations Thomas Bewwardii was—the **employment authoritarian behind** Co- Defendant Food Service Director Hillary Gallagher's **rampant** —or **unrestrained widespread** —of **racist white behavior practices** —that **threatened, intimidated,** —or **coerced blacks** —and **other people** —of **color through purposeful** —and **deliberate fear inducement.** Co-Defendant Food Service Director Hillary Gallagher **operated without any fear** —of **consequences** —or **repercussions.**

284.     Defendant Interim Marketing Director DeNesha Deans was **subjected** —to a **shocking** —and **embarrassing situation due**— to Co-Defendants Food Service Director Hillary Gallaugher's **racially motivated** —and **demeaning comment,** —which **brought on a moment** —of **being frozen without words** — to **appropriately respond.**

285.     Defendant Interim Marketing Director DeNesha Deans **reported** — Co-Defendant Food Service Director Hillary Gallagher's **racially motivated** — and **inappropriate behavior practices** —to Co-Defendant Director of Operations Thomas Bedwardii —and Co-Defendant Residential District Director Kelvin Tarukwasha **multiple times** —who **informed** Defendant Interim Marketing Director DeNesha Deans —that Co-Defendant Human Resources Manager Ashley Hall was **going** —to **be pulled in**— but Co-Defendant Human Resources Manager Ashley Hall <u>never make contact directly</u> —with Defendant's Interim Marketing Director DeNesha Deans <u>about</u> —Co-Defendant Food Service Director Hillary Gallagher's <u>racially motivated</u> —and <u>inappropriate behavior practices.</u>

286.     Defendant's Interim Marketing Director DeNesha Deans <u>witnessed</u> —on **another occasion,** —Co-Defendant Food Service Director Hillary Gallagher's **disparaging** —and **disrespectfulness** —of an **intern** —who is of **Spanish descent, named Juan.** —Co-Defendant Food Service Director Hillary Gallagher <u>would purposefully repeatedly call him Jose</u> —and <u>laugh about it.</u> —

One (1) day after Juan —was **leaving after his shift ended,** —Co-Food Service Director Hillary Gallagher **walked out** —the **door** —and **stated:** — "bye Jose, I'm just kidding —and laugh about it."

287.     Defendant Interim Marketing Director DeNesha Deans witnessed — Co-Defendant Food Service Director Hillary Gallagher —at **times with actions having racial undertones.** On **another occasion, one (1) student intern** —was **sitting on** —the **floor** in —the **share office space with** —Co-Defendant Food Service Director Hillary Gallagher **helping pack up decorations**— from a **previous event.** —The **office** —was **filled with people,** —Co-Defendant Interim Marketing Director DeNesha Deans's **interns** —and the **Regional Marketing Team** —was **helping out with tasks** —for the **year 2023.**

288.     Co-Defendant Food Service Director Hillary Gallagher **jolts into** — the **shared Marketing Office** — and **scornfully looks down** —at the **intern cleaning up**—and **abruptly** —and **aggressively starts yelling** at—the **intern in front** —of **everyone** —to **move away from his desk.** —As the **student intern silently attempts** —to **move away from** Co-Defendant Food Service Director Hillary Gallagher's **desk,** — Co-Defendant Food Service Director Hillary Gallagher **continues yelling** —and **calling out** Defendant Interim Marketing Director DeNesha Deans—in the **middle**—of a **conversation** — Defendant Interim Marketing Director DeNesha Deans —was **having with** —the **Regional Marketing Team members.**

289.     Co-Defendant Food Service Director Hillary Gallagher —as **if what she had already done wasn't enough,** —then **angrily** —and **aggressively begins** —to kick toward —the student intern —and throw —the decorations off —the floor in —the intern student's direction. —The **intern student immediately gets up from** —the **floor** —and **exits** —the **shared Marketing Office** — and **taking decorations with her.**

290.     When the **intern student,** —who was— the **victim** —of Co-Defendant Food Service Director Hillary Gallagher's **underserved racist white attack had left,** —then Co-Defendant Food Service Director Hillary Gallagher stated —to another Hispanic student intern saying: — "she acted as if I killed her dog. — I can do that if she wants me to," —and proceeded to laugh.

291.     Defendant Interim Marketing Director DeNesha Deans as— **a direct result** —of Defendant Food Service Director Hillary Gallauger's **underserved racist white racial attack** on —the **Hispanic intern student,** —and the **intern**

62

**Hispanic student's hurt** —and **pain** —of Co-Defendant Food Service Director Hillary Gallaugher's **racist white racial attack**— Defendant Interim Marketing Director DeNesha Deans **had to send** —the **intern Hispanic student home,** — which **cut** —the **intern Hispanic student's pay**— for t**hat day.**

292.     Defendant Interim Marketing Director DeNesha Deans **repeatedly with** —the **most-serious** —of **concerns reported** —Co-Defendant Food Service Director Hillary Gallagher's **inappropriate racist white racial behavior practices** —to Co-Defendant Residential District Director Kelvin Tarukwasha — who **did absolutely nothing,** —but **coward out** —and **looked after his own personal interests**—to the **detriment** —of Defendant Interim Marketing Director DeNesha Deans—**any many other** Defendant Aramark employees.

293.     Co-Defendant Residential District Director Kelvin Tarukwasha —is a **total disgrace** —and **total embarrassment** —to **responsible managers enforcement** —Defendant Aramark **Equal Employment Opportunity (EEO) policy** —and Defendant Aramark **EEO Statement** which states:

*"We are **committed** —to an **equitable workplace engaging our employees** —and building trust in an environment —where we value differences. —At Aramark, we believe —that every employee should enjoy equal employment opportunity — and be free— to participate in all aspects —of the company.*

*We do not discriminate on —the basis —of race, color, religion, national origin, —age, sex, gender, pregnancy, disability, sexual orientation, gender identity, genetic information, military status, protected veteran status —or other characteristics protected— by applicable federal, state —or local law."*

294.     Defendant Interim Marketing Director DeNesha Deans **recalls** —that **on one (1) occasion** —Co-Defendant Residential District Director Kelvin Tarukwasha —**attempted getting** Defendants Interim Marketing Director DeNesha Deans— to **bribe** —the **intern Hispanic student in connection** —to Co-Defendant Food Service Director Hillary Gallagher's **disparaging** —and **derogatory gay comment** with— a **gift card** —from **Mission BBQ.**

295.     Co-Defendant Residential District Director Kelvin Tarukwasha quickly realized —that **"his act"** —of **"attempted bribery"** was —a **"profoundly terrible decision"** —and **told** Defendant Interim Marketing Director DeNesha Deans —to **do with** —the **gift card** —from **Mission BBQ** —as Defendant Interim Marketing Director DeNesha Deans **wished** —and **made**

63

Defendant Interim Marketing Director DeNesha Deans **sign a piece** —of **paper stating:** — **"he gave me** —the **gift cards** —to **cover him with his supervisors."**

296.     Defendant Interim Marketing Director DeNesha Deans's **last workday**— at Defendant **Aramark Marketing Office** was **March 31, 2023.** — Defendants Interim Marketing Director DeNesha Deans's **devastaging experience**— at Defendant **Aramark has led her** —to **believe** — Defendant **Aramark is**— a **racist organization** —that **cares only about its staff,** —in **particularly** —and **specifically its white staff.**

297.     Defendant Interim Marketing Director DeNesha Deans **further believes** —that Defendant **Aramark put people in places** —of **power** —and **authority** —that **care more about people bowing down** —to Defendant **Aramark than doing good work,** —and that **everyone in upper management** — is **doing whatever's necessary** —to **cover themselves**—of **corruptible activities.** —Defendant Interim Marketing Director DeNesha Deans's **final comment states:** — **"I had a horrible experience"** at— the **"company"** —and **wish employment there no more."**

298.     Co-Defendant Food Service Director Hillary Gallagher's **conduct** — or **personality** —is **contentious, strifeful, reproachful,** —and **lacks any possibility**—of **producing** —a **favorable, welcoming,** —and **productive work environment,** —but **only** —a **work environment** —of **chaos** —and **havoc**—that **will bring wherever she works** —to **ruination.**

299.     On March 24, 2023, at **approximately 1:50 PM, after returning from lunch,** —Co-Defendant Supervisor Darryl Hines **brought** Plaintiff —an **Ozzi To-Go-Box-Program instruction with**— a **revised date** —of **August 31, 2022,** —a **copy** —of the **same instruction** Co-Defendant Location Manager Shenitha Dupree —and Co-Defendant Food Service Director Hillary Gallagher **secretly placed** at —the **registers** on —the register wall hooks during —the East Carolina University Spring Break (March 5, 2023-March 12, 2023), —which **served only** —as **some managerial shenanigans scheme.**

300.     Co-Defendant Supervisor Darryl Hines **informed** Plaintiff —that Co-Defendant Food Service Director Hillary Gallaugher **had asked him** —to **give** — the **Ozzi To-Go-Box Program instructions with**— a **revised date** —of **August 31, 2022,** —to Plaintiff, —and Plaintiff **asked why?** —Co-Defendant Supervisor Darryl Hines **replied:** — **"she just told me** —to **give this** —to **you."** —Plaintiff

suspected some **managerial shenanigans** on —the **part** —Co- Defendant Food Service Director Hillary Gallagher.

301.    Plaintiff **wrote on**— the **Ozzi To-Go-Program instructions** with —a **revised date** —of **August 31, 2022, stating:** — **"this is an instruction insinuating"** —that **I didn't know what I was doing** —and **needed guidance** — to **assist me in processing To-Go-Box-Meals.** —**I completely** —and **thoroughly understand** —the **"To-Go-Box-Program instructions"** —and **had** —the **Ozzi To-Go-Box Program instructions** with— a **revised date** —of **August 31, 2022, returned** —to Co-Defendant's Location Manager Shenitha Dupree's **office.**

302.    Plaintiff **wrote on** —the **Ozzi To-Go-Box Program instructions** with— a **revised date** —of **August 31, 2022, returned** —to Co-Defendant Location Manager Shenitha Dupree's **office:** — "the **second (2nd) register,** — in which **Senior Cashier Debbie Daniels work** —is **broken** —and **incapable** —of **performing** —the **Ozzi Digital Token function,** —and **therefore does not receive** —the **"Low Balance" message** —nor any other messages."

303.    On March 24, 2023, **later that day,** Plaintiff **saw** Co-Defendant Food Service Director Hillary Gallagher— and **asked:** <u>**"why did you have Darryl give me these instructions?"**</u> — Co-Defendant Food Service Director Hillary Gallagher **arrogantly replied:** — <u>**"Mary Rhodes just provided these"**</u> —and **I wanted you to have them,"** —which was **obviously** —an **outright lie** —and **unworthy** —of **any credence whatsoever.** —Plaintiff **had not been provided these instructions until after** —the **East Carolina University Spring Break** (March 5, 2023-March 12, 2023) —that was **secretly placed on** —the **register wall hooks.**

304.    On Thursday March 30, 2023, there was— a **sheet with 15 email addresses** —and **names left**— at Plaintiff's **register** —and Plaintiff **inquired** —of Co-Defendant Supervisor Darryl Hines **asking:** — **"what is this sheet for?"** —He **replied:** — **"I don't know."** —Plaintiff **gave** —the **sheet with 15 email addresses**— and **names** —to Co-Defendants Supervisor Darryl Hines— and **asked him** —to **go** —and **inquire** —of Co-Defendant Location Manager Shenitha Dupree **about** —the **sheet** —and **its purpose.**

305.    Co-Defendant Supervisor Darryl Hines **returned** —to Plaintiff's **register** — and **stated:** — **"Dupree said you don't have to worry about it."** — Plaintiff **asked** Co-Defendant Supervisor Darryl Hines —to **give** —the **sheet with 15 email addresses**— and **names back** —and Co-Defendant Supervisor Darryl

65

Hines **returned it back** —to Plaintiff —and Plaintiff **informed** Co-Defendant Supervisor Darryl Hines —that Plaintiff **would inquire** —of Co-Defendant Food Service Director Hillary Gallaugher **about** —the **sheet with 15 email addresses** —and **names**— of **its purpose.**

306.     Plaintiff **called** Co-Food Service Director Hillary Gallagher —to Plaintiff's **register** —and **inquired about** —the **sheet with 15 email addresses** — and **names**—and of **its purpose.** —Co-Food Service Director Hillary Gallaugher **said:** — "give it to me, —you don't need it, — "Ramadan is over." —Plaintiff **gave** Co-Defendant Food Service Director Hillary Gallaugher —the **sheet with 15 email addresses**— and names, —and **she took it** —and **eliminated it from being**— a **required continued Cashier's service.**

307.     Plaintiff **not knowing about Ramadan performed**— a **personal inquiry** —and **found** —that **Ramadan** was— a **scared religious period** in —the **ninth (9th) month** —of the **Muslim year, during** —which **strict fasting**— is **observed** —from **sunrise to sunset,** —from the **time** in —the **morning** when — the **sun appears,** —or **full daylight arrives,** —to the **time** in —the **evening** when —the **sun disappears,** —or **daylight fades away.**

308.     On Thursday March 30, 2023, Plaintiff **discovered**— that **Ramadan started**—on **March 22, 2023,** —and **ended** —on **April 21, 2023,** —which **meant** —that Co-Defendant Food Service Director Hillary Gallaugher **flat-out lied about Ramadan** — **having ended**— and that Co-Defendant Food Service Director Hillary Gallagher's **motivation** —for **removing** —sheet with 15 email addresses —and names was— a **racial racist white attack against Muslims:** — which was a **discontinuation** —of **providing observance service** —to **Muslim students 23 days before Ramadan officially ended.**

309.     On Thursday March 30, 2023, Co-Defendant Food Service Director Hillary Gallagher's —**removal** —of the **sheet with 15 email addresses** —and **Muslim names** was—a **blatant racist white act** —of **"xenophobic"** (a **racially motivated act** —of **fear, contempt,** —and **disrespect** —of **strangers, foreigners,** —or **immigrants** —of **color,** —or **anything designated**— as **foreign** —or **immigrant**).

