IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:23-CV-200-FL

| | |
|---|---|
| LARRY F. MURPHY, | ) |
|           Plaintiff, | ) |
| v. | ) |
| ARAMARK FOOD SERVICE AND FACILITIES MANAGEMENT, EAST CAROLINA UNIVERSITY; ARAMARK CAMPUS, LLC; KELVIN TARAKWASHA; THOMAS BEDWARD; TERA PEREZ; HILLARY GALLAGHER; SHENITHA DUPREE; DARRYL HINES; ASHLEY HALL; DUSTIN MARTY; KODY SHORT; LAUREN ARNOLD; CHRISTEN ANDERSON; and BRITTANY SCURRY;[1] | )    ORDER |
|           Defendants. | ) |

This employment discrimination matter is before the court upon plaintiff's motion to amend the complaint and for an extension of time to prepare and file such amended complaint (DE 21) and his motion to remand (DE 22). Defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.Pro., is also before the court (DE 23). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling.

---

[1] The clerk is directed to update the case caption to reflect the spellings used herein.

## STATEMENT OF THE CASE

Plaintiff commenced this action October 31, 2023, in the Superior Court of Pitt County, North Carolina, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq., ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., ("ADEA"), Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., ("ADA"), and the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 4211, et seq. ("VEVRAA"). Defendants removed the action to this court December 4, 2023, on the basis of federal question jurisdiction under 28 U.S.C. §§ 1331, 1441, and 1446. On December 29, 2023, plaintiff filed the instant motions to amend his complaint to "allow name correcting amendment . . . and additional time resulting from an extension order," (DE 21 at 2), and to remand the matter to Pitt County Superior Court.

Shortly thereafter, on January 2, 2024, defendants filed their motion to dismiss for failure to state a claim. In defense against that motion plaintiff offers into the record: 1) a summary of benefits letter from the Department of Veterans Affairs; 2) an email from an Equal Employment Opportunity Commission ("EEOC") official; 3) an EEOC right to sue letter; 4) a web calendar; 5) performance reviews; 6) letters attesting to plaintiff's work ethic; 7) instructions for processing "to-go" orders; 8) correspondence between the parties; 9) an accommodation substantiation form; 10) a document entitled "To HR Manager Dustin Marty and Other HR Manager Reviewing MYHR [sic] Complaint;" 11) a document entitled "Contents of 9/4/2023 Hot Line Call;" 12) a printout of plaintiff's EEOC portal; and 13) other documents recapitulating plaintiff's allegations.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff, a former employee of defendant Aramark Food Service and Facilities Management, East Carolina University ("Aramark"), worked as an office assistant from September 13, 2013, to August 19, 2022, and as a

cashier in a dining hall at East Carolina University from August 19, 2022, to May 10, 2023. (Compl. at 9-10).[2] During his time as a cashier, he encountered several issues with a to-go-box system, including a broken button used for processing to-go-box returns on a colleague's cash register, and inadequate training. (Id. at 14). Plaintiff's managers and colleagues also changed repeatedly the identification requirements for diners, and plaintiff reported these issues. (Id. at 24-27). On January 19, 2023, defendant Hillary Gallagher started working at the dining hall, and she allegedly "made disparaging or derogatory remarks to and about blacks and other people of color."[3] (Id. at 27). Plaintiff also recounts several disagreements with colleagues that are set out in each section relevant to his claims.

On April 8, 2023, plaintiff emailed a 101-page complaint to defendant Aramark alleging "age discrimination, discrimination, harassment, and retaliation." (Id. at 76). On May 10, 2023, plaintiff was informed that he would not be re-hired as a cashier for the upcoming fall semester "because of COVID." (Id. at 93). Plaintiff asked to resume his former role as an office worker, but that request was denied. (See id.). Instead, he was told to apply for accommodations, despite having no history of requesting accommodations (see id.) and no "condition that prohibited [him] from performing his required duties." (Id. at 102). Plaintiff complied, requesting through "Sedgwick Leave Administrator" ("Sedgwick"), defendant Aramark's third-party claims administrator, accommodations constituting frequent bathroom breaks, sitting up to eight hours, and "intermittent opportunities." (Id. at 100). Plaintiff engaged in a series of phone calls and emails with Sedgwick personnel, and eventually, it was suggested to plaintiff that he request "sitting and 20 minutes of

---

[2] Where some paragraph numbers in the complaint are repeated, the court uses page numbers throughout this order when citing the complaint. Page numbers are those assigned by the court's electronic case filing system, and not the number, if any, appearing on the face of the document.