310.     Co-Defendant Food Service Director Hillary Gallagher —has **repeatedly** —and **publicly manifested** —the **racist white attributes** of: — (1) **using racial slurs** —and **other hurtful** —and/or **hateful language,** — (2) **negative emotional reactions** —to **blacks** —and **other people** —of **color,** —and

66

(3) **white supremacy** (the **belief** —that **white people constitute** —a **superior race** —and **should therefore dominate society, typically** —to the **exclusion** —or **detriment** —of **other racial** —and **ethnic groups**).

311. Co-Defendant Food Service Director Hillary Gallagher **lacks honesty** —and **integrity** —and **any action taken against** Plaintiff —and/or **any other person** (e.g., Defendant Chef Deva Pickens) —**must be taken with suspect** (something without proof) — and therefore **highlighting her credibility** —as **basically unacceptable** —or **uncredible** (not worthy of credence).

312. On Tuesday April 4, 2023, Co-Defendants Supervisor Darryl Hines —who **operates** from —the **middle** —of the **fence** —and **swings his attention** —and **support** —to **whichever side** of —of the **fence** —that **favors his interests** came —to Plaintiff— and **just started complaining about** Defendant Omelet\Expo Station Cook **Charlotte Ross stating:** — "**she always complaining about being sick** —and <u>almost about to pee on herself</u>," —which was a **personal health issue** —that Co-Defendant Supervisor Darryl Hines **shouldn't have been talking about** —and **sharing with anyone.**

313. On Tuesday April 4, 2023, **later that day,** Co-Defendant Supervisor Darryl Hines—**had placed** Defendant Senior Cashier Debbie Daniels at —the **Omelet\Expo Station** —to **relieve** Defendant Omelet\Expo Station Cook **Charlotte Ross.** — At **approximately 10:20 am** Defendant Chef Eric Robinson **relieved** Defendant Senior Cashier Debbie Daniels— and Co-Defendant Supervisor Darryl Hines **placed** Defendant Senior Cashier Debbie Daniels —at <u>some other place</u> in —the <u>Todd Dining Hall</u>— because of <u>excessive employees' shortages.</u>

314. On Tuesday April 4, 2023, **later that day,** Defendant Senior Cashier Debbie Daniels— was **unavailable** —to **relieve** Plaintiff —as **necessary** —for **bathroom breaks** —and Plaintiff's **lunch break** and— to **assist** Plaintiff —in **reducing** —the **long lines**— of **students, faculty members,** —and **other customers needing** —to **be processed** in—at the **registers** —to **eat.** Both Co-Defendant Location Manager Shenitha Dupree and Co-Defendant Food Service Director Hillary Gallagher **saw** Plaintiff **struggling** —to **process** —the **long lines** —and **deliberately allowed**— Plaintiff's **struggle** —to **continue before finally sending**— Defendant Sanitation Worker Kalveion Edwards —to **help with** —the **processing.**

315.     Defendant Sanitation Worker **Klevion Edwards** is— a **young good, decent,** —and **moral employee** —of **Christian principles** —who **does what he's assigned** —by Co-Defendant Supervisor Darryl Hines, **his immediate supervisor,** —and Co-Defendant Location Manager Shenitha Dupree, —and Co-Defendant Food Service Director Hillary Gallagher— to **keep his job** —to **financially provide** —for **himself.**

316.     Defendant Sanitation Worker **Klevion Edwards** is—a Sanitation Worker —and **knows absolutely nothing** —the **Micro Oracle Register processing system**—but <u>only</u> **choosing** —the **appropriate meal** —and **swiping** —the **One Card** —to **process** —the **chosen meal.** — Defendant Sanitation Worker **Klevion Edwards**—is **completely** —and **totally ignorant** —of **credit card, cash, Group,** —and **To-Box-Box-Meal register transactions processing just**—as **all other employees** —that Co-Defendant Supervisor Darryl Hines, —and Co-Defendant Location Manager Shenitha Dupree, —and Co-Defendant Food Service Director Hillary Gallagher **place** —at the <u>registers with</u> —Co-Defendant Director of Operations —and Co-Defendant Residential District Director Kelvin Tarukwasha <u>**approvals.**</u>

317.     The **deliberate carelessness** —and **recklessness**—of **placing untrained** —and **unqualified Cashiers** —at the **registers** —is **inexcusable** —and **constitutes gross negligence**; —which is **exactly** —the **primary reason** —of the **Ozzi-To-Go-Box Program instructions** —and **its appropriate processing disappearing into**—the **abyss**; —because <u>**management miserably failed training**</u> —and <u>**qualifying employees placed**</u> at—the <u>registers</u> —to be <u>**knowledgeable**</u> —and <u>**effective Cashiers.**</u>

318.     Defendant Cashier Debbie Daniels's **proven failures** —of **understanding** —and **implementing "Ozzi To-Go-Box Program instructions"** processing —and **Group Rate processing clearly shows** —the **failures** —of **all other Defendant employees placed on**— the **registers**— to **perform Cashier register processing.** —This **extreme failure management** —has **sought** —to **hide** —and **keep hidden forever.**

319.     Co-Defendant Location Manager Shenitha Dupree, —and Co-Defendant Food Service Director Hillary Gallagher, —and Co-Defendant Director of Operations Thomas Bedwardii, — and Co-Defendant Residential District Director Kelvin Tarukwasha— **all engaged** —in **protected concerted activity restricted** —by **Section 7** —of the **National Labor Relations Act,** —in **particularly** —the <u>**willful neglect**</u> —and <u>**failure**</u> —to <u>**perform job duties**</u> —as

68

described Aramark Employee Handbook, —**Standards of Conduct /Progressive Discipline, —published July 2022.**

320.     On Tuesday April 4, 2023, Plaintiff **informed** Defendant Chef Eric Robinson— that Plaintiff **needed his lunch break,** —but <u>**most importantly had an emergency need**</u> —of **going** —to the **bathroom.** —Defendant Chef Eric Robinson **replied:** — "I will go —and <u>**let Dupree know.**</u>" —**Even though** Co-Defendant's Supervisor Darryl Hines— was Plaintiff's **immediate supervisor,** Defendant Chef Eric Robinson **chose** —to **bypass** —Plaintiff's **immediate Supervisor** —Co-Defendant Darryl Hines —and **go directly** —to Co-Defendant Location Manager Shenitha Dupree.

321.     On Tuesday April 4, 2023, Co-Defendant Location Manager Shenitha Dupree **referred** Plaintiff's **request** —for **his lunch break,** —and **most importantly** —Plaintiff's **emergent need** —of **going** —to the **bathroom** —to Co-Defendant Supervisor Darryl Hines —who <u>**took his time coming**</u> —to Plaintiff <u>**while**</u> Plaintiff —<u>**forced himself holding his water**</u> —to <u>**keep from urinating on himself.**</u>

322.     On Tuesday April 4, 2023, Co-Defendant Supervisor Darryl Hines **approached** Plaintiff **with**—an **antagonistic, hostile,** — **unsympathetic attitude,** —and the **closer** Co-Defendant Supervisor Darryl Hines **came** —to Plaintiff **it** — was **apparent**— that Co-Defendant Supervisor Darryl Hines **would be confrontational,** —which is probably—the reason Defendant Chef Eric Robinson **chose** —to **bypass** Co-Defendant Supervisor Darryl Hines—and **go directly** —to Co-Defendant Location Manager Shenitha Dupree.

323.     Plaintiff **frustrated stated**—to Co-Defendant Supervisor Darryl: "**you'll have to do better than this.**" —Co-Defendant Supervisor Darryl Hines **replied:** — "<u>**you'll don't have**</u> —to **do nothing.**" —Plaintiff **profoundly frustrated** —and **angered replied:** — "**I need my lunch break**" —and <u>**"I need to go to the bathroom."**</u> —Co-Defendant Supervisor Darryl Hines **unsympathetically** —and **disrespectfully replied:** — <u>**"I don't give**</u> —a <u>**damn if you pee on yourself;"**</u> — and **stated it loudly into** —the **hearing** —of **other employees,** —and **without fear** —of **any consequences** —or **repercussions** —for **speaking profanely** —to Plaintiff.

324.     On Tuesday April 4, 2023, Co-Defendant Supervisor Darryl Hines **exalted himself** —to **deliberately demean** Plaintiff in —an **inconsiderate, disrespectful,** and **nasty manner**—as if having —the —**reapproval**— of

management —to **do so.** —Co-Defendant Supervisor Darryl Hines's **words** —and **actions pierced** Plaintiff's **soul,** —and Plaintiff **called him** —a **bald ass.** —Co-Defendant Supervisor Darryl Hines **asked** Plaintiff: —**what did you say?** —Plaintiff responded: **"you heard exactly what I said"**—and **hurried** —to the **bathroom.**

325.    On Tuesday April 4, 2023, **four (4)** Defendant **employees heard** —the **verbal exchange between** Plaintiff —and Co-Defendant Supervisor Darryl Hines, —and **they were:** (1) **Dell,** (2) **Dedra,** (3) **Deja** —and (4) Defendant's Senior Cashier Debbie Daniels, —who **had returned** —to the Omelet/Expo Station —to **cook,** —**rather than** —to **her register** —to **relieve** Plaintiff, —which **clearly shows** Co-Defendant Supervisor Darryl Hines's **words** —and **actions implemented against** Plaintiff —were **done maliciously**—and **with managerial approval.**

326.    On Tuesday April 4, 2023, **before going** —to the **bathroom** —to **Defendant employees** (1) **Dell,** (2) **Dedra,** and (3) **Deja,** —and (4) Defendant Senior Cashier Debbie Daniels —Plaintiff **stated:** — **"all of you are witnesses** —to **what was said."** —When Plaintiff **returned from** —the **bathroom,** —Defendant **employees** (1) **Dell,** (2) **Dedra,** and (3) **Deja**—**informed** Plaintiff—that Co-Defendant Supervisor Darryl Hines **has already admitted** — to Co-Defendant Location Manager Shenitha Dupree —that **he said it.**

327.    On Tuesday April 4, 2023, when Plaintiff **told**— Co-Defendant Location Manager Shenitha Dupree **what** —Co-Defendant Supervisor Darryl Hines **had said**—in Co-Defendant Supervisor Darryl Hines's **presence**— Co-Defendant Location Manager Shenitha Dupree **with** —a **smirky smile placed his hands on** —Co-Defendant Supervisor Darryl Hines's **shoulders** —and **asked him if he was alright.**

328.    On or about Thursday April 6, 2023, Defendant Omelet /Expo Station Cook **Charlotte Ross informed** Plaintiff —that Co-Defendant Supervisor Darryl Hines **stated**— to **her:** — **"that fucking Mr. Larry,** —**he's always starting some god-dam shit.** —**I'm going**— to **get rid of his ass."**

329.    On or about Thursday April 6, 2023, Defendant's Grill Cook **Travon Williams informed** Plaintiff —that Co-Defendant Supervisor Darryl Hines **stated** —to **hm:** — **"I don't know what I did** —to **him.** —That **motherfucker**— is **fucking up shit.** —That **motherfucker gotta go.** —**I told "them" his ass gotta go."**

330. Co-Defendant Former Food Service Director **Tara Perez,** —and Co-Defendant Location Manager **Shenitha Dupree,** —and Co-Defendant Food Service Director **Hillary Gallagher,** —and Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant Residential District Director **Kelvin Tarukwasha** —and Defendant's Senior Cashier **Debbie Daniels** —are the **"them"** —that Co-Defendant Supervisor Darryl Hines **told** Plaintiff **had** —to **go!** —That's —the **"them!"**