[3] The complaint makes extensive use of dashes, which the court omits throughout this order.

3

breaks at no specific time periods." (Id. at 101). Plaintiff expressed his desire for any accommodation that "would just get [him] back to work." (Id. at 102). On October 21, 2023, plaintiff learned that he had been put on an involuntary leave of absence effective May 10, 2023, the date on which he had been informed he would not be re-hired for the following semester. (See id. at 97-98). Plaintiff alleges additionally that the leave of absence ended "November 11, 2023," prohibiting him from working at least until that time. (Id. at 103).

## COURT'S DISCUSSION

A.  Motion to Remand

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008).

Under the federal removal statute, "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Here, there is no allegation of diversity of citizenship between the parties. "Accordingly, the propriety of removal depends on whether the case falls within the provisions of 28 U.S.C. § 1331," Mulchaney v. Columbia Organic Chemicals, Inc., 29 F.3d 148, 151 (4th Cir. 1994), based upon federal question jurisdiction comprising the "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

All the statutes under which plaintiff seeks relief are laws of the United States giving rise to federal question jurisdiction. The court thus possesses subject matter jurisdiction, and remand is not warranted.

Plaintiff suggests that remand is required because a state court could also hear his case. See, e.g., Yellow Freight System, Inc. v. Donnelly, 484 U.S. 820, 823 (1990) ("Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction."). However, the doctrine of federal question jurisdiction gives both plaintiffs and defendants the option of proceeding in federal court, by allowing plaintiffs to file in federal court in the first instance, see, e.g., 42 U.S.C. § 2000(e)-5(f)(3), and permitting defendants to remove to federal court in appropriate cases, as here. See 28 U.S.C. § 1441(a).

Therefore, plaintiff's motion to remand is denied.

B.  Motion to Amend

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be allowed "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).[4] "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation, 914 F.3d 213, 228 (4th Cir. 2019); see In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny.").

---

[4] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

5

Plaintiff's motion to amend is not a model of clarity; however, the court construes it as a motion to correct the names of defendants Thomas Bedward, Tera Perez, Darryl Hines, Kody Short, Christen Anderson, and Brittany Scurry and to extend for at least 120 days the deadline for plaintiff to make such correction. Plaintiff states, "in allowing name-correcting amendment within the time allowed by Rule [4(m)], this rule allows not only 120 days specified in that rule but also additional time resulting from an extension order by the court pursuant to that rule[.]" (DE 21 at 2). No additional allegations are made, and no proposed amended complaint has been submitted.

At the onset of this order, in footnote one above, the court instructed the clerk to correct the spellings of the foregoing defendants' names on the docket, which spellings do not affect the substance of the complaint. Below, the court sets forth its reasoning, in section C(3), that all claims against individual defendants must be dismissed when based upon the statutes asserted. Accordingly, plaintiff's motion to amend, including a request for extension of time, is denied as futile.

B.   Motion to Dismiss

   1.   Standard of Review

To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

### 2. VEVRAA Claim

Plaintiff brings a claim under the Vietnam Era Veterans' Readjustment Assistance Act of 1974," (compl. ¶¶ 5, 10), but does not specify the statutes under which he seeks recovery. The VEVRAA is codified at 38 U.S. §§ 3696 (prohibiting certain advertising, sales, and enrollment practices), 3698 (setting forth a policy on providing education information to veterans), 3699 (providing for the effects of closure or disapproval of an educational institution), 4212 (providing protections for veterans employed pursuant to federal contracts) and 4214 (providing for certain benefits for veterans employed by the federal government). The parties' briefs are not illuminating on this issue.