331. The **"them"** are —the **ones along with himself** —who **allowed** — Defendant Senior Cashier Debbie **Daniels's broken Digital Token button**—to **remain unrepaired until April 9, 2023,** —a **period** —of **at least 9 months**—and **in** — the **cunning craftiness** —of **deceitful plotting conspired** —a **scheme** —to **hide** Defendant Senior Cashier Debbie **Daniels's register ever being broken** — and to **promote** Co-Defendant Director of Operations Thomas Bedwardii's **new phrase** —that "a **"register"** is —is a **"register"** —to **keep their miserable failure** —of the **"Ozzi-To-Go-Box Program processing"** —a **secret**—and **hidden forever.**

332. Plaintiff **believes himself being** —a **strong, bold, courageous** —and **intelligent black man,** with —an **unusual level** —of **resiliency** —and **steadfastness**— that's **hated** —and **feared** —by **any racist white person,** — including Co-Defendant Food Service Director Hillary Gallagher— whom Plaintiff **believes likened** Plaintiff —to an **Antebellum South black male buck** —who **needed** —to **be broken through** —the **process** —of **her intimidation** —or **coercing tactics** — to **induce fear** —and **bring** Plaintiff —to **humiliation** —to **conform** —to **her racist white will;** —to which **she failed miserably.**

333. Co-Defendant Food Service Director Hillary Gallagher **viewed** Plaintiff—as an **Antebellum South unbreakable black male buck**—and **profoundly despised** —and **hated** Plaintiff —for **not conforming** —and **being submissive** —to **her perceived racist white authority** —and **will;** —and therefore **sought desperately** —to **destroy** Plaintiff —by **any means possible.**

334. Co-Defendant Food Service Director Hillary Gallagher **tried continuously** —and **relentlessly** —to **have** Plaintiff **"say PLEASE"** — to **her**— and Plaintiff **vehemently refused,** —which **turned** Co-Defendant Food Service Director Hillary Gallaugher **red in her face** —and **profoundly irritated** —and **aggravated her**— to **no concern** —of Plaintiff —and Co-Defendant Food Service

Director Hillary Gallagher **knew it** —which **irritated** —and **aggravated her** —to **even despise** —**hate** Plaintiff —the **more.**

335.    Co-Defendant Food Service Director Hillary Gallagher **asked** Plaintiff: — **"why can't you say PLEASE?** —Plaintiff **replied:** — "because **I don't want to."** —Co- Defendant Food Service Director Hillary Gallagher **with arrogance replied:** — **"just say PLEASE** —when **you ask for something."** — Plaintiff **replied:** — **"I don't have to say PLEASE"** — and **"especially to you."** — She replied: — **"well, it is**— the **"right thing to do."** —Plaintiff **replied:** — **"not to you"** —and for the **"reason you're demanding that I do it."** —**I'm not required** —to **say PLEASE to you,"** —and **"I will never say PLEASE to you."**

336.    On Saturday April 8, 2023, Plaintiff **via** Defendant **Aramark Hot Line reported** — a Discrimination Complaint —and also **reported** —that Plaintiff **had** —a **101-page** Defendant **Aramark Hot Line Complaint** —of **age discrimination, discrimination, harassment,** —and **retaliation.**

337.    On Monday April 10, 2023, **ECU faculty member Yu Frank Yang** @ yangecu.edu —**approached** Plaintiff with—a **defiant** —or **confrontational attitude stating:** — "every time I've come in —to get a **To-Go-Box-Meal,** — I've had problems with you." —Plaintiff **replied:** — "every time you've come in you've had —to be shown how —to **return your dirty To-Go-Box** —to the **Ozzi-To-Go- Box Machine.** —I've asked you several times —to **read** —and **follow instructions** —and you've adamantly refused —to **do so;** —but **rather have chosen** —to keep asking for help every time you come —to **me."**

338.    On Monday April 10, 2023, **while** Plaintiff —was **engaged in Confrontation** —with **ECU Faculty member Yu Frank Yangy** @ yangecu.edu, —**while still in outrage,** —Co-Defendant Food Service Director Hillary Gallagher **came out** —of **her office**— and **ECU Faculty member Yu Frank Yangy** @ yangecu.edu **asked** Plaintiff: — **"is that the manager?"** — Plaintiff **replied:** — **"yes;"** —and **ECU Faculty member Yu Frank Yangy** @ yangecu.edu **immediately went** —to Defendant Food Service Director Hillary Gallagher —and **she took him** to —the **lobby** —and **began listening** —to **his outrage against** Plaintiff.

339.    On Monday April 10, 2023, Co-Defendant Food Service Director Hillary Gallagher was —so **motivated** —to **take advantage** —of **this opportunity** —to **attack** Plaintiff's **character** —that Co-Defendant Food Service Director Hillary Gallagher **went** —and **got** Co-Defendants Residential District

Director Kelvin Tarukwasha —to **join in listening** —to **Yu Frank Yangy @** yangecu.edu **outrage against** Plaintiff.

340.     On Monday April 10, 2023, **ECU Faculty member Yu Frank Yangy @** yangecu.edu—**outrage against** Plaintiff **had nothing** —to **do with what** Plaintiff **had done**—to **him,** —but **rather,** was—the **direct result** —of **his own personal defiance** —of **not listening, reading,** —and **following instructions**— and **choosing** —to **blame** Plaintiff—for **his own personal failure.** —There is **absolutely nothing** —that **Yu Frank Yangy** —**could have told** Co-Defendant Food Service Director Hillary Gallagher—**concerning** Plaintiff's **customer service** —that **warranted** —a **customer service write-up against** Plaintiff.

341.     On Monday April 10, 20923, Plaintiff **via email** —to myhr@aramark.com Defendant **Aramark Hot Line stated:** — "This **Complaint per attachment** (101 pages)—is **forwarded** —in **whole per guidance,** —from **HR Generalist Coordinator Austin upon my request,** —for a **way** —or **means** —of **filing my complaint in whole,** —in **lieu** —of **incrementally** —as **I have previously filed two (2) parts partially.** —I know — that **Todd Dining management**— is **seeking** —to **unjustly fire me** —by **some unjust reason**— and/or **reasons,** —which **former adverse action**s —and **today's adverse action clearly indicates.**

342.     Plaintiff **upon speaking** —with **some other ECU Staff members after** —the **April 10, 2023, confrontational incident**—with **Yu Frank Yangy @** yangecu.edu —Plaintiff **found** —that **Yu Frank Yangy @** yangecu.edu— **had created** —for **himself** —a **bad reputation amongst his own ECU staff,** —as **ECU Staff member Tijani "TJ" Mohammed,** PhD, Chairman Department of Technology Systems, College of Engineering and Technology @mohammedt@edu.edu—www.ecu.edu/Techsystems **informed** Plaintiff —and **provided all his information** —to Plaintiff  to **use him** as— a **character witness against Yu Frank Yangy @** yangecu.edu.

343.     PhD, Chairman Department of Technology Systems, College of Engineering and Technology, **ECU Staff member Tijani "TJ" Mohammed**— also **stated** —to Plaintiff —that **his partner** —and **other ECU Staff member**— are **willing** —to **witness against Yu Frank Yangy**—and to **witness** Plaintiff's **excellent quality service** —to **them**—and **other students,** —and **customers.** — Plaintiff **provided** Co-Defendant Food Service Director Hillary Gallagher— **ECU Staff member Tijani "TJ" Mohammed's contact information.**

73

344.     Co-Defendant Food Service Director Hillary Gallagher **wasn't concerned about** —Plaintiff's **accuser Yu Frank Yangy's** @ yangecu.edu **credibility,** —but **only** Plaintiff's **demise** —and **destruction.**

345.     Co-Defendant Food Service Director Hillary Gallagher's — **Employment Actions/Disciplinary Notice against** Plaintiff —**issued April 12, 2023,** —the **"Brief Summary states:** — "The complaint has been investigated, and it has been determined that your service did not meet the standards set by both Aramark and ECU." In the **Hourly Customer Service Policy it states:** "I understand that if I receive a complaint from a customer for customer service I provided, **an investigation will take place** and could result in disciplinary action, up to and including termination."

346.     Co-Defendant Food Service Director Hillary Gallagher **never performed**—the **required investigation before issuing** Plaintiff —the **April 12, 2023, Employment Actions/Disciplinary Notice.** —Co-Defendant Food Service Director Hillary Gallagher **didn't even attempt** —to **perform** — a **fair, impartial,** —and **adequate investigation.**

347.     Co-Defendant Food Service Director Hillary Gallagher **tried continuously** —and **relentlessly** —to have Plaintiff **"say PLEASE"** — to **her**— and Plaintiff **vehemently refused,** —which **turned** Co-Defendant Food Service Director Hillary Gallaugher **red in her face** —and **profoundly irritated** —and **aggravated her**— to **no concern** —of Plaintiff —and Co-Defendant Food Service Director Hillary Gallagher **knew it** —which **irritated** —and **aggravated her** —to **even despise** —**hate** Plaintiff —the **more.**

348.     On Wednesday April 12, 2023, **while in** Co-Defendant Location Manager Shenitha Dupree's **office** —to receive Co-Defendant Food Service Director Hillary Gallagher 's **Employment Actions/Disciplinary Notice**—that **falsely accused** Plaintiff —of **not following all components** —of the **Hourly Customer Service Policy** —which **includes following**— the **Aramark standards** —of **WEST,** —the **Aramark customer service model** (Welcome-Engage-Smile-Thank) — Co-Defendant Food Service Director Hillary Gallagher **attempted forcing** Plaintiff —to **"say PLEASE"** —to **her.**

349.     On Wednesday April 12, 2023, Plaintiff **asked** Co-Defendant Food Service Director Hillary Gallagher — for the **clipboard** —that **was near her** —on Co-Defendant Location Manager Shenitha Dupree's **desk,** — and Co-Defendant Food Service Director Hillary Gallagher **arrogantly told** Plaintiff: — **"say**

PLEASE," —and Plaintiff **refused** —to **"say PLEASE"** — and Co-Defendant Food Service Director Hillary Gallagher **refused handing** Plaintiff —the **clip board. —Instead,** Co-Defendant Location Manager Shenitha Dupree **handed** Plaintiff —the **clipboard.**

350.     On Wednesday April 12, 2023, Plaintiff **via email** —to **myhr@aramark.com** stated: **ATTENTION: INVESTIGATOR DUSTIN— HRC2267580 and HRC2275724**—CONTINUED DISCRIMINATION, HARRASSMENT, AND RETALIATION—**My plea for immediate help! Attachment pertaining to Hillary Gallagher!**

351.     On Saturday April 15, 2023, Plaintiff **via email** —to **myhr@aramark.com** stated: **ATTENTION: INVESTIGATOR DUSTIN** states: — "The **attachment** —is **forwarded** —as **additional evidence** —of **management's carelessness** —and **recklessness in providing proper instructions,** —and **management's out**— of **control onslaught** —of **adverse actions against me.**

352.     On Monday April 17, 2023, Plaintiff **via email** —to **myhr@aramark.com** stated: **ATTENTION: INVESTIGATOR DUSTIN** states: — "The **attachment** —**MYAccuser** — is **forwarded** — for **your immediate review** — and **action.**

353.     On Wednesday April 19, 2023, Defendant Grill Cook Shaquan T (a **young black man**) —**informed** Plaintiff —that Co Defendant Food Service Director Hillary Gallagher **came** —to **him after he had served**— a **white student** —and stated: — **"if I had been** —the **student,** —**I would have thrown it back in your face."**

354.     On Friday, April 21, 2023, Plaintiff **noticed some unusual irregularities occurring**—as Co-Defendant Supervisor Darryl Hines **came** —to Plaintiff's **register** —and stated: — **"you need to move** to —the **back register."** —The **back register** is Defendant Senior Cashier **Debbie Daniels's register,** —a **register** from —which Plaintiff **had never worked since starting** at —the **Todd Dining Hall** —on **August 19, 2022.** —Therefore, **this move** was— a **major irregularity** —that **threw up** —a **"triple red flag,"** — and a **big question** —of **why?**

355.     On Friday, April 21, 2023, Plaintiff **asked** Co-Defendant Supervisor

Darryl Hines: **"why am I being moved** to— the **back register?"** Co-Defendant Supervisor **Darryl Hines** replied: — **"because I chose** —to **do so."** —Plaintiff **knew** —that Co-Defendant Supervisor **Darryl Hines** had **lied**—and that Co-Defendant Supervisor **Darryl Hines had been directed** —to **move** Plaintiff —to the **back register.** —The **move constituted** —a **vitally important step**— **management's cover-up scheme.**

356.  On Friday April 21, 2023, at **9:22 am** Plaintiff **asked** —Co-Defendant Director of Operations Thomas **Bedwardii this question:** — **"why was I moved** —to a **register** —that **I've never worked from before?"** —Co-Defendant Director of Operations Thomas **Bedwardii** replied: — **"I don't know,** —but a **register** is— a **register,"** —which **threw up**— a **triple red flag** —to Plaintiff; — because a **"register"** is —a **"register" just became** —a **true statement** —on **Sunday, April 9, 2023, after** —Defendant's Senior Cashier Debbie **Daniels's broken Ozzi Digital Token button** —was **repaired,** —after remaining —at **least 9 months unrepaired** —or **broken.**