Even assuming that defendant Aramark is a federal contractor subject to the requirements of the VEVRAA, the United States Court of Appeals for the Fourth Circuit has held, albeit only in an unpublished decision, that "there is no private cause of action against federal contractors under § 402 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 4212." Armstrong v. Rolm A. Siemans Co., No. 97-1222, 1997 WL 705376, at *3 (4th Cir. Nov. 13, 1997). Other circuits more recently have held the same. See, e.g., Matula v. Lower Colorado River Auth., 134 F. App'x 715, 716 (5th Cir. 2005) (affirming dismissal of VEVRAA claims "because the statute does not provide a private cause of action and instead permits only administrative remedies through the Department of Labor"); Seay v. Tennessee Valley Auth., 339 F.3d 454, 473 (6th Cir. 2003) (same). In addition, the court notes that at no point does plaintiff allege that he was denied any employment opportunity, was discriminated against, or was retaliated against, based on his veteran status. Accordingly, the court dismisses plaintiff's claim brought pursuant to VEVRAA.

3. Individual Defendants

Title VII "prohibits employment discrimination on the basis of race." Ricci v. DeStefano, 557 U.S. 557, 577 (2009). Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); see 42 U.S.C. § 12203(a); Hooven-Lewis v. Caldera, 249 F.3d 259 259, 272 (4th Cir. 2001). The ADA broadly protects the employment rights of the disabled and prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADEA "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age because of the person's age." EEOC v. Baltimore County, 747 F.2d 267, 272 (4th Cir. 2017).

However, Title VII, the ADEA, and the ADA authorize remedies against employers, not individuals. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (holding that "individuals are not liable" under the ADEA or Title VII); Baird ex rel. Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (concluding the ADA does not permit actions against individual defendants). Accordingly, all claims against defendants Kelvin Tarakwasha, Thomas Bedward, Tera Perez, Hillary Gallagher, Shenitha DuPree, Darryl Hines, Ashley Hall, Dustin Marty, Kody Short, Lauren Arnold, Christen Anderson, and Brittany Scurry are dismissed.

4. Time Bar

Defendants contend that this action is time barred where plaintiff filed suit 91 days after constructive receipt of his right to sue letter. The court disagrees.

Prior to filing an action, a plaintiff must file a charge of discrimination with the EEOC. See 42 U.S.C.A. § 2000e–5(b), (e). If after conducting an investigation the EEOC decides not to proceed, it issues a right-to sue letter, after which "Title VII plaintiffs have a ninety-day period" to file suit. Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (1993). Ordinarily, the 90-day period begins to run when the plaintiff receives notice that the letter is available, but equitable tolling is available to mitigate injustices created by this rule. See id.

Plaintiff filed his complaint within the limitations period. The EEOC uploaded the right-to-sue letter August 1, 2023, and plaintiff viewed the letter by downloading it August 2, 2023. (DE 28-1). Nothing in the record indicates that plaintiff was informed by the EEOC or any other party that his right-to-sue letter had been uploaded August 1, 2023. Where no grounds for imputing notice to plaintiff on August 1, 2023, exist, on this record the limitations period began on August 2, 2023. Where that period expired October 31, 2023, the same day plaintiff filed his complaint, this action is within the 90 day time limit and thus timely.

In addition and in the alternative, grounds for equitable tolling exist where plaintiff was informed by the EEOC that the limitations period ran from the day he viewed the letter. See Coleman v. Talbot County Detention Center, 242 Fed. Appx. 72, 74 (4th Cir. Jul. 12, 2007) (finding equitable tolling appropriate where "the primary fault [was] that of the EEOC"). The letter states that a "lawsuit must be filed within 90 days" of receipt, which "generally occurs on the date that you . . . view this document." (DE 1-1) (emphasis removed). In addition, Marie Myatt, an investigator at the EEOC whose contact information appears on the letter, later stated her understanding that the limitations period began "on the day [he] receive[d] the [n]otice which [was] the day [he] access[ed] it in the portal and view[ed] it." (DE 28-1 at 3). Plaintiff reasonably relied on the EEOC's representation that his limitations period began August 2, 2023,

9

Nevertheless, plaintiff may not advance claims based upon assertedly unlawful acts that occurred 180 days or more before plaintiff filed a charge with the EEOC.

"An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC," Chacko v. Patuxent Institution, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C § 2000e-5(e)), "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); see also Lawson v. Burlington Industries, Inc., 683 F.2d 862, 863 (4th Cir. 1982) (setting forth the same rule with respect to ADEA claims); McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (setting forth the same rule for ADA claims). "When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court." McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994).