357.  On Friday April 21, 2023, Plaintiff replied to Co-Defendant Director of Operations Thomas Bedwardii's **new phrase** — "a **register** is —a **register"** stating: — **"I don't want**— to **work from** —a **broken register."** —Co-Defendant Director of Operations Thomas **Bedwardii** replied: — **"what's broken about** —the **register?** —Which **threw up another triple red flag** —to Plaintiff **because** Co-Defendant Director of Operations Thomas **Bedwardii never mentioned** —to Plaintiff Defendant Senior Cashier Debbie **Daniels's broken register** had been **fixed**; —but **only saying** —that a **register** is —a **register."**

358.  On Friday April 21, 2023, Plaintiff **replied:** "—the **Ozzi Digital Token button** —has **"been broken since I started work here"** —on **August 19, 2022;** —however, **"I heard it was fixed"** —by ECU Business Coordinator **Mary Rhodes."** —Co-Defendant Director of Operations Thomas **Bedwardii** replied: — **"then it isn't broken,** — a **"register"** is— a **"register."** —Co-Defendant Director of Operations Thomas Bedwardii's **insistence** —of **continuous repeating** —to Plaintiff —**his new phrase** —that a **"register"** is —a **"register"** —which was **coined** —of **himself** is —a **deceptive phrase** —to **make** Defendant **Aramark believe** —that **this has always been** —to **put** —the —**at least 9 months broken Ozzi Digital Token button beneath** —the **earth** —as **never existing.**

359.  On Friday April 21, 2023, Co-Defendant Director of Operations Thomas **Bedwardii  continued replying stating:** — and **if it's broken,** —then **"we'll call Mary Rhodes"** —and **"get it fixed,"** —without ever conveying —to

Plaintiff— that Defendant Senior Cashier **Debbie Daniels's broken register had been fixed,** —which **threw up another triple red flag**.

360. On Friday April 21, 2023, Co-Defendant Director of Operations **Thomas Bedwardii began pushing** —Defendant **Todd Dining Hall's management's "conspiracy theory"** —that a **"register"** is —a **"register"** — to **debunk** Plaintiff's **claim** of— an **"at least 9 months prolonged broken register"** —and **instead promote** —the **deceptive** —and **misleading phrase** —that a **"register"** is —a **"register,"** —which **only became true** —on **July 9, 2023.**

361. On Friday April 21, 2023, Plaintiff **via email** —to **myhr@aramark.com stated: ATTENTION: INVESTIGATOR DUSTIN states:** — LARRY F. MURPHY, HR CASE #2267580, ADDITIONAL INFORMATION OF MANAGEMENT'S NEGLIGENCE/VIOLATIONS—To: **MYHR Human Resources Manager Dusin Marty, Assigned Investigator, Philadelphia, Pennsylvania**—Subject: **CASHIER'S POSITION DESCRIPTION (PD)**

362. Co-Defendant Food Service Director Hillary Gallagher **wasn't concerned about** —Plaintiff's **accuser Yu Frank Yangy's** @ yangecu.edu **credibility,** —but **only** Plaintiff's **demise** —and **destruction.**

363. Co-Defendant Food Service Director Hillary Gallagher's — **Employment Actions/Disciplinary Notice against** Plaintiff —**issued April 12, 2023,** —the **"Brief Summary states:** — "The complaint has been investigated, and it has been determined that your service did not meet the standards set by both Aramark and ECU." In the **Hourly Customer Service Policy it states:** "I understand that if I receive a complaint from a customer for customer service I provided, **an investigation will take place** and could result in disciplinary action, up to and including termination."

364. Co-Defendant Food Service Director Hillary Gallagher **never performed**—the **required investigation before issuing** Plaintiff —the **April 12, 2023, Employment Actions/Disciplinary Notice.** —Co-Defendant Food Service Director Hillary Gallagher **didn't even attempt** —to **perform** — a **fair, impartial,** —and **adequate investigation.**

365. On Friday, April 21, 2023, Plaintiff **noticed some unusual irregularities occurring**—as Co-Defendant Supervisor Darryl Hines **came** —to Plaintiff's **register** —and **stated:** — **"you need to move** to —the **back register."**

—The **back register** is Defendant Senior Cashier **Debbie Daniels's register,** —a **register** from —which Plaintiff **had never worked since starting** at —the **Todd Dining Hall** —on **August 19, 2022.** —Therefore, **this move** was— a **major irregularity** —that **threw up** —a **"triple red flag,"** — and a **big question** —of **why?**

366.    On Friday, April 21, 2023, Plaintiff **asked** Co-Defendant Supervisor Darryl Hines: **"why am I being moved** to— the **back register?"** Co-Defendant Supervisor **Darryl Hines replied:** — **"because I chose** —to **do so."** —Plaintiff **knew** —that Co-Defendant Supervisor **Darryl Hines had lied**—and that Co-Defendant Supervisor **Darryl Hines had been directed** —to **move** Plaintiff —to the **back register.** —The **move constituted** —a **vitally important step**— **management's cover-up scheme.**

367.    On Friday April 21, 2023, at **9:22 am** Plaintiff **asked** —Co-Defendant Director of Operations Thomas **Bedwardii this question:** — **"why was I moved** —to a **register** —that **I've never worked from before?"** —Co-Defendant Director of Operations Thomas **Bedwardii replied:** — **"I don't know,** —but a **register** is— a **register,"** —which **threw up**— a **triple red flag** —to Plaintiff; —because a **"register"** is —a **"register" just became** —a **true statement** —on **Sunday, April 9, 2023, after** —Defendant's Senior Cashier Debbie **Daniels's broken Ozzi Digital Token button** —was **repaired,** —after remaining —at least 9 months **unrepaired** —or **broken.**

368.    On Friday, April 21, 2023, Plaintiff replied to Co-Defendant Director of Operations Thomas Bedwardii's **new phrase** — "a **register** is —a **register"** stating: — **"I don't want**— to **work from** —a **broken register."** —Co-Defendant Director of Operations Thomas **Bedwardii replied:** — **"what's broken about** —the **register?** —Which **threw up another triple red flag** —to Plaintiff **because** Co-Defendant Director of Operations Thomas **Bedwardii never mentioned** —to Plaintiff Defendant Senior Cashier Debbie **Daniels's broken register had been fixed**; —but **only saying** —that a **register** is —a **register."**

369.    On Friday, April 21, 2023, Plaintiff **replied:** "—the **Ozzi Digital Token button** —has **"been broken since I started work here"** —on **August 19, 2022;** —however, **"I heard it was fixed"** —by ECU Business Coordinator **Mary Rhodes."** —Co-Defendant Director of Operations Thomas **Bedwardii replied:** — **"then it isn't broken,** — a **"register"** is— a **"register."** —Co-Defendant Director of Operations Thomas Bedwardii's **insistence** —of **continuous repeating** —to Plaintiff —**his new phrase** —that a **"register"** is —a **"register"** —which was

coined —of **himself** is —a **deceptive phrase** —to **make** Defendant **Aramark believe** —that **this has always been** —to **put** —the —**at least 9 months broken Ozzi Digital Token button beneath** —the **earth** —as **never existing.**

370.     On Friday April 21, 2023, Co-Defendant Director of Operations Thomas **Bedwardii  continued replying stating:** — and **if it's broken,** —then **"we'll call Mary Rhodes"** —and **"get it fixed,"** —**without ever conveying** —to Plaintiff— that Defendant Senior Cashier **Debbie Daniels's broken register had been fixed,** —which **threw up another triple red flag.**

371.     On Friday April 21, 2023, Co-Defendant Director of Operations **Thomas Bedwardii began pushing** —Defendant **Todd Dining Hall's management's "conspiracy theory"** —that a **"register"** is —a **"register"** — to **debunk** Plaintiff's **claim** of— an **"at least 9 months prolonged broken register"** —and **instead promote** —the **deceptive** —and **misleading phrase** —that a **"register"** is —a **"register,"** —which **only became true** —on **July 9, 2023.**

372.     On Monday April 24, 2023, Plaintiff **because** —of **having ongoing problems** —with Defendant **management ensuring** Plaintiff **could go** to —the **bathroom as needed;** —Plaintiff went —to Co-Defendant Location Manager Shenitha **Dupree's office** —and stated: — **"I don't appreciate management taking my need** —of **going** to —the **bathroom** as —a **plaything."** — Co-Defendant Location Manager Shenitha **Dupree** replied: — **"Mr. Larry, no one** —is **playing about you going** to— the **bathroom."** — Plaintiff **did not respond,** — but **only walked away knowing** —that Co-Defendant Location Manager Shenitha **Dupree had not taken** —Plaintiff's **need** —of **going** to —the **bathroom seriously,** — because of Plaintiff's **continued difficulty** —of **getting relief** —as **needed** —for **going** to— the **bathroom.**

373.     Such **inconsideration,** —by Co-Defendant Location Manager Shenitha **Dupree** —and Co-Defendant Food Service Director Hillary **Gallagher,** especially and particularly **toward** —an **elderly person**—and **disable veteran** — of the **United States Armed Forces** —is **profoundly disrespectful** —to Plaintiff and —the **United States government's laws** —that **provide protection** —for **veterans** —with **disabilities under Title 1**—of the **Americans with Disabilities Act** (ADA) —and the **Employment** —and **Reemployment Rights Act** (USERRA); **"just blatantly disrespectful!"**

374.     The **Ozzi-To-Go-Box processing** was —the **control mechanism**—of

the **Ozzi-To-Go-Box- Program's 3 Limited To-Go-Box Meals per week,** — which **could only be ran through** —a **register** with —a **functioning Ozzi Digital Token button** —that **was not available** —at Defendant Senior Cashier Debbie **Daniels's register,** —and **had been unavailable** — for at **least 9 months until April 9, 2023.** —This was **management's inescapable profound dilemma** —that Plaintiff **had surfaced** —to **attention** that —was **profoundly opposed** —and **hated.**

375.　　Defendant Cashier **Amber Morse** is —a **good, decent,** —and **moral person** —who **started work** at —the **Todd Dining Hall** —in September 2022; — who also **like** Plaintiff —was **not provided any training prior** —to **beginning her Cashier job.** —Defendants Cashier Amber Morse— who also **like** Plaintiff — was **not provided any register instructions**— **including,** but **not limited** —to the **"Ozzi-To-Go-Box instructions"** with —a **revised date** —of **August 31, 2022.**

376.　　Defendant Cashier **Amber Morse** was—the **only** Defendant **employee hired** as—a **Cashier besides** Plaintiff —and Defendant Senior **Cashier Debbie Daniels** —who were **placed** at—the **Todd Dining Hall registers.** —Yet, **after being hired**—by Co-Defendant Location Manager Shenitha **under verbal accommodations** —there were **agreed upon between**—the **two (2)** —that **included sitting** at —the **register** as—Plaintiff was **sitting** —and **drinking water**—because of an **existing health condition**—was **honored** —by Co-Defendant Location Manager **Shenitha Dupree until** —the **arrival** —of Co-Defendant Food Service Director **Hillary Gallager** —on or **about January 19, 2023,** —who **challenged** —the **verbal agreement** in—a **malicious manner.**

377.　　Defendant Cashier Amber Morse —was **excited about her Cashier Job**— a **possessed** —a **willingness** —to **listen** —and to **learn** —which **provided** Plaintiff a **person** —that Plaintiff **could properly train** —and **develop up** —to Plaintiff's **knowledge** —and **understanding** —of the **Micro Oracle Register System,** —which Plaintiff —was **honored in doing**—with such —an **excellent Cash student** —of **learning.**

378.　　Plaintiff **taught** Defendant **Cashier Amber Morse** —the **Ozzi-To-Go-Box processing**— from Plaintiff's **register** —and **then showed** Defendant **Cashier Amber Morse** —the **reason** —Defendant **Cashier Amber Morse**— was **unable** —to **properly implement** —the **Ozzi-To-Go-Box processing** —from Defendant Senior **Cashier Debbie Daniels's register,** which— was the **register from which** —Defendant **Cashier Amber Morse worked.**

80

379.     Plaintiff **taught** Defendant **Cashier Amber Morse** —because of Senior Cashier Debbie Daniels's <u>broken Ozzi Digital Token button</u> —to **process Ozzi-To-Go-Box-Meal** — by bypassing —the <u>broken Ozzi Digital Token button</u> —and **going directly to**— the **regular To-Go-Box-Meal processing** of: — (1) **choosing** —the **appropriate To-Go-Meal** (Breakfast, Lunch, Afternoon NP, or Dinner), — (2) then **tabbing** —the **Yellow Meals tab,** —and (3) the **swiping** the **One Card,** —to **complete** —the **transaction,** —which **is** —the **process** Defendant Senior Cashier Debbie Daniels —has **implemented** —for **at least 9 months** —at **her register before** ECU Business Coordinator Mary Rhodes **repaired it on April 9, 2023.**