Plaintiff's charge of discrimination was filed on July 24, 2023. (DE 28-4 at 22). Accordingly, plaintiff's discrimination claims must be limited to asserted acts of discrimination occurring on or after January 25, 2023, detailed further as follows.

5.  Discrimination

    a.  Title VII

Under Title VII, it is "an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000(e)(2)(a)(1). "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). Standing alone, however, "an employee's dissatisfaction with [an] aspect of work does not mean an employer has committed an actionable adverse action." James v. Booz-Allen Hamilton, Inc., 368 F.3d 371 (4th Cir. 2004).

A number of grievances set forth in plaintiff's complaint do not qualify as adverse employment actions. In particular, plaintiff recalls an incident in which his cash register drawer stuck, prompting him to enter "several bogus cash transactions" in an attempt to open it (compl. at 30), resulting in a discrepancy at the end of his shift and a disciplinary writeup. (Id. at 30-34). Plaintiff also had his hours cut, (id. at 38), was forgotten by a supervisor for "21 minutes" while filling out his "cash verification deposit slip" (Id. at 40-41), received the wrong instructions for a to-go box system, (id. at 43-44), received back-dated instructions for the same system, (id. at 59-60) waited too long for management to confirm what he had said to a customer, (id. at 46), had removed prematurely a list of students celebrating Ramadan from his register (id. 309), once was delayed in going to the bathroom by a tardy supervisor, (id. at 73-74), and was made to say "please" by a white supervisor, (id. at 75-76). In addition, plaintiff and a faculty member had a disagreement over the faculty member's difficulty in returning his to-go boxes, which resulted in plaintiff's supervisor listening to the faculty member's complaints and enlisting a director-level employee also to listen to those complaints. (Id. at 76-77). Plaintiff's Title VII claim in that part premised upon such asserted actions thus must be dismissed.

In remaining part, plaintiff does not allege facts giving rise to a plausible inference of discrimination. Plaintiff states repeatedly that various Aramark employees, especially defendant Gallagher, are racist. See, e.g., (id. at 44) (alleging that Gallager "implemented massive cuts in employees' hours and displayed a blatant racist white attitude"); (id. at 46) ("Plaintiff believes that . . . Gallagher's racism and hatred are uncontrollable attributes of her white racist nature); (id. at 64) (alleging that defendant Bedward "is the real secret deceptive culprit behind the racist white behavior practices implemented). But he does not allege any causal connection between his race and the actions complained of. For instance, although a cut in hours is one of the alleged adverse actions

11

giving rise to plaintiff's Title VII claim, he also alleges "massive cuts in employees' hours" across the board, such that "Todd Dining Hall did not have enough employees to provide timely, proper, and quality customer service[.]" (Compl. at 44). The back-dated instructions that plaintiff characterizes as "an attempted managerial deception plan" were placed at all registers, not only plaintiff's. (Id. at 58-59). Finally, although plaintiff's placement on involuntary leave, discussed in section C(6) of this order, infra, may serve as the basis for a retaliation claim, plaintiff has not asserted any causal link between that action and his race. Accordingly, plaintiff's claim for discrimination under Title VII is dismissed.

   b.  ADEA

The ADEA prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). To state an ADEA claim, a plaintiff must allege facts permitting an inference that "age constituted the but-for cause of the adverse employment action." Bandy v. City of Salem, Virginia, 59 F.4th 705, 710 (4th Cir. 2023). "Importantly, an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have taken the adverse employment action in the absence of age discrimination." Id.

As with his claim for race discrimination, plaintiff does not provide any basis for an inference of a causal link between the incidents he complains of and his age. Accordingly, this claim is dismissed.

   c.  ADA

The ADA "prohibits an employer from discriminating against an individual with a disability who, with [or without] reasonable accommodation, can perform the essential functions of the job."

U.S. Airways v. Barnett, 535 U.S. 391, 393 (2002). As relevant in this case, the ADA "prohibits employers from discriminating against a qualified individual on the basis of disability in regard to . . . discharge" and from "failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Lashley v. Spartanburg Methodist College, 66 F.4th 168, 178 (4th Cir. 2023); see also 42 U.S. §§ 12112(a), 1212(b)(5)(A).