380.     Co-Defendant Former Food Service Director **Tara Perez,** —and Co-Defendant Location Manager **Shenitha Dupree**— and Co-Defendant Food Service Director **Hillary Gallagher,** — and Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant Residential District Director **Kelvin Tarukwasha** —**all abused** Defendant Cashier Amber Morse's **register login**—by allowing others to work —from Defendant Senior Cashier Debbie Daniels's **register under**—Defendant Cashier **Amber Morse's name** and —**Employee ID login.**

381.     Defendant employees **forced** —to **worked under** Defendant Cashier **Amber Morse's name** —and **Employee ID had no knowledge** —and **understanding**— of **Micro Register processing** —and Defendant Cashier Amber Morse— was **always forced,** —to **stand** at —the **register while off** —the **clock** —and <u>eating her meal</u> at —the <u>register,</u> —to <u>show Defendant employees how</u>— to <u>**use**</u> —the <u>**register;**</u> —and to <u>**answer questions like:**</u> — (1) **"we're in dinner, right?** — (2) **How do I process** —the **To-Go-Box meal?** (3) **How do I charge**— the **student** for —the **To-Go-Box?** — (4) **How Do I input** —a **Banner ID?** —The **entire Todd Management staff knew this was happening,** —and **allowed it** —to **perpetuate itself.**

382.     Defendant **management staff** —was <u>often too busy</u> —to <u>show employees</u>— that Defendant <u>management staff sent</u> —to <u>relieve</u> Defendant Cashier **Amber Morse** —and Defendant Cashier **Amber Morse** —was **forced** — to **attempt training unqualified employees** —while **off the clock** —by **standing** at— the **register with** —a **plate** —of **food while eating** —which was <u>**supposed**</u> to —<u>**be**</u> —an <u>**"uninterrupted lunch break;"**</u> —and <u>**management abused its power**</u> —and <u>**authority**</u> —and <u>**allowed it**</u> —to <u>**perpetuate itself.**</u>

383.     Co-Defendant Location Manager Shenitha Dupree's —and Co-

Defendant Food Director Hillary Gallagher's **"Verbal Revocation of Banner ID Usage"** — "**appears being** —a **"personal desire,"** — **"rather than"** — an **"official revocation."**

384. Defendant Cashier **Amber Morse after** —Co-Defendant Location Manager **Shenitha Dupree's** —and Co-Defendant Food Service Director **Hillary Gallagher's** — **"verbal revocation"** — of **"Banner ID usage,"** —that Defendant Cashier **Amber Morse several times** —with Defendant **employees operating under**— Defendant Cashier **Amber Morse's name** —and **Employee ID caught** —Defendant **management showing** —Defendant **employees how** —to **take** — and **process Banner IDs.** —which was **against** —the **verbal revocation.**

385. Defendant Cashier **Amber Morse confronted** —Defendant **management** —and **asked:** — **"please don't put in** —a **Banner ID under my name."** —Defendant **management replied:** — **"oh, we aren't taking Banner ID anymore?"** —Defendant Cashier **Amber Morse replied:** — **"no, Hillary told me not** —to **take Banner IDs."** —Defendant **management replied:** — **"it's fine"** — and **proceeded**— to **input** —the **Banner ID under** Defendant Cashier **Amber Morse's name** —and **Employee ID.**

386. Co-Defendant Location Manager Shenitha **Dupree's** —and Co-Defendant Food Director Hillary **Gallagher's— "verbal revocation"** — of **"Banner ID usage,** — **"strongly appears applying"** —to Defendant Cashier Amber Morse — and Plaintiff —and **not** —to **others** —as **seen above**— which **makes** —the **"verbal revocation"** — of **"Banner ID usage**— as both **confusing** —and **hypocritical.**

387. Defendant Cashier **Amber Morse** —on **one (1) occasion experienced** —a **student coming**— to Defendant Cashier **Amber Morse's register** —and **stating:** — **"I lost my One Card,** — is **there any way**— that **I will be able** —to **eat?** — **"I have my Banner ID."** Defendant Cashier **Amber Morse gave** —the **student her sincere apologies**— and **stated:** — **"No, I'm sorry,** —**unfortunately I'm unable** t—o **take banner IDs.** —**I can let you pay** —with **cash** —or with **credit card however."** —The **student then nodded in understanding** —and **stated:** — **"Oh okay, well thank you;** —**I'm going** —to **go somewhere else then."**

388. Co-Defendant Food Service Director **Hillary Gallagher** at —that **time was talking** —with Co-Defendant Residential District Director Kelvin

Tarukwasha at —the **Todd Dining Hall door's entrance** —in **front** —of the **registers** —and **overheard** —Defendant Cashier **Amber Morse's conversation** with —the **student**, and— as the **student was leaving** —the **Todd Dining Hall**, —Co-Defendant Food Service Director **Hillary Gallagher called** —the **student back** —to he **register** —and **took** —the **opportunity** —to **exalt herself stating:** — **"oh, don't worry, —I will help you; —what's your Banner ID?**

389. Defendant Cashier **Amber Morse being shocked** —and **confused** — at Co-Defendant Food Service Director Hillary **Gallagher's invitation**— to **taking** —the **student's Banner ID** —the **looked** —at Co-Defendant Food Service Director Hillary **Gallagher** —and **stated:** — **"I thought we weren't supposed** — to **take Banner IDs."** —Co-Defendant Food Service Director Hillary **Gallagher replied:** — **"We aren't** —but **we want** —to **make sure** —that **we take care** of — the **students."**

390. Co-Defendant Food Service Director Hillary **Gallagher proceeded taking** —the **student's Banner ID under** —Defendant Cashier **Amber Morse's name** —and **Employee ID.** —Then, **white bigot** —and **narcissist** Co-Defendant Food Service Director Hillary **Gallagher smiled** at —the **student,** —and **apologized** —to the **student** —for Defendant Cashier **Amber Morse trying** —to **send her away without processing her Banner ID.** —Afterward, the **two (2),** — Co-Defendants Food Service Director **Hillary Gallagher** —and Co-Defendant Residential District Director **Kelvin Tarukwasha just walked away** as —if Co-Defendant Food Service Director **Hillary Gallagher had provided** —a **noteworthy service**—by **violating her own** **"verbal revocation"** — of **"Banner ID usage.**

391. Co-Defendant Food Service Director **Hillary Gallagher's "verbal revocation** —of **Banner ID usage"** was— an **invalid** —and **unofficial revocation** —of the **written permission** —or **authorization** per **"Note to Celia"** —in **January 2023** according— to the **"First Two (2) Weeks of Instructions"** — that **allowed students**— to **eat throughout** —the **semester** —by **providing Banner IDs.**

392. Co-Defendant Food Service Director Hillary **Gallagher's "verbal revocation** —of **Banner ID usage" only applied** —to those **whom** Co-Defendant Food Service Director Hillary **Gallagher chose applying it to,** —while **giving authorization** —of **usage**— to **those whom** Co-Defendant Food Service Director Hillary **Gallagher selectively chose** —to **do so,** —which **excluded** Defendant

Cashier **Amber Morse** —and Plaintiff; —which **wasn't just discriminatory,** —but also an **unauthorized** —and **unofficial action.**

393.    On Thursday April 27, 2023, Co-Defendant Food Service Director **Hillary Gallagher,** —and Co-Defendant Location Manager **Shenitha Dupree,** with —the approvals—of Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant Residential District Director **Kelvin Tarukwasha** poured out upon Plaintiff —the **most frustrating, irritating, unwelcoming, stressful dosage** —of **discrimination, harassment,** —and **retaliation** —of Plaintiff's **work career,** —to make sure —that Plaintiff **felt their wrath.**

394.    On Thursday April 27, 2023, **sixty-seven (67) days** —or **2 months** —and **1 week after** Plaintiff's  **work schedule had been cut another ½ hour per day,** — that **now equated** —to **40 hours monthly** —on **Monday February 20, 2023,** —and after Plaintiff's **return** —from **taking bereavement leave** —beginning **Thursday February 16, 2023,** —and ending **Friday February 17, 2023,** —Co-Defendant Location Manager **Shenitha Dupree** —and Co-Defendant Food Service Director **Hillary Gallaugher** —**premeditatively, willfully, intentionally, purposefully** —and **deliberately failed** —to **ensure** Plaintiff —**had timely, proper,** —and **necessary relief** —at Plaintiff's **3:00 PM shift's end.**

395.    On Thursday April 27, 2023, **there's absolutely no excuse** —for Todd Dining Hall management —to **not have** Plaintiff **able** —to **exit his 3:00 PM shift's end** —in a **timely** —**and proper manner except** —for **managerial malicious intent.** —Plaintiff **should be relieved** —from **his register** —in a **timely manner before** —the **3:00 PM shift end** —to **perform** Plaintiff's **Cashier's Verification Deposit Slip** —and **clock-out** —and **go home** —at Plaintiff's **3:000 PM shift end.**

396.    On **Thursday April 27, 2023**, —and **every day prior**— to **Thursday April 27, 2023,** and **after Monday February 20, 2023,** —Co-Defendant Location Manager **Shenitha Dupree** —and Co-Defendant Food Service Director **Hillary Gallaugher**— **have made**— a **scorn** —or **mockery** —of Plaintiff's **3:00 PM work ending schedule** —with **malicious intent.**

397.    Co-Defendant Location Manager **Shenitha Dupree's** —and Co-Defendant Food Service Director **Hillary Gallaugher's conducts** —of **malicious intent** —to Plaintiff **deserves** —the **strongest** —of **condemnation.** —Every Defendant **supervisor coming** —to Plaintiff's **register** —to **close** —Plaintiff's

84

cash register drawer came with —the **same scornful** and **disrespectful excuse:** — **"Mr. Larry, I don't have anyone scheduled** —to **relieve you."**

398.     On **Thursday April 27, 2023**, —and **every day prior**— to **Thursday April 27, 2023,** and **after Monday February 20, 2023,** —Co-Defendant Location Manager **Shenitha Dupree** —and Co-Defendant Food Service Director **Hillary** Gallaugher—**both knew** —that Plaintiff's **wife brought** Plaintiff —to **work on time** —and **picked** Plaintiff **up from work** —at Plaintiff's **work ending shift on time;** —and **both disrespected** Plaintiff —and Plaintiff's **wife unremorsefully.**

399.     On **Thursday April 27, 2023**, —and **every day prior**— to **Thursday April 27, 2023,** and **after Monday February 20, 2023,** —and Co-Defendant Food Service Director **Hillary Gallaugher**—**would** periodically flaunt herself **before Plaintiff** with— a **smirky smile before exiting** —the Todd Dining Hall's **lobby doors** —to **go home, knowing** Plaintiff —was **being forced**— to **work beyond** Plaintiff's **scheduled 3:00 PM ending shift's time.**

400.     On **Thursday April 27, 2023,** was —the **most disgraceful** —and **disrespectful scorn** —of Plaintiff's **3:00 PM ending work shift** —by Co-Defendant Location Manager **Shenitha Dupree** —and Defendant Food Service Director **Hillary Gallaugher.** —Defendant Supervisor **Clarence Phillips came**— to Plaintiff's **register** —and **stated:** — **"Mr. Larry I don't have anyone to relieve you."** —Plaintiff **responded:** — **"here we go again, my wife** —is **waiting for me** —as **she normally does."**

401.     On **Thursday April 27, 2023,** —Defendant Supervisor **Clarence Phillips** responded: —Mr. Larry I'm sorry, but— an **employee** —is **not scheduled** —to **come in until 4:00 PM.** —Plaintiff responded: — **"this is disrespectful** —and **totally uncalled for,** —and **there's no reason** —for **this** —to **be repeating itself over** —and **over** —and **again** —and **again."** —Defendant Supervisor **Clarence Phillips** responded: — **"if you would just sign** —**your Cashier's Verification Deposit Slip,** —**I'll do** —the **counting for you,** —and **you can just go."** — Plaintiff **responded:** — **"that's inappropriate** —and **against policy,** —and **I vehemently refused doing** —that **when asked before."**

402.     On **Thursday April 27, 2023,** — Defendant Supervisor **Clarence Phillips** responded: — **"then what are we going to do?"** —-Plaintiff **responded:** — **"I'll just wait until** —the **scheduled person comes in** —at **4:00 PM,** —so that **I can perform my Cashier's Verification Deposit Slip** —as **required."**

85

403.     Defendant Supervisor **Clerance Phillips left**—Plaintiff's **register supposingly awaiting**— the **scheduled 4:00 PM employee arrival**. —At **4:00 PM** Defendant Supervisor <u>**Clerance Phillips returned**</u> —to Plaintiff's **register** — and **stated**: — <u>**"Mr. Larry,**</u> —the <u>**4:00 PM scheduled employee called out."**</u>