At this stage in the litigation, "a plaintiff is not required to plead facts that constitute a prima facie case." Coleman v. Md. Ct. of Appeals, 646 F.3d 187, 190 (4th Cir. 2010). Instead, plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for" violating the ADA. Iqbal, 556 U.S. at 663 (2009).

The complaint does not state that plaintiff is an individual with a disability. Instead, plaintiff stated to Aramark personnel that he had "never been diagnosed with a serious health condition that prohibited [him] from performing his required duties." (Compl. ¶ 102). Where an employee "must inform his employer that [he] requires an adjustment or change at work for a reason related to a medical condition," plaintiff's claim for discrimination in violation of the ADA fails. Kelly v. Town of Abingdon, Va., 90 F.4th 158, 167 (4th Cir. 2024).

6. Retaliation

To state a claim for retaliation, a plaintiff must allege either "direct evidence of retaliatory animus" or that 1) he engaged in protected activity under the applicable statute; 2) his employer took adverse action; and 3) a causal relation exists between the protected activity and the adverse employment action. Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015) (Title VII); Reynolds v. American Nat. Red Cross, 701 F.3d 143, 154 (4th Cir. 2012) (ADA); Walton v. Harker, 33 F.4th 165, 177 (4th Cir. 2022) (ADEA).

13

Plaintiff ties his assertion that retaliation occurred to specific factual allegations only twice. Plaintiff alleges that on December 9, 2022, he was required to wipe tables and clean floors due to an "inability to cooperate properly with . . . the senior cashier." (Compl. at 15). Pursuant to the court's analysis in section C(4), supra, the court does not review this incident where it occurred more than 180 days before plaintiff filed his complaint with the EEOC. In addition and in the alternative, plaintiff's retaliation claim fails with respect to this incident where no protected activity is alleged.

Although the complaint is not a model of clarity, plaintiff states a claim for retaliation with respect to defendant Aramark's reaction to his reporting of alleged discrimination in the work place. Plaintiff alleges that on April 8, 2023, he emailed a 101-page complaint to defendant Aramark alleging "age discrimination, discrimination, harassment, and retaliation." (Id. at 76). About one month later, on May 10, 2023, plaintiff was informed that he would not be re-hired as a cashier for the upcoming fall semester "because of COVID." (Id. at 93). Plaintiff's request to resume an office role was denied, and he was told to apply formally for accommodations, (see id.), despite having no "condition that prohibited [him] from performing his required duties." (Id. at 102). Plaintiff complied, requesting through Sedgwick, defendant Aramark's third-party claims administrator, accommodations constituting frequent bathroom breaks, sitting up to eight hours, and "intermittent opportunities." (Id. at 100). On October 3, 2023, Sedgwick personnel suggested an alternative accommodation, and plaintiff agreed if the alternative "would just get [him] back to work." (id. at 101-02). On October 21, 2023, plaintiff was told that he had been put on an involuntary leave of absence effective as of May 10, 2023, the date he had been informed he would not be re-hired for the following semester. (See id. at 97-98). Plaintiff alleges additionally that the leave of absence ended "November 11, 2023," prohibiting him from working until that time. (Id. at 103). Plaintiff states that management's handling of his 101-page complaint was "the primary cause" of this process. Thus,

14

because of the alleged timing of these events and the nature of the alleged reprisals, plaintiff states facts permitting an inference that a "causal relationship exist[s] between the protected activity and the adverse employment" action. Foster, 787 F.3d at 250.

Defendants argue that there are no allegations that any decisionmaker was aware of plaintiff's protected activity. The complaint states, however, that a conference call between plaintiff, HR Manager Dustin Marty ("Marty"), HR manager Ashley Hall ("Hall"), and Director of Operations Thomas Bedward, occurred on May 10, 2023. (Id. at 93.) Marty allegedly investigated plaintiff's 101-page" complaint, and informed him the day of the conference call that "the investigation had been completed and there were no findings of [his] allegations." (Id. at 93). Hall also allegedly informed plaintiff that day that he would not be rehired for the following semester. While it is not explicitly stated in the complaint, construing allegations in favor of the plaintiff, it is reasonable to infer that these conversations occurred in the same conference call with all interested parties participating. Accordingly, the complaint states facts sufficient to create a plausible inference that the relevant decisionmakers were aware that plaintiff had engaged in protected activity.