404.     On **Thursday April 27, 2023,** —Plaintiff **responded**: — <u>**"I'm not leaving my register**</u>— <u>**not signing my Cashier's Verification Deposit Slip**</u> — <u>**until my cash verification count has been performed**</u> —and <u>**completed as required."**</u> —Defendant Supervisor **Clerance Phillip** responded: — <u>**"Mr. Larry, you're going**</u> —to **have** —to **go."**</u> —Plaintiff **responded**: — <u>**"I'm not going anywhere**</u> —<u>**until I've completed my cash count**</u> —as **required."**</u>

405.     On **Thursday April 27, 2023,** —at <u>**approximately 4:15 PM**</u> (or **1 hour** —and **15 minutes into** —the **wait**) —Plaintiff **suggested** —to Defendant Supervisor **Clerance Phillip** stating: — <u>**"go**</u> —and <u>**get my Cashier's Verification Deposit Slip from**</u> —the **Safe** —and <u>**I will perform my cash verification from**</u> —the **register."**</u> —Defendant Supervisor **Clerance Phillip departed** —to **retrieve** —Plaintiff's **Cashier's Verification Deposit Slip from**— the **Office Safe.**

406.     On **Thursday April 27, 2023,** while <u>**waiting**</u> —for Defendant Supervisor **Clarence Phillips's** <u>**return from**</u> —for the **Safe's Office** with — Plaintiff's **Cashier's Verification Deposit Slip,** —a <u>**rather strange**</u>— and <u>**unexpected occurrence happened.**</u> —At **approximately 4:20 PM** —Defendant Retail Food Service Director <u>**Marylyn Ross came**</u> —to Plaintiff's **register** —to **purchase** —a green **To-Go-Box** —and **stated**: — <u>**"paying by cash."**</u> —Plaintiff **entered** —the <u>**$6.41**</u> for —the <u>**cash payment.**</u> —Defendant's Retail Food Service Director **Marylyn Ross pulled out** —a <u>**$50 bill**</u> —and **asked** Plaintiff: — <u>**"Can you handle that?"**</u> —Plaintiff **replied** — <u>**"no, because my cash drawer**</u> —is only <u>**$50.00."**</u>

407.     On **Thursday April 27, 2023,** —Defendant Retail Food Service Director **Marylyn Ross** stated: — <u>**"I'll go**</u> —and <u>**tell Dupree about**</u> —the <u>**overage."**</u> —Plaintiff **responded**: — <u>**"no, go**</u> —and <u>**get change**</u> —and <u>**bring it back to me."**</u> —Defendant Retail Food Service Director Marylyn Ross **left** — Plaintiff's **register** —and **returned** —to <u>**hand Plaintiff $7.00**</u> —and **stated**: — <u>**"you can just report**</u> —the **change** as— an **overage."**</u> —Plaintiff **replied**: — <u>**"no, go**</u> —and <u>**get change**</u> for —the <u>**$1.00 bill**</u> so —that <u>**I can give you $.59 cents back**</u> —and <u>**"not have an overage."**</u>

408.     On **Thursday April 27, 2023,** Defendant Retail Food Service Director **Marylyn Ross** left —Plaintiff's **register** —and **came back** —to Plaintiff's **register with** Defendant Supervisor **Clarence Phillips,** —who presented Plaintiff **with two (2) rolls** —of **pennies @ $.50 cents** each equating —to **$1.00.** —Plaintiff then completed —the **$6.41 cash transaction** —and gave Defendant Retail Food Service Director Marylyn Ross $.59 cents in change, —that she was due, —and Defendant Retail Food Service Director **Marylyn Ross** exited —the Todd Dining Hall without using —the just purchased green To-Go-Box.

409.     Co-Defendant Location Manager **Shenitha Dupree previously worked**— as Defendant Retail Food Service Director **Marylyn Ross's Starbucks Location Manager.** —Plaintiff **explored** —the **possibility** —the **strange** —and **unexpected occurrence** —of Defendant Retail Food Service Director **Marylyn Ross**—and **her $50 Bill requested cash transaction** as— a possible planned shenanigans on —the **part** —of Co-Defendant Location Manager **Shenitha Dupree.**

410.     On Saturday April 29, 2023, Plaintiff **via email** —to myhr@aramark.com **stated: ATTENTION: INVESTIGATOR DUSTIN states:** — LARRY F. MURPHY, HR CASE #2267580, ADDITIONAL INFORMATION OF MANAGEMENT'S NEGLIGENCE/VIOLATIONS—The **attachment management** —is **forwarded** —for **your review** —and **action.**

411.     On Saturday April 29, 2023, Plaintiff **via email** —to myhr@aramark.com: Reference: POTENTIAL WITNESSES **stated: ATTENTION: INVESTIGATOR DUSTIN states:** —I **reviewed your email.** — My **response** —is **included in**— my **additional information sent**— to **MYHR on 4/29/2023.** — I will take —the **opportunity**— to **quote a Scripture**— and **ask a question here.** —**Pilate said** to Him, — "What is truth?" —And when he had said this, — he went out again —to the Jews, —and said— to them, — "I find no fault in Him at all." (John 18:36) The "truth can be hard to handle;" —the question is —"can you handle the truth?" The "findings of fact," —the "truth is all I'm seeking." —Please share this with— the **other HR Managers reviewing my Complaint.**

412.     On Friday May 5, 2023, Plaintiff **via email** ****************** —to dustin- marty@aramark.com —Reference: **Potential Witnesses states:** —This **updated e-mail relates** —to **my Complaint** on —the **Violation** —of **Required 30-Minute Lunch Breaks** —and **15-Minute Breaks.**

413. **I immediately noticed** —that **you did not mention** —the **witness Amber Moore** —**nor** the **witness Kalvieon Edwards,** —and **before I left work today,** —neither **Amber nor Kalvieon stated**— that **you had contacted them** — and **gotten their statements.** —Therefore, **have you therefore concluded** —that **there were no manual changes** —that **were made**— to **people timecards except** —for **them putting in** —a **time edit request** —and **once approved being added** —to **Kronos.**

414. Also, **concerning** —the **Ozzi Digital Token button,** — "**Management told you an outright lie;**" —**Debbie has always used**— a **different register,** —the **back register,** —which **was broken** —for **over nine (9) months or more,** —and **Amber Moore** —and **all other cashiers working** —that **broken register can** —and **will attest** —to **that.** —However, **you're chosen** —to **accept** —the **lie** —and **not perform** —the **required investigation**— to **gather** — the **truth.** —That's a **might poor decision.**

415. Additionally, "**every evening supervisor will attest** to —the **very same thing.**" — **I am profoundly appalled** —and **frustrated** —that "**you made your conclusions**" — on **management's word alone** —without **performing investigations** —before **drawing your conclusions.**"

416. **I would appreciate you doing your job** —by **performing proper** — and **adequate investigations** —of **my issues** —that **I consider very serious,** — rather than **rambling off conclusions**— that **have no merit once proper** —and **adequate investigations once performed will null**— and **void all their lies.**

417. When **speaking with Amber** —and **Klveon, I've asked them** —to **request written** —and **signed statements** of —the **accuracy** —and **validity**— of their **full statements,** —so that **nothing within their statements** —is **altered** — and/or **misinterpreted/misunderstood** —by **either** of— the **parties.** —**I'm also requesting**— that **you ensure that**— the **request** —for **written** —and **signed statements** —are **implemented** —as **requested.**

418. On Wednesday May 10, 2023, Plaintiff **met** —with Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant HR Manager **Ashley Hall** in —the **Todd Dining Hall's Sweetheart Conference Room** in —an **already conference meeting via telephone** —with Co-Defendant Headquarters HR Manager **Dustin Marty,** —which the **conference meeting became**— a **three (3) party conference call meeting via telephone.**

419. Wednesday May 10, 2023, CO-Defendant Headquarters HR Manager **Dustin Marty,** —the **self-assigned investigator**— of Plaintiff's **101-page age discrimination, discrimination, harassment,** and **retaliation Complaint submitted on April 8, 2023,** —with **several subsequent submissions** — **informed** Plaintiff —the **investigation had been completed** — and **there were no findings** —of Plaintiff's **allegations.**

420. Plaintiff **stated:** — **"that's impossible,** —**no one I submitted as witnesses**— and/or **victims have been contacted concerning** —the **allegations."** —Co-Defendant Headquarters HR Manager **Dustin Marty** again **replied:** — **"it's been completed** —and **there were no findings** —of **your allegations."**

421. On Wednesday May 10, 2023, Co-Defendant's Local HR Manager **Ashley Hall immediately** —and **aggressively stated:** — **"you will not be needed** at —the **Todd Ding Hall** —the **coming 2023, Fall Semester,** —because **only one (1) Cashier will be required** —because of **COVID." —Is there any other job you seek doing?** —Plaintiff **replied:** — **"yes, an Office Worker's position."** — Co-Defendant's Local HR Manager **Ashley Hall** replied: — **"no, you cannot do that one."**

422. Co-Defendant's Local HR Manager **Ashley Hall** —**never did say** — **why** Plaintiff **could not do that one** (Office Worker), —because the **Office Worker position** —was— a **job** Plaintiff **excelled** in —and was **second (2nd)** —to **none.** —Plaintiff was **involuntarily move out** —of the **Office Workers position** —**without good cause,** —but **rather malicious intent** —because of Plaintiff's **age**, **courage** — and **outspokenness.**

423. On Wednesday May 10, 2023, Plaintiff in the **three (3) party conference call meeting via telephone**—was **informed** —by Co-Defendant HR Manager Ashley —to **apply** —for **accommodations** —that **we would go from there.** —Plaintiff **has never had** —to **apply** —for **accommodations** in —Plaintiff **10 years**—of **employment** —with Defendant **Aramark.**

424. The Defendant **Aramark Employee Handbook:** Date Published-July 2022, **Employee Conduct, page 30 states:** —All **complaints** —and **investigations made through** a **manager, myHR,** —or the **Employee Hot Line** —by **calling (877) 224-0411** —will be handled in— a **confidential manner** —to the **fullest extent possible consistent** —with **applicable law.** —However, **employees must recognize** —that **certain disclosures may be necessary** —to

conduct —a **complete** —and **through investigation,** —and to **achieve** —an **appropriate solution.**

425.    Defendant **Aramark investors** —Co-Defendant HR Manager **Ashley Hall,** —Co-Defendant MYHR Manager **Dustin Marty,** —Co-Defendant MYHR Manager **Cody Short,** —and Co-Defendant MYHR Marketing Manager **Kristen Anderson,** —Co-Defendant MYHR Policy & Compliance Senior Manager **Lauren Arnold,** —and **any others assigned in whole** —or **in part have miserably failed** —to **conduct** —a **complete** —and **through investigations,** —of Plaintiff's **Complaint issues** —to **achieve** —an **appropriate solution.**

426.    Plaintiff **submits** —that Co-Defendant MYHR Manager **Dustin Marty** —and Co-Defendant HR Manger **Ashley Hall**— **conspired together** —to not **conduct** —a **complete** —and **through investigations,** —of Plaintiff's **Complaint issues** —to **achieve** —an **appropriate solution.** —Plaintiff **further submits** —that **their actions were implemented**— with **malicious intent.**

427.    Plaintiff **submits** —that the Wednesday May 10, 2023, **three (3) party conference call meeting via telephone meeting** — with Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant HR Manager **Ashley Hall**—and Co-Defendant MYHR Manager **Dustin Marty** was —a **"meeting"** —of **"retaliation against"** Plaintiff, —who **filed his 101-page Complaint** —on **April 9, 2023,** —and **strongly condemned** Co-Defendant MYHR Manager **Dustin Marty** —on **May 5, 2023,** —for **not doing his job.**

428.    The Defendant **Aramark Employee Handbook:** Date Published-July 2022, **Employee Conduct, page 30 states:** — "There **will be no retaliation against employees**—who **make good faith complaints** —to the **Employee Hotline** —and/or **participate** —in **good faith** in—an **investigation** — of such **complaints.**

429.    As the **direct result** —of Co-Defendant MYHR Manager **Dustin Marty's** — and Co-Defendant HR Manager **Ashley Hall's** — **"inappropriate conducts"** —Co- Defendant Location Manager **Shenitha Dupree,** —and Co-Defendant Food Service Director **Hillary Gallagher,** —and Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant Residential District Director **Kelvin Tarukwasha**—were **allowed** —to **continue their mistreatments** —of Plaintiff **without any fear** —of **repercussions.**

430.    As the **direct result** —of Co-Defendant MYHR Manager **Dustin**

90

**Marty's** — and Co-Defendant HR Manager **Ashley Hall's** — "**inappropriate conducts**" —Co- Defendant Location Manager **Shenitha Dupree,** —and Co-Defendant Food Service Director **Hillary Gallagher,** —and Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant Residential District Director **Kelvin Tarukwasha**—were **allowed**—**threaten, intimidate,** —or **coerce employees from being cooperative** —in **anything mentioned** —about **investigations** —for **fear**—of **losing their jobs.**

431.     As the **direct result** —of Co-Defendant MYHR Manager **Dustin Marty's** — and Co-Defendant HR Manager **Ashley Hall's** — "**inappropriate conducts**" —Co- Defendant Location Manager **Shenitha Dupree,** —and Co-Defendant Food Service Director **Hillary Gallagher,** —and Co-Defendant Director of Operations **Thomas Bedwardii,** —and Co-Defendant Residential District Director **Kelvin Tarukwasha**—were **allowed**— to **created** —and to **perpetuate** —a **toxic workplace** —that's **unfavorable**—and **unwelcoming**— and **very poor employees retention.**

432.     **Sedgwick Leave Center** —is a **third (3ʳᵈ) party Hotline administrator,** —and **not controlled** —or **managed** —by Aramark, —and therefore **has its own policies** —and **guidelines** —for **conducting its services**—to **Aramark** employees to whom **it's** —the **service provider.** —As such, **Aramark should control** —and/or **influence**—the **information requested** — of an **employee** (Plaintiff) —to whom **its Company** —is **providing services.** 1

433.     Tuesday October 17, 2023, Plaintiff **via email** —to Co-Defendant MYHR Policy & Compliance Senior Manager **Lauren Arnold**—at **arnold-lauren@aramark.com** —in **response** —to Co-Defendant MYHR Policy & Compliance Senior Manager **Lauren Arnold's voice mail** —of Monday October 16, 2023, **stating** the following:

434.     According to the **subject matter your name** —is **Lauren Arnold** — and **you were calling from** —the **Aramark MYHR team,** —and **you oversee accommodations** for —the **United States** —and **work** —with **MYHR Manager Cody** —who **I've been corresponding with;** —and **you understand** —that **I have some additional questions** —and **some request you understand**— that **I've been contacting Sedgwick about.**

435.     I understand— that you're hoping— that **you can answer my questions** —and that **we can resolve**— the **accommodations portion** —of **my**

**questions.** —I understand that you have some availability on Tuesday October 17, 2023, —and **we can designate**— a **time** —to **convene** —and **discuss**— the **issue**— of **accommodations.** —At the end of the subject matter, you stated that the best number to reach you is at (267) 519-1391, and that again your name —is Marin Arnold from —the **Aramark MYHR accommodations team.** —What is your correct name, —is it Lauren or Marin, I don't understand?

436.      As the **Aramark Accommodations' specialist** —for the **United States,** — **before convening**— a **meeting with you,** —**I need you** —to **email me a copy** —of an **Aramark Accommodations Application** —and the **existing Aramark policy governing** —**Request**— for **Leave of Absence (LOA),** so —that **we can discuss** and **resolve this matter adequately** —and **appropriately.** [End of email]

437.      On Tuesday October 17, 2023, Plaintiff **via email** —to **Sedgwick** at aramark601ops@sedgwickcms.com **stating** the following:

438.      I was **informed** —by **HR Manger Cody Short**— that **he submitted** —the **LOA** —to **Sedgwick** —on **July 27, 2023.** —On **October 8, 2023, I called Sedgwick** —and **spoke** —with a **Claims Specialist** —and **requested** —that **I be forward via email ongoing actions being taken**— to **get me back** —to **work**— and **she agreed** —to both **email** —and **provide my request** —by **mail.**

439.      On Thursday October 12, 2023, — **I spoke directly**— to **ADA Claims Specialist Francis** —who **informed me** that **she would be resending** — the **email** —to the **correct email address** murphy333lf@yahoo.com — **immediately** —and that **I would be receiving it within two (2) hours,** —which **would have been before** —**12:00 PM** Thursday **October 12, 2023.**

440.      I **called back** —on Thursday **October 12, 2023,** —and Friday **October 13, 2023,** —**requesting** —the **email be resent** —to the **correct email address**— at murphy333lf@yahoo.com —and was **informed** —that **my request would be passed on** —to the **ignitor** —of the —**email,** — **ADA Claims Specialist Mary Joe Enfield.** —**I did not receive** —the **email**— on **neither** Thursday **October 12, 2023,** —nor Friday **October 13, 2023.**

441.      On **October 16, 2023, I called Sedgwick** —and **spoke** —with **ADA Claims Specialist Francis** —and **informed her** —that **I was very frustrated about her dishonesty** —of **not doing** as —**she had promised.** — **Francis** then— **responded informing me** —that **her system went down on**— Thursday **October**

**12, 2023,** —and that— on Friday **October 13, 2023,** —that she was off work. —I informed her —that she could have called —and informed me so —that I would not be expecting —an email— that wasn't coming.

442.     **Francis informed me** —that **she was sending** —the **email** —to murphy333lf@yahoo.com —at **approximately 7:48 am** —that **I would be receiving** —the **email with two (2),** —which **would have been about 9:48 am.** — **I never received** —the **email** —and **Francis made herself unavailable**— and **did not come** to —the **phone.** —A **message was sent** —to **Francis** —to **return my call** —and **she never did.** —I **need** —the email sent— to me Immediately!" [End of email]

443.     Saturday October 21, 2023, Plaintiff **via email** —to Co-Defendant MYHR Policy & Compliance Senior Manager **Lauren Arnold**—at **arnold-lauren@aramark.com** —Plaintiff's **take from** —the **scheduled 1:00 PM called meeting**—**states** the following:

444.     **My take from** —the **phone call** for— a **meeting** that— was to **begin at 1:00 PM,** in— which **I received**— the **call at 1:09 PM,** —some **9 minutes after**— the **scheduled time** was —that **your lack of concern** —in **maintaining** — the **scheduled time of 1:00 PM,** —I **considered degrading** —and **disrespectful** —to **my being** —and **intelligence,** —and that **this** was— a **meeting not about my accommodations issue,** —but **rather about you** —and **your interest**— in **handling my opposition** —to **what was done** —to **me;** —which **frustrated**— and **discouraged me further.**

445.     Then, **after hearing** —that **this call** was —a **call center conference call,** —I **knew** that —there **would be someone else other than yourself**— in **on**— the **call.** —After **thanking me** —for **receiving your call,** —you **informed me** —that **you were joined** —by **Cody Short's Manager Kristen** —without **providing**— a **last name.** —**You proceeded**— by **stating** —that **you were attempting**— to **see if you could resolve questions** —that **I had about** —the **LOA** —that **I had been placed on.**

446.     I immediately **informed you** —that **all questions**— and **personal conclusions**— I **have had been presented** in —**my latest email** —to **you,** —and **you stated**— that **unfortunately, you haven't been able**— to **read**— that **email.** —I **was then further frustrated** —and **discourage** —that **you had not even taken** —the **time** —to **read my email before coming before me** —to **discuss my**

concerns —about **my accommodations issue,** —which **I found profoundly scornful**— and **disrespectful.**

447.     then immediately informed you —that **I wasn't going** —to **discuss anything with you** —without **you reading my email** —and **answering** —the **questions I asked you in my email;** —and **I suggested ending** —the **call meeting until you had read my email.** —You then immediately stated: — **"let me pull it up right now,"** —and **I allowed you** —to do that just —to **see what your approach would be** —after **retrieving my email**— for **your personal viewing.**

448.     However, **after you then asked me, what questions did I have** — after **having my email before your very eyes,** —**I knew** —that **this wasn't about me,** —but **rather about you** —and **your efforts** —to **rectify**— a **wrong committed in** —the **LOA processing.**

449.     **I informed you** —that **Sedgwick had informed me** —that **Cody Short had submitted** —the **LOA** —for **me** —to **their system.** —You **immediately refuted** that —and **stated**— that **wasn't true,** —and **I immediately asked you,** — **"are you stating** —that **what Sedgwick stated** —to **me about Cody Short initiating** —the **LOA**—for **me** —to **their leave system was not true;** — and **you hesitated** —and **stated no,** —that **wasn't true.**

450.     Then **you asked a question** —that **you should have already known** —the **answer:** — **"were you not informed on May 10, 2023,** —that **you were being placed on LOA?** —Thanks for **asking** —the **question!** —**My reply** —to **you was:** — **"how could I have been informed** —that **I was being placed on LOA** —when **I never requested LOA in** —the **beginning?"**

451.     Then **you asked again:** — **"you weren't told that?"** — **I** immediately replied: — **"How could I have known that"** — when **I didn't even submit my Accommodations Substantiation Form** —was **not submitted** —to **Sedgwick until June 12, 2023?** —And **even then,** that— was **not** —a **LOA request,** — but rather —an **"Accommodations request."**

452.     **You then informed me** —that **Aramark had** —that **option** —to **place me on LOA.** —I then asked you: — **"are you telling me**— that **Aramark** has —the **right** —to **place me on LOA against my will,** —an **LOA Application/Request** —that **I never signed up for** and— that was **implemented against my will?** —You **then stated** —that **Aramark has** —the **right** —to

implement this option; and I immediately stated: — "not against my will," — and that's— a violation —of the law —and/or policy."

453.     You then stated: —I didn't know —that you weren't told —and aware —that you had been placed on LOA, and— that you would need —to look into that. You then stated —that Christien would like —to speak with me about— the allegations I've submitted. —I informed you— that I didn't want —to talk —to Kristen about any allegations I've submitted, —and that— the allegations needed —to be investigated in— a timely, proper, adequate —and impartial manner —so that —the racist white behind people can be exposed —and gotten rid of. —Therefore, I did not talk with Christen.

454.     I asked— that you respond —to your findings —and resolve via email, —and you informed me— that it would take some time —because you had more important things scheduled. — What's more important than finding out —why I've been deprived of —a job —to support my family —for going on 6 months?

455.     This is very frustrating, disgusting, —and provocative, —but I've maintained my moral —and professional temperament —or disposition against all —that this corrupt management has done against me. —Send me your findings —and plan of corrective actions. [End of email]

456.     The LOA —that Defendant Aramark placed Plaintiff —against Plaintiff's will gave Defendant Aramark control over —Plaintiff's return —and non-return —to work, —because at the LOA's end— Defendant Aramark does not have —to provide Plaintiff a job. —Therefore, continuously denial —of Plaintiffs "accommodations within" —a "LOA" —is essentially denying Plaintiff —the "right" —to "work" —at Defendant Aramark while giving an appearance — that Plaintiff —is gainfully employed—or has gainful employment potential once —Defendant Aramark approves Plaintiff's accommodations locked up— in Plaintiff's unrequested —and "forced LOA" against Plaintiff's will.

457.     Defendant Aramark strategically developed —a scheme —to terminate Plaintiff —by the weaponization —of the LOA process instead —of straight-out termination —to avoid Plaintiff's perceived —and more-than-likely "retaliation claim." —Therefore, to avoid an easily proven retaliation claim— Defendant Aramark conspired —to implement — a "fraudulent" — or bogus LOA Request —to keep Plaintiff away from work — and ultimate let

Plaintiff **go** —because **not being able** —to **have** —a **job** —for Plaintiff.

458.    Plaintiff **submits** Defendant **Aramark created** —and **implemented** —a **constructive dismissal** —or **constructive discharge against** Plaintiff; —and that Defendant **Aramark wrongfully made working conditions**— so **intolerable** —that **when** Plaintiff **did quit,** —that Defendant **Aramark forced** Plaintiff **away from work** —by **fraudulently placing** Plaintiff—to a **prolonged 6-month LOA** —that **included continuous denied Accommodations**—to **prevent** —Plaintiff **from working** —and **maliciously causing financial hardship.**

459.    Plaintiff has **provided overwhelming evidence** —that Plaintiff was **directly targeted** —by Defendant **Aramark**— that **clearly communicated**— to Plaintiff —that Plaintiff's **employment would be terminated imminently,** and— that Plaintiff's **working conditions had become intolerable.**

460.    Plaintiff's **primary motivation** —to **keep** Plaintiff —at **work** was — Plaintiff's **courage, resiliency,** — and **relentless determination**—to **not allow anyone** —to **prevail in running** Plaintiff **away from** Plaintiff's **job,** —that Plaintiff **needed** —to **provide** — the **essentials** —of **food, clothing,** —and **shelter** —for Plaintiff's **wife;** —and **whatever came regardless** —of **levels** —of **difficulties** Plaintiff **encouraged himself** —to **endure.**

461.    From **May 2022** through **May 2023** Defendant **Aramark poured out** —an **abundance** —of **wrath upon** Plaintiff—that **only God's mercy** —and **grace delivered** Plaintiff —and **strengthened** Plaintiff —to **being more than**—a **conqueror against everything brought against** Plaintiff—to **their wonder** —and **amazement.**

462.    What Plaintiff's **enemies meant** —for **evil,** —God **meant** —for **good;** —**showing Himself strong on** Plaintiff's **behalf.** —Defendant **Aramark targeted** Plaintiff—and **after placing** Plaintiff —on **LOA against** Plaintiff's **will never intended** —to **bring** Plaintiff **back** —to **work** —as **clearly demonstrated** —and **evidenced throughout** Plaintiff's **Complaint** —and as following:

463.    On **September 26, 2023,** Tuesday morning, — Plaintiff **talked** — with **Sedgwick ADA Job Accommodations Specialist Francis**— who **informed** Plaintiff —that **she had sent** Defendant Location Manager Shenitha Dupree —the "**updated/adjusted Job Accommodations requesting**" the following: — (1) **frequent bathroom breaks,** — (2) **sit up** —to **8 hours,** —and (3) **intermittent opportunities.**

464.    On **September 26, 2023,** Plaintiff **informed** Co-Defendant MYHR Manager <u>**Cody Short**</u> —that <u>**Sedgwick ADA Job Accommodations Specialist Francis**</u> —on <u>**September 15, 2023, sent**</u> —an <u>**"updated/adjusted Job Accommodations request**</u> —to Co-Defendant Location Manager <u>**Shenitha Dupree stating**</u> the following: — (1) **frequent bathroom breaks,** — (2) **sit up** — to **8 hours,** —and (3) **intermittent opportunities;**— and <u>if no response</u>— from Co-Defendant Location Manager <u>**Shenitha Dupree**</u> —that <u>**she sent it again**</u> —on <u>**September 20, 2023,**</u> —and that <u>**she would send it again today**</u> —on <u>September 26, 2023,</u> — and <u>**if no response**</u> —**from** Defendant Location Manager <u>**Shenitha Dupree**</u> —that <u>**she would send it MYHR**</u> —at **(844) 441-6947.**

465.    On **September 28, 2023,** Plaintiff **via email** —to **MYHR requested** —a **copy** of —Plaintiff's **Official Personnel File** (OPF) —from **September 13, 2023,** to **date** —of **September 28, 2023,** —to **include** —but **not limited** to: — (1) **Performance Appraisal Reviews** (Front Line Employee Assessment Forms), — (2) **Encore Recognition Awards,** — (3) **Employment Action/Disciplinary Notice Forms,** (3) <u>**Leave of Absence (LOA) Requested**</u> (including the **signature** —or <u>signed LOA sent</u> —to <u>**Sedgwick**</u> —to <u>**implement**</u> —the <u>**current LOA in existence).**</u>

466.    On **October 3, 2023,** Plaintiff **via phone call** —to **Sedgwick ADA Job Accommodations Specialist** <u>Francis</u>— **informed** Plaintiff —that Defendant **MY HR Aramark** —**informed Sedgwick** that— they would be calling Plaintiff, — and <u>**Francis**</u> also **informed** Plaintiff —**that her supervisor would be meeting** —with **MYHR Aramark**— on **today** (October 3, 2023) and —that **she would get back** —with Plaintiff on **tomorrow** (October 4, 2023).

467.    On **October 3, 2023,** —**via phone call** Sedgwick ADA Job Accommodations **Specialist Francis** —also **informed** Plaintiff —that **she** —and her supervisor— were <u>**working desperately**</u> —to <u>**get**</u> Plaintiff <u>back</u> —to <u>**work**</u> and— that <u>**it has been very difficult doing so.**</u>

468.    Sedgwick ADA Job Accommodations **Specialist Francis**—also <u>**suggested**</u>—that <u>**she**</u> —and <u>**her supervisor**</u> —are **suggesting** —to Plaintiff —to **submit** —an <u>**"updated/adjusted Job Accommodations request**</u> —to Co-Defendant Location Manager <u>**Shenitha Dupree**</u>—that Plaintiff <u>**only needed sitting**</u> —and <u>**20 minutes**</u>— of <u>**breaks**</u>— at <u>**no specific time periods**</u> —for <u>**bathroom breaks**</u> —and **asked** Plaintiff <u>**"if it was alright"**</u> —with Plaintiff, — and Plaintiff <u>**replied yes,**</u> — <u>it was alright if"</u> —that <u>**would just get**</u> Plaintiff <u>**back**</u>

—to **work.** — Finally, **Francis informed** Plaintiff —that <u>she was sending</u>— the <u>updated/adjusted Job Accommodations request right now!</u>

469.     To Plaintiff —Defendant **Aramark's denial mode** —for <u>any form</u>— of <u>"updated/adjusted Job Accommodations request</u> —had **become permanently set** —on **cruise control** —and that **"whatever"** — <u>"updated/adjusted Job Accommodations request submitted</u> —by Sedgwick ADA Job Accommodations **Specialist Francis**—was <u>**"dead on arrival."**</u>

470.     On **October 11, 2023,** —at **approximately 3:05 PM** Plaintiff **received** —a **phone call**— from Co-Defendant MYHR Manager <u>Cody Short</u> — who **informed** Plaintiff—that Co-Defendant HR Manager **Ashley Hall** —was <u>there physically present</u> —with <u>him,</u> —and that <u>he understood</u> —that Plaintiff <u>had been calling Sedgwick about</u> Plaintiff's **accommodations**—and that Co-Defendant MYHR Manager <u>Cody Short</u> —and Co-Defendant HR Manager <u>Ashley Hall</u>—**had called** —to **clarify** —to Plaintiff <u>what was happening.</u>

471.     On **October 11, 2023,** — Co-Defendant HR Manager <u>Ashley Hall</u>— **could be heard**—by Plaintiff **chuckling** —as **if she** —was s**corning** —the **call** — with Plaintiff —and Plaintiff **immediately asked** —Co-Defendant HR Manager <u>Ashley Hall</u>— <u>"what are you laughing about?</u> — "What's <u>happening</u> —to <u>me</u> <u>isn't funny."</u> — Co-Defendant HR Manager <u>Ashley Hall</u>—the <u>"said I'm sorry,"</u> — <u>"I have a cold."</u> — Plaintiff —to Co-Defendant HR Manager <u>Ashley Hall's</u> <u>asinine excuse</u> —with **frustration immediately responded:** — <u>"that's a lie!"</u>

472.     On **October 11, 2023,** —at **approximately 3:05 PM**— Plaintiff **informed** —Co-Defendant MYHR Manager <u>Cody Short</u> —that Plaintiff was **informed** —that Co-Defendant MYHR Manager <u>Cody Short</u> was—the <u>**MYHR**</u> <u>**manager**</u> —who **responded** —to Plaintiff's <u>"Job Accommodations request</u> <u>signed"</u> —by Plaintiff's **Physical Medical Rehabilitation Doctor, Natalia** <u>Jollioff</u> —and —<u>not</u> Plaintiff's <u>primary physician.</u>

473.     On **October 11, 2023,** —Plaintiff also **informed** —Co-Defendant MYHR Manager <u>Cody Short</u> —that Plaintiff <u>has never been diagnosed with</u> —a <u>serious</u> <u>health condition</u> —that <u>prohibited</u> Plaintiff <u>from performing his required</u> <u>duties.</u>

474.     On **October 11, 2023,** —Plaintiff also **informed** —Co-Defendant MYHR Manager <u>Cody Short</u> —that Plaintiff <u>had never requested</u>— an <u>LOA</u> — in Plaintiff's <u>ten (10) years</u> as —a Defendant **Aramark employee** —nor <u>has ever</u>

had need —to **request** —an **LOA,** —and that <u>**there's no signed LOA Request**</u> —on Defendant <u>**Aramark's official records**</u> —by Plaintiff—for <u>**implementing**</u> — the <u>**invalid LOA request.**</u>

475.    Co-Defendant MYHR Manager <u>**Cody Short stated**</u> to Plaintiff— that Defendant <u>**Aramark**</u> has —the **option** —to **do so;** —and Plaintiff **replied**: — <u>**"not against"**</u> Plaintiff's <u>**free will,**</u> —and **especially** —and **particularly** when —the <u>**LOA**</u> is— of <u>**no benefit**</u> to Plaintiff.

476.    Plaintiff <u>**submits**</u> that —the <u>**fraudulent**</u> —or <u>**bogus LOA**</u> was <u>**created**</u> —and <u>**submitted**</u> —for <u>**devious reasons.**</u> —The **LOA submitted** —by Co-Defendant MYHR Manager <u>**Cody Short**</u> was **submitted**— to <u>**Sedgwick**</u> on <u>**July 27, 2023,**</u> —which **constitutes forty-four** (44) —<u>**days after**</u> Plaintiff's **June 12, 2023,** <u>**Accommodations Request submission**</u> —to **Sedgwick.**

477.    Additionally, Defendant MYHR Manager <u>**Cody Short backdate**</u> —the <u>**LOA**</u> —that <u>**he himself submitted**</u> —to Sedgwick —on July 27, 2023, —to <u>**begin May 10, 2023,**</u> —and to <u>**end November 11, 2023,**</u> —for <u>**continuous running 30-day periods**</u> —that <u>**total six (6) consecutive months**</u>—that <u>**prohibited**</u> Plaintiff — from <u>**working**</u> —at Defendant <u>**Aramark without**</u> Defendant <u>**Aramark's approval**</u> —which Defendant <u>**Aramark never ever intended happening again,**</u>—which was <u>**totally underserved malicious persecution.**</u>

478.    Plaintiff's **states** to —this **Honorable Court** —that **primarily** because— of Co-Defendant HR Manger Ashley **Hall's miserable failure** —to **perform her required investigative duties** in— a **thorough, fair, impartial,** —and **proper manner;** —and **because** Co-Defendant MYHR Manager **Dustin Marty's,** —and Co-Defendant MYHR Manger **Cody Short's miserable failures**— of **ensuring** HR Manger Ashley **Hall's investigations** —as **well**—as **their own investigations** —of Plaintiff's <u>**discrimination, harassment,**</u> —and <u>**retaliation Complaint**</u> — were <u>**performed in**</u>— a <u>**thorough, fair, impartial,**</u> —and <u>**proper manner,**</u> —but rather premeditatively, intentionally, willfully, purposefully, —and <u>**deliberately chose**</u> —to <u>**conspire together**</u>—and to <u>**coverup all discrimination**</u> —and/or <u>**laws**</u> —and <u>**policies violated**</u> —by a <u>**profoundly corrupt Todd Management**</u> —is the <u>**primary cause**</u> —Plaintiff <u>**appears before this Honorable Court.**</u>

479.    Moreover, Defendant **Aramark's** wrongful premeditated, intentional, willful, purposeful, —and deliberate **conduct constitutes blatant disrespectful defiance** —of **laws** —and **policies** —and **involves such willfulness** —and **maliciousness** —that **it rises** to the **level** of —an **independent tort** —or **torts,** —

thus **entitling** the Plaintiff— to **recover punitive damages** —from Defendant **Aramark.**

480.　　Given the **deplorable, reprehensive,** — or **disgraceful conduct** of Defendant **Aramark,** — and the **pecuniary ability** or **financial worth** —of Defendant **Aramark,** then $25,000,000 is **well within** —the **amount reasonably necessary** —for **punishment** —of **wrongdoing, deterring** —the Defendant **Aramark** —from **similar conduct,** —and **making** —an —of Defendant **Aramark** so others —**may be deterred.**

## CLAIMS FOR RELIEF

## A. INTENTIONAL INFLICTION OF EMOTIONAL UPSET

481.　　The Defendant **Aramark's unlawful conduct,** as previously described in this Complaint was **known** to Defendant Aramark to likely or **most likely produce emotional stress,** and **it did** —with **maliciously intend**— to Plaintiff.

482.　　The Defendant **Aramark's unlawful conduct**—as a **direct** and **proximate result** —of Plaintiff and Plaintiff's wife, Linda L. Murphy at **ages 75** and **71 respectively,** —and both Plaintiff's **underlying illnesses** of high blood pressure, and diabetes, —and Plaintiff's wife Linda L. Murphy's **underlying illnesses** of high blood pressure and neuropathy—and a **2021 surgery cancel survivor** —to **likely**— or **most likely suffer emotional stress,** and **they did** —and are **still recovering,** —and Defendant Aramark's **infliction** —of **emotional stress** —and **damages** —to Plaintiff —and Plaintiff's wife, Linda L. Murphy should equate to **at least $25,000,000.**

## B. FURTHER RELIEF

483.　　The Plaintiff further prays that Defendant **Aramark** be required to pay the costs of this civil lawsuit action and reasonable attorney fees in the amount of **$30,000.**

484.　　The Plaintiff further prays for **such other** and **further relief** which the Plaintiff and Plaintiff's wife, Linda L. Murphy **may be justly entitled**.

Respectfully submitted this, the _31st_ day of October 2023.

LARRY F. MURPY

_(Plaintiff)_

Address:  P.O. Box 801
Ayden, North Carolina 28513
Phone:    (252) 814-1079