Defendants also argue that the complaint fails to allege that plaintiff's reports of discrimination were the "but-for" cause of his placement on involuntary leave or defendant Aramark's decision not to retain him for the upcoming semester. In the context of retaliation, "close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." Waag v. Sotera Defense Solutions, Inc., 857 F.3d 179, 192 (2017). Here, plaintiff's protected activity occurred within about a month of his being placed on leave. In addition, the court construes the allegation that defendants told plaintiff he would not be re-hired "because of COVID"[5] as an attempt to assert that his "employers purported nonretaliatory reasons . . . were a

---

5    The national emergency declared due to COVID-19 terminated April 10, 2023. See 118 P.L. 3, 137 Stat. 6.

pretext for discrimination" under the McDonnell Douglass framework. Foster v. University of Maryland-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015); see also McDonnell Douglass Corp. v. Green, 411 U.S. 792, 804-05 (1973). Accordingly, plaintiff's claim for retaliation under Title VII, the ADA, and the ADEA may proceed.

       7.       Hostile Environment

To survive dismissal of a claim of a hostile work environment based on race, plaintiff "must offer facts that plausibly support inferences that he was subjected to 1) unwelcome conduct, 2) based on [his] race . . . , that was 3) severe or pervasive enough to make his work environment hostile or abusive and 4) imputable to [his] employer." Laurent-Workman, 54 F.4th at 210. "[W]hen determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). The third factor incorporates a requirement that a "reasonable person in the plaintiff's position, considering all the circumstances," Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998), would have "found the environment to be objectively hostile or abusive." Sunbelt Rentals, Inc., 521 F.3d at 315. Allegations of "simple teasing, offhand comments, and isolated incidents," unless they are "extremely serious," do not meet this requirement. Faragher v. City of Boca Raton, 524 U.S.C. 725, 788 (1998).

The court refers to the incidents recounted in section C(5)(a), supra, which plaintiff contends made his work environment abusive. These allegations are insufficient to "clear a high bar in order to satisfy the severe or pervasive test." Sunbelt Rentals, 521 F.3d at 315. Considered in isolation, they are insufficiently severe to amount to changes in the terms and conditions of employment.

16

Considered together, they are insufficiently pervasive to establish an objectively hostile or abusive environment. Compare Sunbelt Rentals, Inc., 521 F.3d at 316 (finding the severe or pervasive element satisfied where plaintiff "was subject to repeated comments that disparaged both him and his faith" (emphasis added)); id. at 311 ("[T]he abusive environment was marked by a steady stream of demeaning comments and degrading actions directed against him by his coworkers." (emphasis added)); Ocheltree, 335 F.3d at 328-29 ("[Plaintiff's] male coworkers subjected her to a daily stream of discussion and conduct that was sex based or sexist." (emphasis added)). Most of the incidents alleged are not connected to any protected status, but simply recount personality clashes that are "a fact of workplace life." Sunbelt Rentals, 521 F.3d at 315.

Thus, having failed to satisfy the severe or pervasive element, plaintiff's claim for hostile work environment in violation of Title VII is dismissed.

## CONCLUSION

Based on the foregoing, plaintiff's motions to amend the complaint (DE 21) and to remand (DE 22) are DENIED. The clerk is DIRECTED to correct as indicated herein the spelling of the names of individual defendants as specified herein. Defendants' motion to dismiss (DE 23) is GRANTED IN PART and DENIED IN PART as set forth herein. The clerk is DIRECTED to terminate all defendants except defendant Aramark. Plaintiff's retaliation claim under Title VII, the ADA, and the ADEA is allowed to proceed. Plaintiff's remaining claims are DISMISSED for failure to state a claim for which relief can be granted, under Rule 12(b)(6). In accordance with Rule 12(a)(4), defendant Aramark must serve a responsive pleading to the complaint within 14 days of entry of this order.

SO ORDERED, this the 22nd day of April, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge